# EXHIBIT H

Case 1:21-cv-06226-NRB    Document 75-8    Filed 03/28/25    Page 2 of 19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------- x

ALEXEY V. TARASOV, ESQ., Administrator of the
Estate of EVGENIY LAGODA, Deceased,
and GRIGORY TIKHOPLAV,

                           Plaintiffs,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
and PORT AUTHORITY OF NEW YORK AND NEW
JERSEY POLICE DEPARTMENT a/k/a PORT AUTHORITY
POLICE DEPARTMENT a/k/a PAPD, PAPD OFFICER
MICHAEL BUGIADA, PAPD OFFICER ROBERT JOSEPH,
PAPD OFFICER JONATHAN PAPIA, PAPD OFFICER PAUL
MEZZACAPPA, and PAPD OFFICER JONATHAN DURAN,

                           Defendants.
--------------------------------------------------------------------------- x

**NOTICE OF MOTION**

Index No: 153490/2021

| | |
|---|---|
| MOTION BY: | Plaintiffs Alexey V. Tarasov, Esq., Administrator of the Estate of Evgeniy Lagoda, Deceased, and Grigory Tikhoplav |
| DATE, TIME, & PLACE OF HEARING: | On the 28th day of July 2021, in New York County Supreme Court, 60 Centre Street, New York, NY, Motion Submission Part Courtroom (Room 130) at 9:30 AM or as soon thereafter as counsel can be heard. |
| SUPPORTING PAPERS: | Memorandum of Law in Support of Motion for Leave, and Affidavit of Plaintiff Alexey V. Tarasov, Esq. |
| RELIEF REQUESTED: | An Order pursuant to McKinney's Unconsolidated § 7108 giving Plaintiffs leave of court satisfy jurisdictional conditions precedent pursuant to McKinney's Unconsolidated § 7107. |
| ANSWERING AFFIDAVITS: | Answering papers, if any, are to be served at least seven (7) days prior to the return date of this motion. *See* CPLR § 2214(b), 2215. |

1

Dated:  July 12, 2021
      Boston, MA

/s/ J. Christopher Amrhein, Jr.
Michael J. Sullivan (*pro hac vice*)
J. Christopher Amrhein, Jr. (*pro hac vice*)
*Ashcroft Law Firm*
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
msullivan@ashcroftlawfirm.com
camrhein@ashcroftlawfirm.com

Marianna Moliver
Moliver Law LLC
494 Eighth Avenue, 7th Floor
New York, NY 10001
marianna@moliverlaw.com

*Attorneys for Plaintiffs*

TO:    Attorney for Defendants

      Cheryl Alterman, Esq.
      Matthew Malysa, Esq.
      Port Authority of New York and New Jersey and PAPD
      4 World Trade Center
      150 Greenwich Street, 24th Floor
      New York, NY 10007

2

Case 1:21-cv-06226-NRB   Document 75-8   Filed 03/28/25   Page 4 of 19

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK
--------------------------------------------------------------------------- x

ALEXEY V. TARASOV, ESQ., Administrator of the
Estate of EVGENIY LAGODA, Deceased,
and GRIGORY TIKHOPLAV,

                                                        Plaintiffs,

        -against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
and PORT AUTHORITY OF NEW YORK AND NEW
JERSEY POLICE DEPARTMENT a/k/a PORT AUTHORITY
POLICE DEPARTMENT a/k/a PAPD, PAPD OFFICER
MICHAEL BUGIADA, PAPD OFFICER ROBERT JOSEPH,
PAPD OFFICER JONATHAN PAPIA, PAPD OFFICER PAUL
MEZZACAPPA, and PAPD OFFICER JONATHAN DURAN,

                                                        Defendants.
--------------------------------------------------------------------------- x

**MEMORANDUM OF
LAW IN SUPPORT OF
MOTION FOR LEAVE
TO COMMENCE
ACTION**

Index No: 153490/2021

This Memorandum of Law is in Support of Plaintiffs' Motion for Leave ("Motion") to

Commence this Action against the Port Authority of New York and New Jersey ("Port Authority")

and Port Authority of New York and New Jersey Police Department ("PAPD").

## INTRODUCTION

1.     Plaintiffs seek leave of court pursuant to McKinney's Unconsolidated § 7108

("Section 7108") to commence this action within three years after the cause of action accrued. *See*

Section 7108.

2.     Section 7108 provides an exception to McKinney's Unconsolidated § 7107

("Section 7107"), which requires a party to serve notice on the Port Authority at least 60 days prior

to commencing a lawsuit, and the lawsuit must be commenced within a year of the date the cause

of action accrued. *See* Section 7107.

- 1 -

Case 1:21-cv-06226-NRB    Document 75-8    Filed 03/28/25    Page 5 of 19

3.      For the reasons set forth herein, Plaintiffs cause of action fits squarely into the exception provided by Section 7108: (1) Mr. Lagoda, through an appointed administrator of his estate, was and is entitled to make a claim against the Port Authority and PAPD; (2) Mr. Lagoda died as a result of the actions of the Port Authority, PAPD, and additional Defendants; and (3) by reason of the unique circumstances of Mr. Lagoda's death, the resulting investigation by the Office of the Attorney General ("OAG"), and the COVID-19 pandemic, no notice of claim was filed or action commenced within one year from the date of Mr. Lagoda's untimely demise.[1]

4.      Leave should therefore be given.

## BACKGROUND AND PROCEDURAL HISTORY

5.      The factual background regarding Evgeniy Lagoda's ("Mr. Lagoda") April 12, 2019, death has been detailed extensively in Plaintiffs' First Amended Complaint ("FAC"). *See* Dkt. 25, FAC ¶¶ 15–66.

6.      On October 4, 2019, Governor Andrew Cuomo issued an executive order that authorized the Office of the Attorney General ("OAG") to investigate Mr. Lagoda's death. *See* E.O. 147.24.

7.      The OAG's report was released on April 9, 2020.[2]  *See* E.O. 208.2.

8.      Undersigned counsel understood that pursuing legal action required appointing an administrator of Mr. Lagoda's estate. *See* N.Y. Est. Powers & Trusts Law § 5-4.1(1) (McKinney).

---

[1] As detailed, *infra*, Plaintiffs do not concede that the claim accrued from the date of death.  Instead, the claim accrued the day the OAG's report was released.

[2] A court "may take judicial notice of matters of public record, such as an incontrovertible official document or other reliable documents, the existence and accuracy of which are not disputed." *Commissioners of State Ins. Fund v. Brooklyn Barber Beauty Equip. Co.*, 740 N.Y.S.2d 180, 184 (Civ. Ct. 2001), clarified on denial of reconsideration, No. 195TSN2001, 2002 WL 32098265 (N.Y. Civ. Ct. Nov. 12, 2002) (internal quotation marks omitted); *see Sunhill Water Corp. v. Water Res. Comm'n*, 301 N.Y.S.2d 935, 938 (1969); *Sease v. Cent. Greyhound Lines of N.Y.*, 118 N.Y.S.2d 433, 437 (3d Dep't 1952), rev'd on other grounds, 306 N.Y. 284 (1954).

- 2 -

Case 1:21-cv-06226-NRB    Document 75-8    Filed 03/28/25    Page 6 of 19

Consequently, Marianna Moliver, Esq. was engaged on May 12, 2020, to petition the Queens County Surrogate's Court for the appointment of an administrator.

9.      Due to the COVID-19 pandemic and its effect on the operations of the New York State's court system, Plaintiff Alexey Tarasov was not appointed as the administrator of Mr. Lagoda's estate until January 8, 2021. *See* FAC at Ex. A.

10.     The pandemic's effect was felt in more ways than one.  In the summer and/or fall of 2020, Plaintiff Tarasov intended to fly to Russia to meet with Plaintiff Grigory Tikhoplav—Mr. Lagoda's father—for an in-person discussion regarding the passing of Plaintiff Tikhoplav's son, the OAG's report, appointing an administrator of his son's estate, and the potential pursuit of legal action.  *See* Aff. of Alexey V. Tarasov.  Restrictions on travel in both the United States and Russia prevented Plaintiff Tarasov from doing this.  *Id.*  Plaintiff Tarasov again intended to fly to Russia to meet with Plaintiff Tikhoplav in early 2021, but the pandemic's continued impact on travel hindered Plaintiff Tarasov's ability to do so.  *Id.*

11.     On April 7, 2021, Plaintiffs served a notice of claim upon the original Defendants to this action, the Port Authority and PAPD.  *See* FAC at Exs. B, C.

12.     On April 9, 2021, Plaintiffs filed suit.  Dkt. 1.

13.     On April 27, 2021, original Defendants requested an extension to June 9, 2021, to file a responsive pleading.  Plaintiffs assented to this request and signed the stipulation provided by the Defendants.

14.     On June 9, 2021, the Port Authority filed its Notice of Motion to Dismiss and the supporting documents.  Dkts. 17–21.

15.     On June 29, 2021, Plaintiffs timely filed the FAC.  Dkt. 25.

- 3 -

## AUTHORITIES AND LEGAL STANDARD

16.     Section 7107 states the following:

The foregoing consent is granted upon the condition that any suit, action or proceeding prosecuted or maintained under this act shall be commenced within one year after the cause of action therefor shall have accrued, and upon the further condition that in the case of any suit, action or proceeding for the recovery or payment of money, prosecuted or maintained under this act, a notice of claim shall have been served upon the port authority by or on behalf of the plaintiff or plaintiffs at least sixty days before such suit, action or proceeding is commenced. The provisions of this section shall not apply to claims arising out of provisions of any workmen's compensation law of either state.

Section 7107.

17.     Section 7108 states, in relevant part, the following:

Where the claimant is a person under the age of eighteen years or is mentally or physically incapacitated and by reason of such disability no notice of claim is filed or suit, action or proceeding commenced within the time specified in section seven hereof, or where a person entitled to make a claim dies and by reason of his death no notice of claim is filed or suit, action or proceeding commenced within the time specified in section seven hereof then any court in which such suit, action or proceeding may be brought may in its discretion grant leave to serve the notice of claim and to commence the suit, action or proceeding within a reasonable time but in any event within three years after the cause of action accrued.

Section 7108.

18.     The "modern trend of judicial decisions in cases involving application for leave [pursuant to Sections 7107 and 7108] is in favor of granting such leave unless absolutely forbidden by statute." *Barra v. Port of New York Auth.*, 192 N.Y.S.2d 838, 840 (Sup. Ct. 1959).

## ARGUMENT

### I.     THE DATE OF ACCRUAL OF THE CLAIM WAS NOT THE DATE OF MR. LAGODA'S DEATH.

19.     Plaintiffs' cause of action accrued upon the release of the OAG's report because that is when all the factual circumstances necessary to establish a cause of action occurred.

- 4 -

20.    Section 7107 stipulates that (1) a party must serve the Port Authority at least 60 days prior to the commencement of an action, and (2) the action must be commenced within one year of an event's *date of accrual*. *See* Section 7107.

21.    New York courts have held that "a cause of action accrues, triggering commencement of the limitations period, when all of the factual circumstances necessary to establish a right of action have occurred[.]" *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001)

22.    The OAG's report was publicly released on April 9, 2020, approximately a year after Mr. Lagoda's death. *See* New York State Office of the Attorney General, *Attorney General James' Special Investigations and Prosecutions Unit Releases Report on Investigation into the Death of Evgeniy Lagoda*, ag.ny.gov (April 9, 2020), https://ag.ny.gov/press-release/2020/attorney-general-james-special-investigations-and-prosecutions-unit-releases-0; New York State Office of the Attorney General, *Special Investigations and Prosecutions Unit Report on the Investigation into The Death of Evgeniy Lagoda*, ag.ny.gov (April 9, 2020), https://ag.ny.gov/sites/default/files/oag_report_-_lagoda.pdf.

23.    The OAG's "exhaustive investigation . . . did not find criminal culpability" but determined that PAPD's "handling of the incident [] raise[d] some legitimate concerns." *Id.*

24.    Despite the determination that criminal charges would not be brought, the OAG's investigation produced a detailed factual narrative upon which a civil claim could be sustained.

25.    The OAG's report armed Plaintiff with "all the factual circumstances necessary to establish a right of action." *Gaidon*, 96 N.Y.2d at 210.  Prior to release of the OAG's investigative findings, Plaintiffs were without the requisite knowledge to establish a cause of action.

- 5 -

26.     Thus, Plaintiffs had a cause of action—a wrongful death civil suit—that accrued the day the OAG's report was released, not the date of death.[3]

## II.     IF THE ACCRUAL DATE WERE DETERMINED TO BE THE DATE OF DEATH, IT WAS NOT POSSIBLE FOR PLAINTIFFS TO COMMENCE THIS ACTION IN ACCORDANCE WITH SECTION 7107.

27.     Assuming *arguendo* that the date of accrual was the date of Mr. Lagoda's death—a point which Plaintiffs refute and dispel—it was not possible for Plaintiffs to adhere to the statutory timing set forth in Section 7107 because of Plaintiffs' waiting for the release of the OAG's report and the impact of the COVID-19 pandemic.

28.     Plaintiff Tikhoplav was fully aware of and cooperated with the OAG's investigation, and anxiously awaited the release of the investigation's findings.

29.     However, it wasn't until the release of the OAG's report that Plaintiffs obtained "all the factual circumstances necessary to establish a right of action." *Gaidon*, 96 N.Y.2d at 210.

30.     Further, in the one year after the release of the OAG's report, the following occurred:

      a.  Governor Andrew Cuomo passed over 100 executive orders in response to the COVID-19 pandemic, including the Declaration of a Disaster Emergency in the State of New York and suspension and/or modification of laws relating to the Disaster Emergency. *See* New York State, *Governor Andrew Cuomo Executive Orders*, https://www.governor.ny.gov/executiveorders (last visited July 8, 2021).

      b.  In March 2020, Governor Cuomo issued Executive Order 208.2, stating, in relevant part, that court operations were "limit[ed] . . . to essential matters during the pendency of the COVID-19 health crisis" and "any specific time limit for the

---

[3] Plaintiffs adequately served the Port Authority and PAPD with the notice of claim, FAC ¶¶ 11–12, therefore complying with the notice requirements in Section 7107.

- 6 -

Case 1:21-cv-06226-NRB    Document 75-8    Filed 03/28/25    Page 10 of 19

commencement, filing, or service of any legal action, notice, motion, or other process or proceeding, as prescribed by the procedural laws of the state, including . . . the civil practice law and rules . . . or by any other statute, local law, ordinance, order, rule, or regulation, or part thereof, is hereby tolled from the date of this executive order until April 19, 2020." E.O. 208.2.

c. Governor Cuomo's toll continued for more than 220 days. *See* E.O. 208.72 (stating that the toll would no longer be in effect as of November 4, 2020).

d. Despite Governor Cuomo's lifting of the toll, New York's court system continued to be affected by the COVID-19 pandemic.

e. On May 12, 2020, Marianna Moliver, Esq. was engaged to represent Mr. Lagoda's estate in petitioning the Surrogate's Court to appoint an administrator. One of the required documents for filing a petition for Letters of Administration in the Surrogate's Court is an original death certificate for the decedent. As a result of the COVID-19 pandemic, the New York City Department of Health and Mental Hygiene ("Health Department") operated with considerable delays. Due to the delays and the limitations on filing only "essential matters," E.O. 208.2, it wasn't until approximately June 28, 2020, that Plaintiff Tarasov submitted a request to the Health Department for the issuance of an original death certificate for Mr. Lagoda. *See* Aff. of Alexey V. Tarasov. In multiple follow-up calls and correspondence with the Health Department, Plaintiff Tarasov was told that there were months-long delays in issuing death certificates due to a surge in the number of deaths in New

York from COVID-19. *Id.* Mr. Lagoda's death certificate—requested in June 2020—was issued only in February 2021.[4] *Id.*

f.  On November 3, 2020, Marianna Moliver submitted a petition to appoint Plaintiff Tarasov as the Administrator of the Estate of Mr. Lagoda, together with the original death certificate.  The delay in submitting this expedited application was again due to the impact of COVID-19 and its limitations on filing only "essential matters," E.O. 208.2.

g.  Plaintiff Tikhoplav suffered serious complications from being infected with COVID-19. *See* Aff. of Alexey V. Tarasov. He was confined to a hospital in Russia for over 40 days on supplemental oxygen starting in late November 2020, at one point loosing over 40 percent of his lung function. *Id.* Mr. Tikhoplav's illness hindered counsel and Plaintiff Tarasov's communication with him. *Id.*

h.  Plaintiff Tarasov was not able to be appointed administrator of Mr. Lagoda's estate until January 8, 2021.  FAC at Ex. A.

i.  In the summer and/or fall of 2020, Plaintiff Tarasov intended to fly to Russia to meet with Plaintiff Tikhoplav for an in-person discussion regarding this matter. *See* Aff. of Alexey V. Tarasov.  Restrictions on travel in both the United States and Russia precluded this. *Id.*  Plaintiff Tarasov again intended to fly to Russia to meet with Plaintiff Tikhoplav in early 2021 after Plaintiff Tikhoplav recovered from his bout with COVID-19, but the pandemic's continued impact on travel hindered Plaintiff Tarasov's ability to do so. *Id.*

---

[4] The delay in procuring a duplicate death certificate in New York prompted a request to Plaintiff Tikhoplav to mail his only original death certificate from Russia back to the United States in October 2020. *Id.*

- 8 -

Case 1:21-cv-06226-NRB   Document 75-8   Filed 03/28/25   Page 12 of 19

j. Plaintiffs served Defendants with the requisite notice of claim on April 7, 2021, within one year from the release of the OAG's report. FAC ¶¶ 11–12.

k. Plaintiffs commenced the current action on April 9, 2021. Dkt. 1.

31. Plaintiffs possessed neither the prescience nor the desire circumvent or impede the ongoing OAG's investigation by prematurely filing a notice of claim and commencing an action in order to adhere to the statutory timing set forth in Section 7107.

32. Further, the impact of COVID-19 on New York's court operations affected Plaintiffs' ability to initiate this action.

33. Thus, it was not possible for Plaintiffs to serve notice and commence this action in accordance with Section 7107 if the date of accrual were determined to be the date of death.

### III. PLAINTIFFS SHOULD BE GIVEN LEAVE OF COURT FOR AN EXTENSION OF TIME FOR COMMENCING THIS CLAIM PURSUANT TO SECTION 7108.

34. Plaintiffs should be given leave pursuant to Section 7108 to commence this claim because Plaintiffs have timely moved this Court for leave and Plaintiffs meet the requirements for leave set forth in Section 7108.

35. Section 7108 states that if a "person entitled to make a claim dies and by reason of his death no notice of claim is filed or suit, action or proceeding commenced within the time specified in [Section 7107]," then the person may seek leave of court to commence an action. Section 7108.

36. Section 7108 further provides that "[a]ny court in which such suit, action or proceeding may be brought may in its discretion grant leave to serve the notice of claim and to commence the suit, action or proceeding within a reasonable time but in any event within three years after the cause of action accrued." Section 7108.

- 9 -

37.     As detailed, *supra*, the events that triggered the date of accrual fit squarely into the exception provided by Section 7108: (1) Mr. Lagoda, through an appointed administrator of his estate, was entitled to make a claim against the Port Authority and PAPD; (2) he died as a result of the Defendants' actions; and (3) by reason of the unique circumstances of Mr. Lagoda's death, the resulting investigation by the OAG, and the COVID-19 pandemic, no notice of claim was filed or action commenced within one year from the date of Mr. Lagoda's untimely demise.[5]

38.     Further, this Motion is made 21 months prior to the deadline imposed by Section 7108.[6] *See* Section 7108 (seeking leave of court for an extension to commence the action must be made "within three years after the cause of action accrued").

39.     Accordingly, leave, in this action, is not "absolutely forbidden by statute" and thus this Court should not buck the "trend of judicial decisions in cases involving application for leave [pursuant to Sections 7107 and 7108, which] is in favor of granting [] leave." *See Barra*, 192 N.Y.S.2d at 840.

## IV.     IF GIVEN LEAVE, THE COURT HAS SUBJECT MATTER JURISDICTION OVER THIS ACTION.

40.     New York Supreme Courts are courts of "original, unlimited and unqualified jurisdiction." *Kagen v. Kagen*, 21 N.Y.2d 532, 537 (1968); *see also Thrasher v. U. S. Liab. Ins. Co.*, 19 N.Y.2d 159, 166 (1967) (noting that the NY Supreme Court is a court of general jurisdiction, with broad subject matter jurisdiction). A court lacks subject matter jurisdiction if "the matter before the court [i]s not the kind of matter on which the court ha[s the] power to rule.'" *Manhattan Telecommunications Corp. v. H & A Locksmith, Inc.*, 21 N.Y.3d 200, 203 (2013).

---

[5] Again, Plaintiffs do not concede that the claim accrued from the date of death. Instead, the claim accrued the day the OAG's report was released. Notice of claim was therefore timely served.

[6] Even if assuming the date of accrual is the date of death, this Motion is made nine months prior to the three-year deadline imposed by Section 7108.

- 10 -

41.     If leave is freely given, *see Barra*, 192 N.Y.S.2d at 840, this Court has subject matter jurisdiction over the action.  *See* Kagan*, 21 N.Y.2d 537; *see also* FAC ¶¶ 13–14.

## CONCLUSION

WHEREFORE, the Plaintiffs respectfully request that this Honorable Court grant their Motion.

Dated:  July 12, 2021
     Boston, MA

/s/ J. Christopher Amrhein, Jr.
Michael J. Sullivan (*pro hac vice*)
J. Christopher Amrhein, Jr. (*pro hac vice*)
*Ashcroft Law Firm*
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
msullivan@ashcroftlawfirm.com
camrhein@ashcroftlawfirm.com

Marianna Moliver
Moliver Law LLC
494 Eighth Avenue, 7th Floor
New York, NY 10001
marianna@moliverlaw.com

*Attorneys for Plaintiffs*

- 11 -

SUPREME COURT OF THE STATE OF NEW YORK
COUNTY OF NEW YORK

-------------------------------------------------------------------------- x

ALEXEY V. TARASOV, ESQ., Administrator of the
Estate of EVGENIY LAGODA, Deceased,
and GRIGORY TIKHOPLAV,

                                                    Plaintiffs,

        -against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY,
and PORT AUTHORITY OF NEW YORK AND NEW
JERSEY POLICE DEPARTMENT a/k/a PORT AUTHORITY
POLICE DEPARTMENT a/k/a PAPD, PAPD OFFICER
MICHAEL BUGIADA, PAPD OFFICER ROBERT JOSEPH,
PAPD OFFICER JONATHAN PAPIA, PAPD OFFICER PAUL
MEZZACAPPA, and PAPD OFFICER JONATHAN DURAN,

                                                    Defendants.
-------------------------------------------------------------------------- x

**AFFIDAVIT OF
ALEXEY V. TARASOV
IN SUPPORT OF
MOTION FOR LEAVE
TO COMMENCE
ACTION**

Index No: <u>153490/2021</u>

        ALEXEY V. TARASOV, being duly sworn, depose and state, pursuant to 22 NYCRR

§§ 520.11(a) and 602.2(a), as follows:

        1.      I am a Plaintiff in this action.

        2.      I have been appointed as an Administrator of the Estate of Evgeniy Lagoda ("Mr.

Lagoda"), deceased.

        3.      This Affidavit is in Support of Plaintiff's Motion for Leave ("Motion") to

Commence this Action against the Port Authority of New York and New Jersey ("Port Authority")

and the Port Authority of New York and New Jersey Police Department ("PAPD").

        4.      I have full knowledge regarding the handling of the claims and the lawsuit arising

from Mr. Lagoda's injuries and death. I have also dealt with and have knowledge of the Queens

Surrogate's Court issues detailed below.

- 1 -

Case 1:21-cv-06226-NRB   Document 75-8   Filed 03/28/25   Page 16 of 19

5.      Mr. Lagoda died on April 12, 2019, during an incident involving the Defendants, and the manner of his death together led to a subsequent investigation by the Office of the New York Attorney General ("OAG").

6.      Plaintiff Grigory Tikhoplav, father of Mr. Lagoda, corresponded extensively and cooperated with members of the OAG during the investigation.

7.      Prior to the release of the OAG report, Plaintiff Tikhoplav and I awaited the results of the investigation in order to finally obtain information regarding the acts and/or omissions on the part of Defendants that led to Mr. Lagoda's death.

8.      The OAG's report was published on April 9, 2020, which was almost a year after Mr. Lagoda's death.

9.      It is from the OAG report that Plaintiff Tikhoplav and I acquired the information necessary to formulate claims against the Port Authority and the remaining Defendants.

10.     On May 12, 2020, attorney Mariana Moliver, Esq. was engaged to represent Mr. Lagoda's estate in petitioning the Surrogate's Court to appoint an administrator .

11.     One of the required documents for filing a petition for Letters of Administration in the Surrogate's Court is an original death certificate for the decedent. On June 28, 2020, I submitted a request to the New York City Department of Health and Mental Hygiene ("Health Department") for the issuance of an original death certificate for Mr. Lagoda.

12.     As a result of the COVID-19 pandemic, the Health Department operated with considerable delays. In multiple follow-up calls and correspondence with the Health Department, I was told that there were months-long delays for issuing death certificates due to a surge in the number of deaths in New York from COVID-19.

- 2 -

13.     Due to the Health Department's acknowledgement and warning of delays, in October 2020, I requested that Plaintiff Tikhoplav mail his only original death certificate to the United States to be submitted to the Queens County Surrogate's Court.

14.     On or about November 3, 2020, attorney Mariana Moliver, Esq. submitted a petition to appoint Plaintiff Tarasov as the Administrator of the Estate of Mr. Lagoda, together with the original death certificate provided by Plaintiff Tikhoplav.

15.     The expedited application was not granted until January 8, 2021.

16.     The Health Department finally issued Mr. Lagoda's death certificate in February 2021—approximately seven months after I made the request.

17.     The timing of Evgeniy Lagoda death, occurring as it did less than a year before the start of a global pandemic unseen in more than a century, caused substantial delays in government (*e.g.*, the OAG's investigation) and court (*e.g.*, commencing lawsuits, filing applications) operations because of COVID-related problems.

18.     I planned to physically travel to Russia to meet with the Plaintiff Tikhoplav to discuss the matter in late spring/early summer 2020, but international travel was shut down due to COVID. Further, domestic and foreign COVID-related restrictions precluded my travel in subsequent months.

19.     COVID-related problems continued to interfere with communication in this case throughout late 2020, as Plaintiff Tikhoplav suffered serious complications from COVID-19, being confined to a hospital in Krasnodar, Russia, for over 40 days on supplemental oxygen in November and December 2020.

- 3 -

Case 1:21-cv-06226-NRB Document 75-8 Filed 03/28/25 Page 18 of 19

20. I again planned to physically travel to Russia to meet with Plaintiff Tikhoplav in early 2021 after he recovered from COVID-19, but the pandemic's continued impact on travel hindered my ability to do so.

21. While the COVID-19 pandemic was not a direct cause or consequence of Mr. Lagoda's death, it, along with the OAG's investigation, created substantial hurdles for Plaintiffs with respect to the commencement of this action.

Executed on: July 10, 2021

Location: Norman, Oklahoma

_____
Alexey V. Tarasov, Esq.

-4-

Case 1:21-cv-06226-NRB    Document 75-8    Filed 03/28/25    Page 19 of 19

## STATE OF OKLAHOMA

Cleveland County

On this 10th day of July, 2021, before me, the undersigned notary public, personally appeared Alexey V. Tarasov, Esq., proved to me through satisfactory evidence of identification, which was a Texas driver's license, to be the person who signed the preceding or attached document in my presence, and who swore to me that the contents of the document are truthful and accurate to the best of his knowledge and belief.

Notary Public



## CERTIFICATE OF CONFORMITY

Pursuant to CPLR 2309(c) and RPL § 299-a, it is hereby certified that the manner in which the acknowledgement was taken conforms with the laws of the state where the acknowledgment was taken. *See Ford Motor Co. Prestige Gown Cleaning Service, Inc.*, 748 N.Y.S.2d 235 (Civ. Ct. 2002) ("[A]n acknowledgment or proof made pursuant to [RPL] section 299 'must be accompanied by' a certificate of conformity.").

- 5 -