# EXHIBIT NN

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-----------------------------------------------------------------------X
ALEXEY V. TARASOV, ESQ., Administrator of the          Case No.: 21-cv-6226 (NRB)
Estate of EVGENIY LAGODA, Deceased, and
GRIGORY TIKHOPLAV,

                               Plaintiffs,          **AFFIDAVIT OF PAUL**
     -against-          **MEZZACAPPA**

PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, and PORT AUTHORITY OF NEW
YORK AND NEW JERSEY POLICE DEPARTMENT
a/k/a PORT AUTHORITY POLICE DEPARTMENT
a/k/a PAPD, PAPD OFFICER MICHAEL BUGIADA,
PAPD OFFICER ROBERT JOSEPH, PAPD OFFICER
JONATHAN PAPIA, PAPD OFFICER PAUL
MEZZACAPPA, and PAPD OFFICER JONATHAN
DURAN,

                        Defendants.
-----------------------------------------------------------------------X

STATE OF NEW YORK   )
                    SS:
COUNTY OF NEW YORK  )

     PAUL MEZZACAPPA, being duly sworn, deposes and says:

1.     I am a defendant in the above-captioned action.

2.     I am currently employed as a police officer with the Port Authority of New York and New Jersey Police Department ("PAPD"), and I was so employed on April 12, 2019.

3.     I received a bachelor's degree in Homeland Security from St. John's University in 2013, and I attended and graduated from the Port Authority Police Academy in 2014.

4.     At the academy, I received comprehensive training in various areas including behavioral sciences, police practices, New York and New Jersey laws, court procedures, defensive tactics, use of force training, and first aid.

5.     I also regularly participate in bi-annual in-service training, which includes updates on police procedures, use of force policies, and medical response protocols.

6.     On April 12, 2019, I was working the 2:00 p.m. to 10:00 p.m. shift and worked overtime on the 10:00 p.m. to 6:00 a.m. shift at JFK Airport.

7.     While at police command at Building 269, I heard over the radio that Officer Bugiada was dispatched to respond to a male having a seizure aboard JetBlue Flight 659.

8.     Shortly thereafter, I heard Officer Bugiada screaming over the radio that he needed help, stating that he was in a fight onboard the plane

9.     All units available were called to respond to Officer Bugiada's distress call.  I responded to the scene along with other officers. When I arrived, I entered through the front of the aircraft and proceeded to the back galley where the incident was occurring.

10.     Upon reaching the back galley, I observed Officer Bugiada, Officer Papia, and Officer Joseph attempting to restrain an individual, who I later learned was Evgeniy Lagoda ("Lagoda"), who was lying on the ground while the officers were trying to place his arms in handcuffs as he was actively resisting.

11.     I assisted in the restraint process by holding Lagoda's right leg down with my hands. Officer Duran was applying a compliance hold to Lagoda's other leg. At no point did I or any other officer that I observed sit on Lagoda, who was actively resisting.

12.     Shortly thereafter, the officers were able to secure Lagoda in handcuffs.

13.     Once Lagoda was handcuffed and he stopped resisting, my fellow officers and I were able to release the compliance holds.

14.     After Lagoda was handcuffed, the officers shifted him forward to create room and then rolled him onto his side. This was done in accordance with our training, which instructs that

2

once an individual is restrained and handcuffed, they should be rolled to their side as soon as possible.

15. While Lagoda was on his side, Officer Papia noticed that Lagoda's neck was turning blue.

16. Upon observing this sign of medical distress, Officer Joseph immediately checked for a pulse and determined that Lagoda had none.

17. The officers initiated emergency medical procedures. The handcuffs were removed, and Lagoda was placed in a position to receive medical care.

18. I participated in the medical response, specifically by providing oxygen to Lagoda while Officer Papia performed chest compressions.

19. An Automated External Defibrillator (AED) was brought to the back galley from the front of the aircraft and the pads were properly attached to Lagoda.

20. The AED advised "no shock." As per our training, we continued with CPR compressions and oxygen following the AED's instructions.

21. The AED went through multiple cycles of analysis, each time advising "no shock" and directing us to continue CPR. These cycles continued for several minutes until EMS arrived at the scene.

22. Throughout this entire medical emergency, I remained with Lagoda, continuing to assist with emergency medical aid.

23. After Lagoda was handcuffed, none of the officers applied force to Lagoda's body. Once Lagoda started exhibiting medical distress, we immediately removed the handcuffs and started CPR.

3

24. All actions I took during this incident were in accordance with my training and experience as a police officer and were reasonable and necessary under the circumstances.

25. The above statements are true and accurate to the best of my knowledge.

PAUL MEZZACAPPA

Sworn to before me this
26 day of March 2025

Notary Public

Dennis J. Brewer, Jr.
Notary Public, State of New York
Reg. No. 01BR6427280
Qualified in Kings County
Commission Expires 12/27/25

4