# EXHIBIT QQ

Case 1:21-cv-06226-NRB    Document 76-20    Filed 03/28/25    Page 2 of 5

2005 WL 3388609
Only the Westlaw citation is currently available.
United States District Court,
E.D. New York.

Sherwin BLYDEN, Plaintiff,
v.
N.Y.P.D., Defendant.

No. 05 CV 4740 SJF LB.
|
Dec. 12, 2005.

**Attorneys and Law Firms**

Sherwin Blyden, New York, NY, pro se.

OPINION & ORDER

FEUERSTEIN, J.

I. Introduction

 **\*1** Plaintiff Sherwin Blyden ("Plaintiff"), proceeding *pro se,* brings this action alleging a deprivation of his civil rights arising out of his allegedly involuntarily hospitalization at Kings Bridge Psychiatric Hospital. Plaintiff also claims mistreatment by unnamed police officers and a deprivation of his property on July 30, 2005. He seeks $75,000 in money damages and an order of protection against the New York City Police Department ("NYPD"). Plaintiff's request to proceed *in forma pauperis* is granted pursuant to 28 U.S.C. § 1915, but the complaint is dismissed with prejudice pursuant to 28 U.S.C. § 1915(e)(2)(B) unless Plaintiff files an amended, complaint within thirty (30) days of this Order.

II. Background

Plaintiff, who alleges that he is homeless and disabled, states that on July 30, 2005, he was approached by two "white officers" on a subway platform Brooklyn, New York. According to Plaintiff, the officers asked him if he was "alright" and if he needed an ambulance. (Compl. at 1). Plaintiff claims that, although he responded that he was fine and did not require an ambulance, (*id.*), the police blocked his path, told him to keep quiet and called on their radio for back-up. (*Id.*)

According to Plaintiff, within several minutes, at least twelve police officers arrived, who proceeded to knock him over, and then pull him back to his feet. (*Id.* at 2). Plaintiff was told he was not under arrest but one of the officers allegedly sliced open his pocket with a knife and removed his "phone numbers from both pockets" and also took his identification, birth certificate, reading glasses, cigarettes and metrocard. (*Id.* at 2–3). Plaintiff claims he was taken by ambulance to Kings Bridge Psychiatric Hospital against his will and held there until August 6, 2005. [1] (*Id.* at 4.) According to Plaintiff, the police refused to issue Plaintiff a summons or "a copy of the arrest." (*Id.*)

Plaintiff alleges that he was pulled and pushed as he was removed from the subway station causing "a bad strain" in both legs for which he now must wear knee braces. (*Id.* at 3–4). Plaintiff also claims to have suffered a pulled groin muscle and muscle strain in both hips. (*Id.* at 4). Finally, Plaintiff alleges that, in addition to the contents of his pockets, his "pull cart," "ca [r]rying bags" and a pair of boots were taken but never returned. (*Id.*)

Plaintiff seeks $75,000 in damages and an order of protection against the NYPD. (*Id.* at 5–6). According to Plaintiff, the NYPD has "been very hostile" to him "with intent to kill him" since 1991, when Plaintiff discovered a "video camera" in his apartment. Plaintiff also claims the NYPD harbors a vendetta against him because he filed an action in the United States Supreme Court against the NYPD. (*Id.* at 6).

III. Standard of Review

In reviewing plaintiff's complaint, the Court is mindful that because plaintiff is proceeding *pro se,* his submissions should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe,* 449 U.S. 5, 9 (1980). Nevertheless, under 28 U.S.C. § 1915(e)(2)(B), a district court shall dismiss an *in forma pauperis* action when the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is "frivolous" when either: (1) "the factual contentions are clearly baseless, such as when allegations are the product of delusion of fantasy," or (2) "the claim is based on an indisputably meritless legal theory." *Livingston v. Adirondack Beverage Co.,* 141 F.3d 434, 437 (2d Cir.1998) (internal quotations and citations omitted).

IV. Analysis

A. 42 U.S.C. § 1983

1. Unreasonable Search and Seizure

**\*2** Although plaintiff does not refer to 42 U.S.C. § 1983, the Court construes this action as a civil rights action as the basis for this Court's jurisdiction. In order to maintain a claim under § 1983, Plaintiff must allege that (1) "the conduct ... [was] committed by a person acting under color of state law," and (2) "the conduct ... deprived ... [him] of rights, privileges or immunities secured by the Constitution or laws of the United States." *Pitchell v. Callan,* 13 F.3d 545, 547 (2d Cir.1994).

Plaintiff's complaint fails to state a claim upon which relief may be granted for several reasons. First, the sole defendant, the NYPD, is not a proper party to a § 1983 action. *Bailey v. New York City Police Dep't,* 910 F.Supp. 116, 117 (E.D.N.Y.1996) (citing New York City Charter, Chapter 17, § 396 which provides that "all actions and proceedings for the recovery of penalties for the violation of any law shall be brought in the name of the City of New York and not that of any agency"); *Signorile v. City of New York,* 887 F.Supp. 403, 421–22 (E.D.N.Y.1995) (holding that the NYPD is not a proper party in a § 1983 action).

Moreover, to assert a claim of municipal liability under § 1983, a plaintiff must allege the existence of a policy or custom that caused injury, and a direct causal connection between that policy or custom and the deprivation of a constitutional right. *Board of County Comm'rs of Bryan County, Okl. v. Brown,* 520 U.S. 397, 403 (1997) (citing *Monell v. New York City Dep't of Social Serv.,* 436 U.S. 658 (1978)). A single incident alleged in a complaint, especially if it involved only actors below the policymaking level, generally will not create an inference of the existence of a custom or policy. *Campbell v. Giuliani,* No. 99 Civ. 2603, 2000 WL 194815, at \*5 (E.D.N.Y., Feb. 16, 2000). Plaintiff has not alleged any policy or custom that led to the alleged deprivation of his constitutional rights, and his claim therefore cannot be sustained.

2. Involuntary Hospitalization

Plaintiff's complaint, as presently stated, also fails to state a claim under 42 U.S.C. § 1983 for involuntary hospitalization. Involuntary civil commitment implicates two potential constitutional issues: the Fourth Amendment prohibition against unreasonable search and seizure, and the right to due process under the Fourteenth Amendment. *See Glass v. Mayas,* 984 F.2d 55, 58 (2d Cir.1993); *Rodriguez v. City of*

*New York,* 72 F.3d 1051, 1061 (2d Cir.1995) (as cited in *Drozdik v. City of New York,* 01–cv–3300, 2003 U.S. Dist. LEXIS 2336 (S.D.N.Y., Feb. 20, 2003)).

a. Due Process

"An involuntary civil commitment is a 'massive curtailment of liberty,' and therefore cannot permissibly be accomplished without due process of law." *Rodriguez,* 72 F.3d at 1061 (quoting *Vitek v. Jones,* 445 U.S. 480, 491–92 (1980)). Involuntary commitment is constitutional, however, if the person is both mentally ill and a danger to herself or others. *Rodriguez,* 72 F.3d at 1061; *O'Connor v. Donaldson,* 422 U.S. 563, 580 (1975). The New York statutory scheme for civil commitment has been found to satisfy these constitutional requirements. *Project Release v. Prevost,* 722 F.2d 960, 971–74 (2d Cir.1983) (holding that due process is afforded by numerous and elaborate provisions for notice and hearing, periodic reassessment of patient's status and provision for appointment of counsel); New York Mental Hygiene Law, Article 9, Hospitalization of the Mentally III. Whether the commitment is on an emergency or non-emergency basis, the statutory scheme requires that a physician make a medical determination that the patient poses a danger to himself or others. *Rodriguez,* 72 F.3d at 1062–63.[2]

**\*3** Plaintiff does not state whether he was committed under New York Mental Hygiene Law § 9.27 (involuntary admission on medical certification) or § 9.39 (emergency admission for immediate observation and treatment). However, if the defendants adhered to the relevant procedural requirements, the demands of substantive and procedural due process have been met and no claim under § 1983 has been stated. *Rodriguez v. City of New York,* 72 F.3d 1051. Plaintiff has made no allegation regarding what procedures were followed or how his rights were violated. Plaintiff's conclusory allegation that defendant violated his civil rights is insufficient to sustain his complaint.

b. Unreasonable Seizure

"Cases have also analyzed involuntary commitment claims as implicating the Fourth Amendment right against unreasonable search and seizure." *Drozdik,* 2003 WL 366639, at \*5 (citing *Glass v. Mayas,* 984 F.2d at 58). There is no Fourth Amendment violation for involuntary hospitalization, however, "if there are reasonable grounds for believing that the person seized is subject to seizure under the governing legal standard." *Glass,* 984 F.2d at 58. Plaintiff has not alleged that the defendant failed to satisfy the requirements of the

governing standard and thus has not stated a claim under § 1983.

#### c. Loss of Property

Plaintiff alleges that his possessions were taken from him or left behind when he was removed by police from the subway station. In order to assert a claim under the Fourteenth Amendment for the loss of his personal property upon his involuntary hospitalization, Plaintiff must allege that the post-deprivation remedies available under state law were inadequate or that he was never given proper notice of the procedures. *See Larkin v. Savage,* 318 F.3d 138, 141 (2d Cir.2003) (discussing *Alexandre v. Cortes,* 140 F.3d 406 (2d Cir.1998)). Plaintiff does not make any allegations regarding the adequacy or appropriateness of the procedures for reclaiming his property. Plaintiff also does not provide any details as to whether he was notified of the procedures and whether he attempted to follow them. The conclusory allegations are therefore insufficient to sustain his due process claim.

### V. Leave to Amend

Rule 15(a) of the Federal Rules of Civil Procedure provides that leave to amend a pleading "shall be freely given when justice so requires." Fed.R.Civ.P. 15(a). Because "[a] *pro se* complaint is to be read liberally," the Second Circuit has held that a *pro se* plaintiff shall be granted leave to amend if there is "any indication that a valid claim may be stated." *Gomez v. USAA Fed. Sav. Bank,* 171 F.3d 794, 795 (2d Cir.1999) (quoting *Branum v. Clark,* 927 F.2d 698, 705 (2d Cir.1991)). The Court therefore grants plaintiff leave to file an amended complaint within thirty (30) days of the date of this Order.

### VI. CONCLUSION

The complaint is DISMISSED for failure to state a claim on which relief may be granted. 28 U.S.C. § 1915(e)(2)(B)(ii). Dismissal is with prejudice unless Plaintiff files an amended complaint within thirty (30) days of the date of this Order. A copy of this Order shall be attached to the amended complaint. No summons will issue at this time and all further proceedings shall be stayed for thirty (30) days. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *Coppedge v. United States,* 369 U.S. 438, 444–45 (1962).

**\*4** IT IS SO ORDERED.

**All Citations**

Not Reported in F.Supp.2d, 2005 WL 3388609

---

### Footnotes

1    According to the hospital records plaintiff attaches to his request to proceed *in forma pauperis.* Plaintiff was admitted on July 26, 2005 rather than July 30, 2005 and was released on August 10, 2005 rather than August 6, 2005. *See* Kings County Hospital Center Department of Psychiatry and Nursing Discharge records.

2    Pursuant to New York's Mental Hygiene Law, a patient may be involuntarily committed to a psychiatric facility on a non-emergency basis if he is (1) in need of inpatient care that is "essential to [his] welfare," (2) "unable to understand the need for such care and treatment," and (3) poses "a substantial risk of physical harm" to himself or others. N.Y. Mental Hygiene Law §§ 9.01, 9.27. The patient can be admitted for treatment "upon the certificates of two examining physicians, accompanied by an application for admission." *Id.* § 9.27. The application for admission, which must be executed within ten days prior to admission, can be submitted by, among others, "the director of the hospital ... in which the patient is hospitalized," or "a qualified psychiatrist who is ... treating such person for a mental illness in a facility licensed or operated by the [New York] office of mental health." *Id.,* § 9.27(b)(6)(11). The director of the hospital cannot admit the patient until a third physician who is a member of the hospital staff confirms that the patient satisfies the criteria for hospitalization. *Id.,* § 9.27(e). A patient has the right to contest his involuntary commitment through a court hearing scheduled within five days from the date notice of the request is received by the court. *Id.,* § 9.31; *Doe v. Harrison,* No. 01–CV–12741, 2003 WL 1535273, at *1 (S.D.N.Y., Mar. 24, 2003). New York Mental Hygiene Law § 9.39

2005 WL 3388609

provides for involuntary commitment on an emergency basis and requires a finding that the patient's alleged mental illness be "likely to result in serious harm to himself or others."

---

**End of Document**                                      © 2025 Thomson Reuters. No claim to original U.S. Government Works.