# EXHIBIT SS

Case 1:21-cv-06226-NRB   Document 76-22   Filed 03/28/25   Page 2 of 11

Jourdain v. Port Authority of New York and New Jersey, Not Reported in Fed. Supp....

2020 WL 2513447

2020 WL 2513447
Only the Westlaw citation is currently available.
**Not for print or electronic publication**
United States District Court, E.D. New York.

Sodna JOURDAIN, Plaintiff,
v.
The PORT AUTHORITY OF NEW YORK AND
NEW JERSEY, The Port Authority of New York and
New Jersey Police Department ("PAPD"), PAPD
Officer Frank Annunziata, PAPD Officer Donger
Mei, and PAPD Sergeant Sean Spollen, Defendants.

19-cv-1168 (ARR) (JO)
|
Signed 05/15/2020

**Attorneys and Law Firms**

Evan Brustein, Brustein Law PLLC, Ezra Bernard Glaser, Marion Ann Conde Da Silveira, Conde & Glaser, LLP, New York, NY, for Plaintiff.

Karla D. Denalli, The Port Authority of New York & New Jersey, New York, NY, for Defendants.

**Opinion & Order**

ROSS, United States District Judge:

**\*1** The plaintiff, Sodna Jourdain, brings this action against defendants The Port Authority of New York and New Jersey, The Port Authority of New York and New Jersey Police Department ("PAPD"), PAPD Officer Frank Annunziata, PAPD Officer Donger Mei, and PAPD Sergeant Sean Spollen, alleging various claims pursuant to 42 U.S.C. § 1983 and New York state law. The defendants move for summary judgment, and the plaintiff opposes. For the reasons set forth below, the defendants' motion is granted in part and denied in part. To the extent that the motion is denied, it is denied with leave to renew, as set forth in more detail below.

**FACTUAL AND PROCEDURAL BACKGROUND**

Plaintiff Sodna Jourdain works for Allied Universal Security Services ("Allied") as an Airport Security Agent at John F. Kennedy airport ("JFK"). Defs.' Rule 56.1 Statement ¶ 8, ECF No. 34-1 ("Defs.' 56.1"); Pl.'s Rule 56.1 Counterstatement ¶ 8, ECF No. 34-16 ("Pl.'s 56.1"). On September 17, 2018, during the 9:00 AM hour, Jourdain was working at JFK's "Guard Post V." Defs.' 56.1 ¶¶ 9, 11; Pl.'s 56.1 ¶¶ 9, 11. PAPD Officer Frank Annunziata approached Guard Post V in an unmarked PAPD vehicle. Defs.' 56.1 ¶¶ 5, 12; Pl.'s 56.1 ¶¶ 5, 12. He swiped his employee identification card (his "SIDA" card) and entered his security code. Defs.' 56.1 ¶ 13; Pl.'s 56.1 ¶ 13. Nonetheless, Jourdain would not lower the barrier at her post to allow Annunziata to drive into the area she was guarding. Defs.' 56.1 ¶ 15; Pl.'s 56.1 ¶ 15. She told Annunziata that she did not lower the barrier because his vehicle did not have a Port Authority license plate. Defs.' 56.1 ¶ 16; Pl.'s 56.1 ¶ 16. According to Jourdain, she had learned during her training that she was not supposed to grant access to vehicles that did not have Port Authority license plates and that she had to contact her supervisor if a person driving a vehicle without such a license plate sought access. *See* Jourdain Dep. Ex. F at 54:13–55:23, ECF No. 34-8.

PAPD Sergeant Sean Spollen then drove up to Guard Post V in his marked police vehicle, which had a Port Authority license plate. Defs.' 56.1 ¶¶ 7, 17–18; Pl.'s 56.1 ¶¶ 7, 17–18. When Annunziata informed Spollen that Jourdain would not lower the barrier for him, Spollen told Jourdain that he would escort Annunziata through the guard post. Defs.' 56.1 ¶ 19; Pl.'s 56.1 ¶ 19. According to the defendants, Jourdain refused to allow Spollen to escort Annunziata through the guard post. Defs.' 56.1 ¶ 20. According to Jourdain, she explained to Spollen that he could escort Annunziata through the guard post if Spollen turned on his vehicle's flashing lights and moved his vehicle so that he was driving in front of Annunziata; alternatively, Annunziata and Spollen could have waited for her to receive instructions from her supervisor. *See* Jourdain Dep. 90:25–91:20. Annunziata testified that it would have been compliant with Port Authority rules for Spollen to escort him by driving behind him. Annunziata Dep. Ex. E at 53:8–54:4, ECF No. 34-7.

**\*2** Annunziata and Spollen decided to issue Jourdain a Breach of Rules ("BOR") for declining to lower the barrier for them. *See* Annunziata Dep. 54:5–11; Spollen Dep. Ex. H at 106:18–107:2, ECF No. 34-10. According to Christopher Kaddo, an Assistant Manager of JFK's Airport Operations Center, "[a] BOR is issued to airport workers who violate standard procedures and commit serious infractions of JFK rules and regulations[.]" Kaddo Aff. Ex. I ¶ 4, ECF No. 34-11. Annunziata testified that he and Spollen asked to see Jourdain's identification card. Annunziata Dep. 60:15–

61:18. Annunziata testified that Spollen took Jourdain's identification card from her, "and she grabbed his arm, and they got into a tug of war ... over the [identification] card[.]" *Id.* 41:5–7, 44:10–13, 44:24–45:8. Spollen testified that he took Jourdain's identification card from her hand, and she grabbed his wrist and pulled the card back out of his hand. Spollen Dep. 120:12–20. Jourdain placed the card in a carrier around her neck, and Spollen then pulled it out of that carrier. *Id.* 120:22–121:5. Jourdain testified that she was calmly explaining that she was simply following protocol when Spollen "forcefully" tried to take her identification card from the carrier around her neck. Jourdain Dep. 106:18–107:24, 110:14–111:17. She acknowledged that Spollen first asked her to hand him the identification card and that in response she said that she did not want to get fired and begged him to be patient while she called her supervisor. *Id.* 107:25–108:10.

PAPD Officer Donger Mei then drove up to the guard post in a marked police car. Defs.' 56.1 ¶¶ 6, 24; Pl.'s 56.1 ¶¶ 6, 24. Spollen directed him to handcuff Jourdain. Defs.' 56.1 ¶ 24; Pl.'s 56.1 ¶ 24. Mei's deposition testimony indicates that he did, in fact, handcuff Jourdain. *See* Mei Dep. Ex. G at 76:7–13, ECF No. 34-9. Annunziata then issued Jourdain two BORs, with the stated bases for those BORs being that Jourdain failed to comply with the PAPD and failed to hand over her identification card. Defs.' 56.1 ¶ 25; Pl.'s 56.1 ¶ 25. The individual defendants removed Jourdain's handcuffs and handed her the BORs, and she gathered her belongings and left her post. Defs.' 56.1 ¶ 26; Pl.'s 56.1 ¶ 26.

Jourdain filed suit in Kings County Supreme Court. *See* Notice of Removal, ECF No. 1. The Port Authority removed the action to this court. *See id.* Pursuant to 42 U.S.C. § 1983, Jourdain claimed that the individual defendants violated her due process, equal protection, and First Amendment rights, her right not to have cruel and unusual punishment inflicted on her, her right to a fair trial, and her right to be free from malicious criminal prosecution; she also claimed that the individual defendants falsely arrested her and subjected her to an "illegal search." Am. Compl. ¶¶ 22, 32, 33, 37, 46–48, 58, ECF No. 10. The amended complaint can also be read to raise a § 1983 claim for excessive force. *See id.* ¶¶ 22, 33, 37. In addition, the amended complaint can be read to assert state law claims for false arrest, assault, battery, intentional infliction of emotional distress, and negligent infliction of emotional distress. *See id.* ¶¶ 22, 33, 50. The amended complaint also raises claims against the Port Authority and the PAPD on a *Monell* theory, a negligent hiring, retention, and supervision theory, and a *respondeat superior* theory. *See*

*id.* ¶¶ 49–62. The amended complaint indicates that Jourdain seeks punitive damages. *See id.* ¶ 62.

The defendants moved for summary judgment on the claims against the Port Authority; the due process, equal protection, First Amendment, malicious prosecution, and right to a fair trial claims; the § 1983 false arrest claim; and any duplicative causes of action raised in the amended complaint. *See* Defs.' Mem. of Law in Supp. of Mot. for Summ. J. 5–21, ECF No. 34-15 ("Defs.' Br."). [1] They also moved for summary judgment on the infliction of emotional distress claims. *See id.* at 17–18. In addition, they assert that Jourdain cannot seek punitive damages against the Port Authority. *See id.* at 21–23. Finally, they ask that I dismiss the Amended Complaint as against the PAPD. *See id.* at 6 n.1.

In response, Jourdain withdrew her claims for *Monell* liability; negligent hiring, retention, or supervision; violation of her due process and equal protection rights; malicious prosecution; denial of her right to a fair trial; and punitive damages as against the Port Authority. Pl.'s Mem. of Law in Opp. to Defs.' Mot. for Summ. J. 4 n.1, ECF No. 34-19 ("Pl.'s Br."). Thus, those claims are dismissed.

**\*3** The defendants have not moved for summary judgment on the state-law false arrest, assault, or battery claims, or on these claims on a *respondeat superior* theory against the Port Authority. They also have not moved for summary judgment on the excessive force claim. Thus, those claims survive.

I must address the following remaining claims: First Amendment retaliation pursuant to § 1983 against the individual defendants, false arrest pursuant to § 1983 against the individual defendants, intentional and negligent infliction of emotional distress, cruel and unusual punishment, and illegal search. I must also address the propriety of maintaining this action against the PAPD as a defendant. As explained below, I deny summary judgment on the § 1983 First Amendment and false arrest claims as against the individual defendants. I grant summary judgment on the intentional and negligent infliction of emotional distress claims. I do not read the amended complaint as raising viable claims for cruel and unusual punishment or illegal search; to the extent that Jourdain intends to assert a claim for cruel and unusual punishment, it is dismissed. I dismiss all claims as against the PAPD, which is not a properly suable entity.

In addressing which claims survive and which do not, I will resolve the defendants' argument regarding duplicative causes of action.

## DISCUSSION

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The function of the court is not to resolve disputed issues but rather to determine whether there is a genuine issue to be tried. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49 (1986). "While genuineness runs to whether disputed factual issues can 'reasonably be resolved in favor of either party,' ... materiality runs to whether the dispute matters, i.e., whether it concerns facts that can affect the outcome under the applicable substantive law." *McPherson v. Coombe*, 174 F.3d 276, 280 (2d Cir. 1999) (alteration in original) (quoting *Graham v. Henderson*, 89 F.3d 75, 79 (2d Cir. 1996)).

In assessing whether summary judgment is appropriate, the court considers "the pleadings, depositions, answers to interrogatories and admissions on file, together with any other firsthand information including but not limited to affidavits." *Nnebe v. Daus*, 644 F.3d 147, 156 (2d Cir. 2011) (quoting *In re Bennett Funding Grp., Inc.*, 336 F.3d 94, 99 (2d Cir. 2003)); *see Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986). The moving party carries the burden of demonstrating that there is no genuine dispute respecting any material fact and "may obtain summary judgment by showing that little or no evidence may be found in support of the nonmoving party's case." *Gallo v. Prudential Residential Servs., Ltd. P'ship*, 22 F.3d 1219, 1223–24 (2d Cir. 1994). Once this burden is met, in order to avoid the entry of summary judgment, the non-moving party "must come forward with specific facts showing that there is a genuine issue for trial." *LaBounty v. Coughlin*, 137 F.3d 68, 73 (2d Cir. 1998) (citing *Rexnord Holdings, Inc. v. Bidermann*, 21 F.3d 522, 525–26 (2d Cir. 1994)). In reviewing the record before it, "the court is required to resolve all ambiguities and draw all permissible factual inferences in favor of the party against whom summary judgment is sought." *McLee v. Chrysler Corp.*, 109 F.3d 130, 134 (2d Cir. 1997).

**I. I deny summary judgment on the First Amendment retaliation claim.**

**\*4** The defendants move for summary judgment on Jourdain's First Amendment retaliation claim.[2] In their brief, the defendants argue that the plaintiff has not sufficiently pled a First Amendment retaliation claim under the generally applicable First Amendment retaliation standard. *See* Defs.' Br. 12. However, in their reply brief, the defendants argue for the first time that the plaintiff is a public employee and that the undisputed facts show that the elements of the First Amendment retaliation claim for public-employee plaintiffs are not satisfied. *See* Defs.' Mem. of Law in Reply 1–5, ECF No. 34-24 ("Defs.' Reply"). Because the defendants raised this argument for the first time in their reply brief, I gave Jourdain the opportunity to file a supplemental brief in response to this argument. Jourdain filed a supplemental brief and declaration.

I will first discuss why I deny summary judgment under the First Amendment retaliation standard applicable to public employees. I will then discuss why I deny summary judgment under the generally applicable standard.

**a. The defendants have not met their burden to show that it is undisputed that the plaintiff is a public employee.**

To show First Amendment retaliation, a plaintiff must show that "(1) [the plaintiff's] speech or conduct was protected by the First Amendment; (2) the defendant took an adverse action against [the plaintiff]; and (3) there was a causal connection between this adverse action and the protected speech." *Matthews v. City of New York*, 779 F.3d 167, 172 (2d Cir. 2015) (quoting *Cox v. Warwick Valley Cent. Sch. Dist.*, 654 F.3d 267, 272 (2d Cir. 2011)). When the plaintiff is a public employee, the First Amendment protects the plaintiff's speech only if the plaintiff "spoke as a citizen on a matter of public concern." *Id.* (quoting *Garcetti v. Ceballos*, 547 U.S. 410, 418 (2006)). That is, the plaintiff must have spoken "as a citizen rather than solely as an employee[,]" and "the subject of the [plaintiff]'s speech" must have been "a matter of public concern[.]" *Id.* (quoting *Jackler v. Byrne*, 658 F.3d 225, 235 (2d Cir. 2011)). "[W]hen public employees make statements pursuant to their official duties, the employees are not speaking as citizens for First Amendment purposes, and the Constitution does not insulate their communications from employer discipline." *Ceballos*, 547 U.S. at 421. If the plaintiff does show that she spoke as a citizen on a matter of public concern, then the defendants

may either (1) demonstrate by a preponderance of the evidence that [they] would have taken the same adverse action regardless of the protected speech, or (2) show that the plaintiff's expression was likely to disrupt the government's activities, and that the likely disruption was sufficient to outweigh the value of the plaintiff's First Amendment expression.

*Cobb v. Pozzi*, 363 F.3d 89, 102 (2d Cir. 2004) (citing *Mandell v. Cty. of Suffolk*, 316 F. 3d 368, 382–83 (2d Cir. 2003)). This second option "is commonly known as the '*Pickering* balancing test' and represents a question of law for the court to decide." *Id.* (quoting *Locurto v. Safir*, 264 F.3d 154, 166 (2d Cir. 2001)); *see Pickering v. Bd. of Educ.*, 391 U.S. 563, 568 (1968).

**\*5** Some plaintiffs who do not work directly for the government are nonetheless treated as public employees when they claim First Amendment retaliation. The First Amendment protects independent contractors for the government from retaliation, and "the *Pickering* balancing test, adjusted to weigh the government's interests as contractor rather than as employer, determines the extent of their protection." *Bd. of Cty. Comm'rs v. Umbehr*, 518 U.S. 668, 673 (1996). Thus, the United States Court of Appeals for the Second Circuit has applied the public employee First Amendment retaliation standard when the plaintiff was the founder of a security company under contract with a city. *See Golodner v. Berliner*, 770 F.3d 196, 199, 202, 202 n.3 (2d Cir. 2014). District courts in this circuit, too, have applied the public employee standard to various independent-contractor plaintiffs. *See Thibault v. Spino*, No. 3:19-cv-872 (JBA), 2019 WL 7293538, at *1, *4 (D. Conn. Dec. 30, 2019) (applying public employee standard when plaintiff was employed as bus driver for corporation that had contract to provide transportation for public school); *Castro v. Cty. of Nassau*, 739 F. Supp. 2d 153, 161, 178–79, 178 n.18 (E.D.N.Y. 2010) (applying public employee standard when plaintiff was security guard with contract to work at public school); *Dorsett-Felicelli, Inc. v. Cty. of Clinton*, 371 F. Supp. 2d 183, 186–87, 191, 191 n.6 (N.D.N.Y. 2005) (applying public

employee standard when plaintiff was president and executive director of entities under contract to provide services to state).

In this case, the defendants argue in their reply brief that I should treat Jourdain as a public employee because "she is a contract employee for the Port Authority." Defs.' Reply 2. In support, they cite: (1) Jourdain's Rule 56.1 Counterstatement, where she marked as undisputed the fact that she "is employed by Allied Universal Security Services ('Allied'), as an Airport Security Agent at JFK" and added that "as an Airport Security agent her duties and responsibilities included preventing unauthorized persons and unauthorized vehicles from accessing the secure area of the Airport by checking credentials for both the person and the vehicle[,]" Pl.'s 56.1 ¶ 8; and (2) two lines from Jourdain's deposition transcript, where Jourdain stated "I work for Allied, but we are under Port Authority contract[,]" Jourdain Dep. 11:11–12; *see* Defs.' Reply 2, 2 n.3. Jourdain responds that the record is insufficient to show that she should be treated as a public employee. *See* Pl.'s Suppl. Br. in Opp. to Defs.' Mot. 2–3, ECF No. 36. In particular, she asserts that the parties did not exchange discovery regarding the relationship between Allied and the Port Authority—nor did the defendants request such discovery. *Id.* at 3; *see* Conde Decl. ¶¶ 5–6, ECF No. 35.

I conclude that the record is insufficient to establish that it is undisputed that Jourdain is a public employee for the purpose of applying the First Amendment retaliation standard. Jourdain works for Allied, which the defendants do not claim is itself a government entity. *See* Defs.' 56.1 ¶ 8; Pl.'s 56.1 ¶ 8. Therefore, in order for the public employee standard to govern, Jourdain would have to be an independent contractor for the government. It is true that Jourdain testified that she works for Allied, which is "under Port Authority contract." Jourdain Dep. 11:11–12. However, the defendants have not produced direct evidence of any contract between the Port Authority and Allied, nor have they established that Jourdain has the requisite personal knowledge to testify to whether Allied is an independent contractor for the Port Authority. *See* Fed. R. Evid. 602; *Nora Beverages, Inc. v. Perrier Grp. of Am., Inc.*, 164 F.3d 736, 746 (2d Cir. 1998) (citing *Raskin v. Wyatt Co.*, 125 F.3d 55, 66 (2d Cir. 1997)) ("On a summary judgment motion, the district court properly considers only evidence that would be admissible at trial."). Further, at her deposition, Jourdain was asked whether the facility for which she provided security was a Port Authority facility. Jourdain Dep. 11:15–18. She responded "JFK, yeah, I think so. I'm not sure." *Id.* 11:19. This testimony belies any contention that Jourdain possesses the requisite knowledge

Case 1:21-cv-06226-NRB   Document 76-22   Filed 03/28/25   Page 6 of 11
Jourdain v. Port Authority of New York and New Jersey, Not Reported in Fed. Supp....
2020 WL 2513447

to accurately convey the precise relationship between Allied, the Port Authority, and JFK. Jourdain's testimony, without more, does not enable me to conclude with any confidence that she is a public employee for the purpose of applying the First Amendment retaliation standard. The defendants have also not made clear how, if at all, the fact that Jourdain's duties included preventing unauthorized people and vehicles from accessing secure areas of the airport is relevant to determining whether she was an independent contractor for the government. *See* Pl.'s 56.1 ¶ 8; Defs.' Reply 2.

**\*6** The defendants, as the parties moving for summary judgment, have not met their burden here. Thus, I deny summary judgment on the First Amendment retaliation claim on this theory.

### b. Under the generally applicable First Amendment retaliation standard, the defendants have not met their burden to show that they are entitled to summary judgment.

To prove First Amendment retaliation under the standard applicable when the plaintiff is not a public employee, "a plaintiff must show: (1) [the plaintiff] has a right protected by the First Amendment; (2) the defendant's actions were motivated or substantially caused by [the plaintiff's] exercise of that right; and (3) the defendant's actions caused [the plaintiff] some injury." *Dorsett v. Cty. of Nassau*, 732 F.3d 157, 160 (2d Cir. 2013) (citing *Curley v. Vill. of Suffern*, 268 F.3d 65, 73 (2d Cir. 2001)).

In the brief that asserts that this generally applicable standard applies, the defendants set forth a mere paragraph of conclusory argument wherein they repeatedly assert that the plaintiff's pleading is deficient. *See* Defs.' Br. 12. They first argue that Jourdain "has not pled that any 'speech' was in fact protected by the First Amendment." *Id.* Next, they assert that Jourdain "has also failed to plead sufficient factual content to allow this Court to reasonably infer that any action regarding Plaintiff at the time in question was motivated by a desire to retaliate against Plaintiff because of any allegedly protected speech." *Id.* The defendants' argument ends there. Argument addressed to the sufficiency of the pleadings is inappropriate on summary judgment. On summary judgment, the movants must show "that there is no genuine dispute as to any material fact" such that they are "entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "A party asserting that a fact cannot be ... genuinely disputed must support the assertion by ...

citing to particular parts of materials in the record[.]" Fed. R. Civ. P. 56(c)(1)(A). The defendants have fallen far short of satisfying this standard. As such, I deny summary judgment on the First Amendment retaliation claim.

### II. Because the individual defendants have not identified a criminal offense on the basis of which they had arguable probable cause to arrest Jourdain, I cannot conclude on summary judgment that the defendants are entitled to qualified immunity on the § 1983 false arrest claim.

To establish false arrest pursuant to § 1983, as under New York state law, "a plaintiff must show that '(1) the defendant intended to confine the plaintiff, (2) the plaintiff was conscious of the confinement, (3) the plaintiff did not consent to the confinement, and (4) the confinement was not otherwise privileged.' " *Savino v. City of New York*, 331 F.3d 63, 75 (2d Cir. 2003) (quoting *Bernard v. United States*, 25 F.3d 98, 102 (2d Cir. 1994)). A § 1983 claim for false arrest will not succeed "where the arresting officer had probable cause to arrest the plaintiff." *Escalera v. Lunn*, 361 F.3d 737, 743 (2d Cir. 2004) (citing *Weyant v. Okst*, 101 F.3d 845, 852 (2d Cir. 1996)). "Probable cause to arrest exists when the arresting officer has 'knowledge or reasonably trustworthy information of facts and circumstances that are sufficient to warrant a person of reasonable caution in the belief that the person to be arrested has committed or is committing a crime.' " *Id.* (quoting *Weyant*, 101 F.3d at 852). In addition, even if probable cause did not actually exist, "an arresting officer will still be entitled to qualified immunity from a suit for damages if he can establish that there was 'arguable probable cause' to arrest." *Id.* "Arguable probable cause exists 'if either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met.' " *Id.* (quoting *Golino v. City of New Haven*, 950 F.2d 864, 870 (2d Cir. 1991)).

**\*7** Here, the individual defendants argue that they are entitled to qualified immunity "because officers of reasonable competence could at least disagree on whether the probable cause test was met." Defs.' Br. 16. In making this argument, they cite to the following facts in the record: (1) Spollen's possession of a SIDA card and use of a marked police vehicle with a Port Authority license plate authorized his entry through Guard Post V and authorized him to escort Annunziata through the guard post, regardless of the positioning of his vehicle, Kaddo Aff. ¶ 11; *see* Defs.' Br. 16; (2) Annunziata wore a police uniform, Jourdain knew that he

was a police officer, and she knew that he had a valid SIDA card, *see* Jourdain Dep. 73:8–74:6; Defs.' Reply 7; and (3) Jourdain recognized Spollen as a PAPD supervisor and saw that his car had a Port Authority license plate, *see* Jourdain Dep. 89:10–18, 90:15–17; Defs.' Reply 8. [3] Even assuming that these facts are undisputed, I cannot discern how they establish that officers of reasonable competence could have disagreed about whether there was probable cause to arrest Jourdain. In order for an officer of reasonable competence to have believed that there was probable cause to arrest Jourdain, that officer must have had some belief that there existed "knowledge or reasonably trustworthy information of facts and circumstances ... sufficient to warrant a person of reasonable caution in the belief that [Jourdain] ha[d] committed or [was] committing a crime." *Escalera*, 361 F.3d at 743 (quoting *Weyant*, 101 F.3d at 852). The portions of the record to which the defendants have cited identify no crime that Jourdain could conceivably have committed; rather, they merely establish that Annunziata and Spollen possessed various credentials that, at least according to the Kaddo affidavit, authorized them to pass through the guard post, and that Jourdain knew that they were PAPD personnel.

The defendants' briefs offer no clarification. The defendants argue that Jourdain should have allowed Annunziata and Spollen through the guard post based on the credentials that they had, that she refused to give Annunziata and Spollen her identification card so that they could issue her BORs, and that "a tussle ensued." Defs.' Br. 16. They further argue that when Jourdain "refused to hand over her Port Authority issued identification card in order to facilitate issuing the BORs and struggled with Sergeant Spollen over the card, it was objectively reasonable for him to believe that she had engaged in conduct that warranted the handcuffing." Defs.' Reply 8. By positing the bare assertion that it was reasonable for Spollen to believe that Jourdain's conduct "warranted ... handcuffing[,]" the defendants fall far short of satisfying their burden on summary judgment. They have provided me with no basis on which I could possibly conclude that a reasonably competent officer could have believed that probable cause existed because, without more, I have no basis on which to conclude that Jourdain's denying access through a guard post at JFK, declining to turn over her identification card, or participating in a "tussle" that "ensued" could have been criminal behavior. They certainly have not established as much by way of reference to particular, undisputed facts in the record. *See* Fed. R. Civ. P. 56(c)(1)(A). [4]

Thus, I deny summary judgment on the § 1983 false arrest claim because I cannot conclude that the individual defendants are entitled to qualified immunity.

**III. To the extent that Jourdain's amended complaint can be read to raise claims for negligent and intentional infliction of emotional distress, I grant summary judgment to the defendants because Jourdain has not opposed summary judgment on this ground.**

**\*8** The amended complaint alleges that the defendants' conduct caused Jourdain "to sustain permanent personal injuries, including but not limited to negligent infliction of emotional distress ... [and] intentional infliction of emotional distress[.]" Am. Compl. ¶ 22. The defendants argue that insofar as this allegation "purports to assert state law claims of intentional and negligent infliction of emotional distress, such claims ought to be dismissed as a matter of law." Defs.' Br. 17. Jourdain did not respond to this argument in her brief in opposition to summary judgment. Thus, I grant summary judgment to the defendants on any negligent infliction of emotional distress or intentional infliction of emotional distress claims that the amended complaint purports to raise. *See Taylor v. City of New York*, 269 F. Supp. 2d 68, 75 (E.D.N.Y. 2003) ("Federal courts may deem a claim abandoned when a party moves for summary judgment on one ground and the party opposing summary judgment fails to address the argument in any way."); *Douglas v. Victor Capital Grp.*, 21 F. Supp. 2d 379, 381, 393 (S.D.N.Y. 1998) (adopting Magistrate Judge's recommendation to grant summary judgment on claims that opposition papers did not address); *Anti-Monopoly, Inc. v. Hasbro, Inc.*, 958 F. Supp. 895, 907 n.11 (S.D.N.Y. 1997), *aff'd*, 130 F.3d 1101 (2d Cir. 1997) (per curiam) ("[Plaintiff] failed to provide any argument opposing [defendant]'s motion relating to [plaintiff]'s state law claim, which provides an independent basis for dismissal.").

I also note that it would seem impossible to sustain a claim for intentional infliction of emotional distress in this case, as liability for intentional infliction of emotional distress "has been found only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." *Murphy v. Am. Home Prods. Corp.*, 448 N.E.2d 86, 90 (N.Y. 1983). I see no basis for finding this standard satisfied. Regarding negligent infliction of emotional distress, I note that "a plaintiff seeking damages for an injury resulting from a

wrongful arrest and detention 'may not recover under broad general principles of negligence [ ] but must proceed by way of the traditional remedies of false arrest and imprisonment[.]' " *Secard v. Dep't of Soc. Servs.*, 612 N.Y.S.2d 167, 168 (N.Y. App. Div. 1994) (quoting *Stalteri v. Cty. of Monroe,* 486 N.Y.S.2d 555, 556 (N.Y. App. Div. 1985)).

Thus, I grant summary judgment to the defendants on any claims for negligent or intentional infliction of emotional distress that the amended complaint purports to raise.

### IV. I do not read the amended complaint as raising viable claims for cruel and unusual punishment or illegal search, and any cruel and unusual punishment claim is dismissed.

The amended complaint purports to assert a cause of action entitled "denial of constitutional right to a fair trial." Am. Compl. ¶¶ 46–48. The allegations raised as part of this cause of action claim that the individual defendants deprived Jourdain "of her constitutional right to be free from cruel and unusual punishment[.]" *Id.* ¶ 47. In her brief in opposition to summary judgment, Jourdain withdraws her claim for "denial of a right to a fair trial" and does not mention a claim for cruel and unusual punishment. I interpret Jourdain as withdrawing all of the allegations raised under the "right to a fair trial" cause of action, including those claiming cruel and unusual punishment.

The phrase "cruel and unusual punishment" also appears elsewhere throughout the amended complaint. Under the cause of action entitled "constitutional violations under color of law," Jourdain alleges that the defendants' actions deprived her of her right "[n]ot to have cruel and unusual punishment imposed upon [her] by police officers[.]" *Id.* ¶ 32(ii). Under the cause of action entitled "liability of the state," Jourdain claims the same. *Id.* ¶ 58(v). I read this latter allegation as withdrawn, as Jourdain has withdrawn her claims against the Port Authority except those premised on state law on a *respondeat superior* theory. Regarding the cruel and unusual punishment allegation against the individual defendants—to the extent that Jourdain has raised one—it is unsustainable. The Eighth Amendment cruel and unusual punishment standard applies "only after the State has complied with the constitutional guarantees traditionally associated with criminal prosecutions." *Graham v. Connor,* 490 U.S. 386, 392 n.6, 398 (1989) (quoting *Ingraham v. Wright,* 430 U.S. 651, 671 n.40 (1977)); *see also Ingraham,* 430 U.S. at 671 n.40 ("[T]he State does not acquire the power to punish with which the Eighth Amendment is concerned

until after it has secured a formal adjudication of guilt in accordance with due process of law."). Thus, a cruel and unusual punishment claim will not lie because Jourdain was not criminally prosecuted. To the extent that the amended complaint purports to raise such a claim, it is dismissed. *See Brown v. Brown,* 343 F. Supp. 2d 195, 197–98 (E.D.N.Y. 2004) (citing *Fitzgerald v. First E. Seventh St. Tenants Corp.,* 221 F.3d 362, 363–64 (2d Cir. 2000) (per curiam)) ("A district court may dismiss a claim sua sponte if the court believes it to be frivolous.").

**\*9** Regarding illegal search, Jourdain writes in her brief that the defendants did not move for summary judgment with respect to her "unlawful search" claim and that, therefore, it must survive the defendants' motion. Pl.'s Br. 4. The amended complaint mentions "illegal search" once, when Jourdain alleges that "because of the unlawful arrest, illegal search, and harassment of the Plaintiff ... [she] was caused to sustain permanent personal injuries[.]" Am. Compl. ¶ 22. But Jourdain has not alleged facts anywhere else in the amended complaint that suggest that a search occurred. Thus, I do not read the amended complaint as raising a viable unlawful search claim, and as such I cannot conclude that any such claim survives summary judgment.

### V. All claims as asserted against the PAPD are dismissed because the PAPD is not a properly suable entity.

The defendants argue that "the Amended Complaint should be dismissed as against the PAPD" because "[t]he PAPD is a department of the Port Authority with no legal identity separate and apart from the Port Authority, and so is not a suable entity in its own right." Defs.' Br. 6 n.1. Jourdain did not respond to this argument, though I note that it appears only in a footnote in the defendants' brief.

New York law governs whether the PAPD is a suable entity. *See* Fed. R. Civ. P. 17(b)(3).[5] "Under New York law, departments which are merely administrative arms of a municipality have no separate legal identity apart from the municipality and therefore cannot sue or be sued." *S.W. by J.W. v. Warren,* 528 F. Supp. 2d 282, 302 (S.D.N.Y. 2007) (citing *Hall v. City of White Plains,* 185 F. Supp. 2d 293, 303 (S.D.N.Y. 2002); *Fanelli v. Town of Harrison,* 46 F. Supp. 2d 254, 257 (S.D.N.Y. 1999)). "A police department is an administrative arm of the municipal corporation" and, as such, "cannot sue or be sued[.]" *Baker v. Willett,* 42 F. Supp. 2d 192, 198 (N.D.N.Y. 1999) (citing *Willard*

*v. Town of Hamburg*, No. 96–CV–0187E(H), 1996 WL 607100, at \*1 (W.D.N.Y. Sept. 30, 1996); *Loria v. Town of Irondequoit*, 775 F. Supp. 599, 606 (W.D.N.Y. 1990)); *see Davis v. Lynbrook Police Dep't*, 224 F. Supp. 2d 463, 477 (E.D.N.Y. 2002) (dismissing complaint as against police department defendant because police department was merely administrative arm of municipality); *Fanelli*, 46 F. Supp. 2d at 257 (dismissing claims against police department because it was mere administrative arm of town, which was also named as defendant).

Although the Port Authority itself is not technically a municipality but rather a "bi-state agency," Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1, courts have treated the Port Authority as a municipality "and have analyzed claims against it under the standards governing municipal liability under Section 1983[,]" *Mack v. Port Authority*, 225 F. Supp. 2d 376, 382 n.7 (S.D.N.Y. 2002) (collecting cases); *see Carter v. Port Authority*, No. 03 Civ. 8751(DLC), 2004 WL 2978282, at \*5 (S.D.N.Y. 2004). Accordingly, the PAPD is analogous to a municipal police department, which is not a suable entity. As such, and given that Jourdain has not addressed this point at all in her opposition to summary judgment, I dismiss all claims as against the PAPD.

### VI. I do not dismiss entire causes of action as duplicative but rather clarify which claims do and do not survive summary judgment.

**\*10**  The defendants argue that I should dismiss the second and fourth causes of action in the Amended Complaint because they are duplicative. *See* Defs.' Br. 20–21. While I agree that Jourdain's amended complaint lacks organization and is redundant, I believe that my instant ruling, along with the below clarification of which claims do and do not survive at this point, resolves the defendants' argument here.

The following claims do not survive this decision: (1) any claims as against the Port Authority that were premised on a *Monell* theory or on a negligent hiring, retention, or supervision theory, as Jourdain has withdrawn these claims; (2) claims as against all defendants for violations of due process and equal protection rights, malicious prosecution, and denial of the right to a fair trial, as Jourdain has also withdrawn these claims; (3) any claims for punitive damages as against the Port Authority, as Jourdain has also withdrawn any such claim; (4) any claims for intentional infliction of emotional distress or negligent infliction of emotional distress, as I grant summary judgment to the defendants on these claims; (5) any claim for cruel and unusual punishment,

which I dismiss, to the extent that such a claim can be said to be raised in the amended complaint; (6) any claim for unlawful search, which I do not read the amended complaint as raising in a viable way; and (7) all claims as against the PAPD.

The following claims survive: (1) First Amendment retaliation pursuant to § 1983 as against the individual defendants, as I deny summary judgment on this claim; (2) false arrest pursuant to § 1983 as against the individual defendants, as I deny summary judgment on this claim; (3) excessive force pursuant to § 1983, as the defendants have not moved for summary judgment against such a claim [6]; (4) state-law false arrest, assault, and battery claims as against the individual defendants, as the defendants have not moved for summary judgment on these claims; and (5) state-law false arrest, assault, and battery claims as against the Port Authority on a *respondeat superior* theory, as the defendants have not moved for summary judgment on such claims.

Although I was able to reach a decision on the core issues in this case, I believe that I would have been able to resolve this case more efficiently if the defendants had put forth more of an attempt to meet their burden on summary judgment. The defendants have, at times, spoken in terms of the sufficiency of the complaint, rather than citing to particular facts in the record. This is perhaps even more concerning because the parties have submitted quite a lengthy record with their motion papers, yet they did not reference the vast majority of that record at all in their briefs. The plaintiff, too, has made my task more difficult by filing an amended complaint that purports to raise several claims that had no chance of surviving based on the facts—as evidenced by the fact that the plaintiff herself withdrew so many of them—and that labels certain claims in imprecise or inaccurate ways. This case is one that likely should be amenable to negotiated resolution without further expenditure of resources by discovery, motion practice, pretrial preparation, and trial. But, without more from the parties, I cannot determine on summary judgment what further resolution the full record does or does not support.

**\*11**  As such, I strongly urge the parties to seek a negotiated resolution in this case. In the event that arriving at such a resolution is impossible, the parties are directed to conduct any necessary discovery on the question of whether Jourdain should be treated as a public employee for the purpose of applying the First Amendment retaliation standard. Additionally, the plaintiff is strongly encouraged

Case 1:21-cv-06226-NRB    Document 76-22    Filed 03/28/25    Page 10 of 11

Jourdain v. Port Authority of New York and New Jersey, Not Reported in Fed. Supp....

2020 WL 2513447

to amend her complaint to delete the withdrawn and non-surviving claims, clarify which claims she intends to pursue at trial and their precise factual bases, and title the descriptions of each cause of action in an organized, specific way that corresponds to the substance of the claims that she is bringing. Finally, if the record—including any new materials compiled during the aforementioned additional discovery—discloses facts that are material to the resolution of any claims and that the parties did not bring to my attention in their Rule 56.1 statements or in their briefing, the defendants are granted leave to renew their motion for summary judgment.

**CONCLUSION**

Thus, the defendants' motion for summary judgment is granted in part and denied in part, as set forth above. To the extent that the motion is denied, it is denied with leave to renew, as set forth in more detail above.

SO ORDERED.

**All Citations**

Not Reported in Fed. Supp., 2020 WL 2513447

---

**Footnotes**

1     The defendants' brief largely speaks in terms of failure to state a claim and the inadequacy of the amended complaint. Such argument is inappropriate and inadequate on a motion for summary judgment. I treat the motion as one for summary judgment and hold the defendants to their burden under that standard.

2     The defendants' argument regarding First Amendment retaliation appears in the section of their brief entitled "The Amended Complaint Fails To State Viable Claims Against The Port Authority." *See* Defs.' Br. 5, 12. However, the defendants seem to frame their argument in a way that applies to the First Amendment claim as it is asserted against all defendants—not just the Port Authority. Thus, I assume that the defendants move for summary judgment on this claim as against the individual defendants. There is no First Amendment retaliation claim against the Port Authority, as the plaintiff has withdrawn her claims against the Port Authority except those premised on state law under a *respondeat superior* theory.

3     The defendants also cite to the fact that "[a]mong the areas beyond [Guard Post V] is the rear of the Port Authority Police Department building. [Guard Post V] is not a guard booth that would be the location of a United Nations General Assembly VIP movement." Kaddo Aff. ¶ 8; *see* Defs.' Reply 7. It is not clear why this fact is relevant.

4     Even if I interpreted the assertion that "a tussle ensued" as signifying that an officer of reasonable competence could have believed that there was probable cause to arrest Jourdain because she assaulted a PAPD officer—an argument that the defendants do not raise—the facts surrounding the "tussle" are disputed. Annunziata and Spollen testified that Jourdain initiated the physical altercation by grabbing Spollen's arm or wrist. *See* Annunziata Dep. 41:5–7, 44:10–13, 44:24–45:8; Spollen Dep. 120:12–20. Jourdain testified that she was calmly explaining that she was following protocol when Spollen "forcefully" tried to take her identification card from the carrier around her neck. Jourdain Dep. 106:18–107:24, 110:14–111:17. Given this dispute of fact, I could not conclude on summary judgment that arguable probable cause existed.

5     Rule 17(b) governs how to determine whether an entity has the capacity to be sued. *See* Fed. R. Civ. P. 17(b). Rule 17(b)(2) states that "for a corporation," I must determine capacity to be sued "by the law under which it was organized." *Id.* 17(b)(2). While the parties have described the Port Authority itself as a "body corporate and politic" that was "created by compact between the States of New York and New Jersey[,]" *see* Defs.' 56.1 ¶ 1; Pl.'s 56.1 ¶ 1, they have not described the PAPD itself as a corporation. Especially considering that Jourdain has not responded to the defendants' argument here, and absent additional facts as to how the

PAPD is organized, I assume that Rule 17(b)(3) governs; this subsection provides that "for all other parties," I must determine capacity to be sued "by the law of the state where the court is located," which is New York. Fed. R. Civ. P. 17(b)(3).

6    In their reply brief, the defendants assert that the amended complaint does not allege an excessive force claim. *See* Defs.' Reply 9. However, in asserting her § 1983 cause of action, Jourdain does, in fact, allege that the defendants' actions deprived her of her Fourth Amendment rights. *See* Am. Compl. ¶ 37. She also alleges conduct by the individual defendants that could amount to excessive force. *See id.* ¶¶ 19, 33. In any event, at the summary judgment stage, the defendants have not shown that there is no genuine dispute of material fact on this issue. Thus, to the extent that Jourdain raised an excessive force claim, it survives. However, I note that, in the event that this case goes to trial, Jourdain will have to clarify the precise alleged factual basis for this claim.

---

**End of Document**                                        © 2025 Thomson Reuters. No claim to original U.S. Government Works.