UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXEY V. TARASOV, ESQ., Administrator of the Estate of EVGENIY LAGODA, Deceased, and GRIGORY TIKHOPLAV,

　　　　　　　　Plaintiffs,

-against-

PORT AUTHORITY OF NEW YORK AND NEW JERSEY, and PORT AUTHORITY OF NEW YORK AND NEW JERSEY POLICE DEPARTMENT a/k/a PORT AUTHORITY POLICE DEPARTMENT a/k/a PAPD, PAPD OFFICER MICHAEL BUGIADA, PAPD OFFICER ROBERT JOSEPH, PAPD OFFICER JONATHAN PAPIA, PAPD OFFICER PAUL MEZZACAPPA, and PAPD OFFICER JONATHAN DURAN,

　　　　　　　　Defendants.

1:21-cv-06226-NRB

---

## PLAINTIFFS' MEMORANDUM OF LAW IN OPPOSITION TO DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

J. Christopher Amrhein, Jr.
Michael J. Sullivan
*Ashcroft Law Firm, LLC*
200 State Street, 7th Floor
Boston, MA 02109

**Attorneys for Plaintiffs**

TABLE OF CONTENTS

PRELIMINARY STATEMENT.................................................................................................1

SUMMARY OF ARGUMENT................................................................................................2

COUNTER STATEMENT OF FACTS ...................................................................................4

APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT ...................................4

ARGUMENT..........................................................................................................................5

I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STATE
      CLAIMS AGAINST THE PA BECAUSE PLAINTIFFS SATISFIED ALL
      STATUTORY REQUIREMENTS TO SUE THE PA UNDER NEW YORK
      LAW................................................................................................................................5

      A.    Plaintiffs Complied with Section 7107 by Filing an Amended
            Complaint 83 Days After Serving Their Notice of Claim ....................................6

      B.    Plaintiffs Complied with Section 7107 by Timely Filing Their
            Amended Complaint ...........................................................................................8

      C.    Alternatively, This Court Should Find the PA Waived
            Compliance with Section 7107, or Allow Plaintiffs to Pursue
            Their Earlier-Filed Motion Under Section 7108, or
            Conclude Plaintiffs Substantially Complied with Section 7107........................... 11

            1.    The PA's abandonment of its Section 7107 arguments in
                  federal court after removal coupled with prejudice to
                  Plaintiffs results in a waiver.................................................................. 11

            2.    The parties should brief Plaintiffs' motion under Section 7108 ............... 13

            3.    Plaintiffs substantially complied with Section 7107................................ 14

II.   THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STATE
      CLAIMS AGAINST THE IDOs...................................................................................... 14

III.  PLAINTIFFS' FAILURE-TO-TRAIN CLAIMS SHOULD GO TO
      THE JURY ..................................................................................................................... 15

      A.    Legal Standards for Municipal Liability.............................................................. 15

      B.    The History and Public Awareness of Prone Restraint and
            Positional/Compressional Asphyxiation ............................................................. 15

C.      The Record Supports the PA's Deliberate Indifference and Failure to Train its Officers ..................................................................... 17

D.      The Record Shows That the PA's Deliberate Indifference and Failure to Train Its Officers Caused Mr. Lagoda's Death .................................... 19

IV.    IDOs ARE NOT ENTITLED TO QUALIFIED IMMUNITY ......................................... 20

A.      Legal Standard for Qualified Immunity at Summary Judgment Stage ................. 20

B.      The Facts Upon Which Defendants Rely Are Highly Contested and Contradicted by Explicit Findings in the Record ........................................... 21

C.      Summary Judgment Should Be Denied Under Circuit Precedent ........................ 22

V.    PUNITIVE DAMAGES ARE AVAILABLE IN THIS CASE AGAINST THE IDOs AND PA ................................................................................................... 25

**TABLE OF AUTHORITIES**

**Cases**

*Andrucki v. Aluminum Co. of Am.*
  24 N.Y.3d 275 (2014) ................................................................................ *passim*

*Atlantic Aviation Corp. v Port of N.Y. Auth.*,
  168 A.2d 262 (Super. Ct. 1961) ..................................................................14

*Avant v. Cty. of Erie*,
  No. 20-CV-1689-LJV-HKS, 2024 U.S. Dist. LEXIS 77866 (W.D.N.Y. Apr. 29, 2024) .....17, 18

*Beaulieu v. Vermont*,
  807 F.3d 478 (2d Cir. 2015) ........................................................................12, 13

*Brawer v. Carter*,
  937 F. Supp. 1071 (S.D.N.Y. 1996) .............................................................21

*Caceres v. Port Auth. of New York & New Jersey*,
  631 F.3d 620 (2d Cir. 2011) ........................................................................6

*Celotex Corp. v. Catrett*,
  477 U.S. 317 (1986) .....................................................................................5

*City of Canton, Ohio v. Harris*,
  489 U.S. 378 (1989) .....................................................................................15, 17

*Doe v. United Servs. Life Ins. Co.*,
  123 F.R.D. 437 (S.D.N.Y. 1988) .................................................................13

*Espinal v. Port Auth. of N.Y. & N.J.*,
  184 N.Y.S.3d (2d Dept. 2023) .....................................................................6, 9

*Gaidon v. Guardian Life Ins. Co. of Am.*,
  96 N.Y.2d 201 (2001) ..................................................................................9

*Gjenashaj v. City of N.Y., No. 19cv4142*,
  No. 19cv4142, 2020 U.S. Dist. LEXIS 234531 (S.D.N.Y. Dec. 14, 2020) ...................22, 23, 24

*Goodyear Tire & Rubber Co. v. Haeger*,
  581 U.S. 101 (2017) .....................................................................................13

*Graham v. Connor*,
  490 U.S. 386 (1989) .....................................................................................18

*Hetchkop v. Woodlawn at Grassmere, Inc.*,
  116 F.3d 28 (2d Cir. 1997) ..........................................................................5

*Jeffreys v. City of New York*,
  426 F.3d 549 (2d Cir. 2005) ........................................................................5

i

*Kaminsky v. Rosenblum*,
   929 F.2d 922 (2d Cir. 1991) ..............................................................................................20

*Kondakjian v. Port Auth. of N.Y. & N.J.*,
   No. 94 Civ. 8013, 1996 U.S. Dist. LEXIS 7200 (S.D.N.Y. 1996) ..............................................25

*Lapides v. Bd. of Regents*,
   535 U.S. 613 (2002) ..............................................................................................12

*Park v. Indiana Univ. Sch. of Dentistry*,
   692 F.3d 828 (7th Cir. 2012) ..............................................................................................12

*Rattray v. City of N.Y., No. 17-CV-8560*
   No. 17-CV-8560 (PGG) (KHP), 2022 U.S. Dist. LEXIS 166312 (S.D.N.Y. Sep. 14, 2022) ....20

*Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*,
   746 F.3d 538 (2d Cir. 2014) ..............................................................................................5

*Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*,
   391 F.3d 77 (2d Cir. 2004) ..............................................................................................5

*Walker v. New York*,
   974 F.2d 293 (2d Cir. 1992) ..............................................................................................17

*Weyant v. Okst*,
   101 F.3d 845 (2d Cir. 1996) ..............................................................................................20

*Williams v. Hughes, No. 20-CV-10571*
   No. 20-CV-10571 (PMH), 2024 U.S. Dist. LEXIS 233250 (S.D.N.Y. Dec. 27, 2024) .22, 23, 24

*Zamel v Port of N.Y. Auth.*,
   264 A.2d 201 (1970) ..............................................................................................14

**Statutes**

31 U.S. Code § 3733 ..............................................................................................13

18 U.S.C. § 1367 ..............................................................................................3, 11, 15

42 U.S.C § 1983 ..............................................................................................15

**Other**

Fed. R. Civ. P. 56 ..............................................................................................4, 5

Fed. R. Civ. P. 26 ..............................................................................................4, 18

McKinney's Unconsolidated Laws of New York § 7107 ...................................................... *passim*

McKinney's Unconsolidated Laws of New York § 7108 ...................................................11, 12, 13

N.Y. Comp. Codes R. & Regs. Tit. 9 § 8.147 ...............................................................................16

N.Y. Est. Powers & Trusts Law § 5-4.1 ................................................................................ *passim*

**PRELIMINARY STATEMENT**

On April 12, 2019, Evgeniy Lagoda tragically lost his life aboard a JetBlue flight set to depart New York from JFK International Airport. Just two days after Mr. Lagoda's death, the Office of New York Attorney General's Special Investigations & Prosecutions Unit ("OAG") launched a criminal investigation. These efforts concluded on April 9, 2020, and revealed that the use of force by officers of Defendant Port Authority of New York and New Jersey ("PA") contributed to Mr. Lagoda's death (the "Report"). The OAG found that, notwithstanding decades of law enforcement knowledge about the substantial risks of improper restraining techniques and positional asphyxia, the PA *had no training* on the unique vulnerability of individuals in the immediate wake of a seizure and that the PA's failure to train the officers was a cause of Mr. Lagoda's death. The Report additionally concluded that medical treatment for Mr. Lagoda was delayed by as much as 20 minutes due to the PA's officers' failure to follow ambulance escort protocols.

Less than one year after the release of the OAG Report (and just after his appointment as Administrator of Mr. Lagoda's estate), Alexey V. Tarasov, joined by Mr. Lagoda's father, Grigory Tikhoplav (collectively, "Plaintiffs"), served the PA with a notice of claim. Shortly thereafter, they filed and served a verified complaint and summons in state court asserting three claims arising from Mr. Lagoda's wrongful death. Dkt. 75-4. To cure an initial defect raised by the Port Authority in a motion to dismiss—specifically, the premature filing of their original complaint, *see* McKinney's Unconsolidated Laws of New York § 7107 ("NY Uncons. Laws")—Plaintiffs filed a new, amended complaint in its place. Dkts. 1-1; 75-5. When this happens, New York law (as interpreted by its highest court) treats the original complaint "as a nullity" and the amended complaint, coupled with the original notice of claim, satisfies the pre-suit commencement

1

requirements. *See Andrucki v. Aluminum Co. of Am. (Matter of N.Y.C. Asbestos Litig.)*, 24 N.Y.3d 275, 279–80 (2014) ("*Andrucki*") (finding "[i]t is undisputed that as to the Port Authority [original] filing was premature and may be treated as a nullity" and holding that, despite the initial defect, the Administratrix nonetheless could pursue a wrongful death action against the PA based on an amended complaint and without serving a new notice of claim).

This amended complaint—which Plaintiffs filed and served on June 29, 2021— was within the applicable one-year limitations period. NY Uncons. Laws § 7107. Although the period ordinarily would have expired on April 9, 2021, it had been tolled by 228 days under Executive Orders issued by then-New York Governor Andrew Cuomo. Unsurprisingly, following removal to this Court in July 2021, neither the PA nor the Individual Defendant Officers (who were added to the Amended Complaint ("IDOs" and collectively, the "Defendants")) moved to dismiss the Amended Complaint for failing to comply with any pre-suit notice requirements. Instead, Defendants duly filed an answer, and the parties engaged in discovery for more than three years. This included interrogatories and document requests, the exchange of thousands of documents, the retention of expert witnesses, preparation of expert reports, approximately 21 depositions, and five to seven joint (or assented to) requests for extensions of time to complete discovery. Defendants never suggested there was any jurisdictional defect during this period. Discovery closed on October 15, 2024, and Defendants now move for summary judgment (the "Motion" or "Defs. Mot.").

## SUMMARY OF ARGUMENT

This Court should deny Defendants' Motion. ***First***, this Court unquestionably has jurisdiction over Plaintiffs' state claims against the PA because Plaintiffs complied with Section 7107. The PA is wrong (PA Point I) when it claims that alleged jurisdictional defects cannot be

cured under New York law, *see Andrucki*, 24 N.Y.3d at 279–80, and Plaintiffs did so here by filing an amended complaint within the one-year period, after applying a correct accrual date for the claim and accounting for the conceded tolling of the limitations period. Dkt. 77 (Defs. Mem.) at 4 (admitting period had been tolled).

*Second*, this Court also has jurisdiction over Plaintiffs' claims against the IDOs who have been sued in their individual capacity. Of course, any prerequisites to suing the PA do not apply to the IDOs and this Court has supplemental jurisdiction over those state claims. 18 U.S.C. § 1367.

*Third*, Defendants cannot meet their burden on summary judgment of showing they are entitled to judgment as a matter of law on Plaintiffs' failure-to-train claim (PA Point II). To the contrary, the record in this case (and facts of which this Court may take judicial notice) show that for decades, law enforcement agencies throughout the nation have been aware and, as a result, have implemented use-of-force training policies regarding improper positional restraint, compressional asphyxiation, and the danger of sudden death as a result. The PA had none here. There plainly are disputed material facts in the record sufficient for a jury to conclude deliberate indifference on the part of the PA, and that the failure to train is connected to Mr. Lagoda's death.

*Fourth*, the IDOs are not entitled to qualified immunity for the same reason (IDOs Point III). Plaintiffs' medical expert testified that Mr. Lagoda was subject to severe and unremitting violence at the hands of IDOs while he was in the immediate wake of a seizure, and that the IDOs' exertion of substantial force caused the death of Mr. Lagoda. Defendants offer no medical expert opinion to the contrary. Where material facts are in dispute, summary judgment must be denied.

***Fifth***, punitive damages are available in this case (PA Point V). Defendants have overplayed their hand when they claim "the Port Authority cannot be assessed punitive damages", Defs. Mem. at 24, and, of course, they are available against the IDOs.[1]

## COUNTER STATEMENT OF FACTS

Defendants' Statement of Material Facts ("DSMF") ignores critical evidence and diminishes the implications of the IDOs' actions that took the life of Mr. Lagoda. Dkt. 74. For example:

- The autopsy photos revealed that the Defendant Officers most probably kicked Mr. Lagoda with shod feet and subjected him to knee strikes, not just the punches Defendant Officers admitted to, and "revealed nondisplaced fractures of the right lateral 3rd and 4th ribs, and the location of these fractures "is not characteristic of CPR-related rib fractures, but most probably represent a separate, distinct blow to the right side of the chest, which fractured the ribs." Ex. E of Amrhein Decl. (Dr. Sperry Rule 26 Report) at 12. Defs. Ex. DD (Sperry Dep.) at 202–03.
- Mr. Lagoda "was subject to severe and unremitting violence" and "he was beat to death" Defs. Ex. DD (Sperry Dep.) at 196–97.
- "[Mr. Lagoda] succumbed to the point where he eventually died because of his inability to save himself from the actions of others." Defs. Ex. DD (Sperry Dep.) at 196–97.

Defendants also disregard undisputed medical evidence concerning Mr. Lagoda's vulnerable condition in the immediate wake of a seizure and that the exertion of substantial force caused Mr. Lagoda's death. *See* Counterstatement of Material Facts ("PCSMF") ¶¶ 171–89. Plaintiffs respond to Defendants' mischaracterizations in their Responses to DSMF, and their PCSMF, submitted pursuant to Local Rule 56.1 and filed contemporaneously with this Opposition.

## APPLICABLE LEGAL STANDARD FOR SUMMARY JUDGMENT

Summary judgment may only be granted where there is no genuine dispute of material fact and where the movant shows that movant is entitled to judgment as a matter of law. Fed. R. Civ.

---

[1] Because the PA concedes that "Port Authority of New York and New Jersey Police Department a/k/a PAPD does not exist as a legal entity separate from the Port Authority" and therefore any judgment is recoverable and may be enforced against the PA itself, Plaintiffs consent to dismissal of that subsumed entity (PA Point IV).

4

P. 56(a); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986). The movant carries this burden. *Jeffreys v. City of New York*, 426 F.3d 549, 553 (2d Cir. 2005). "[A] fact is material if it 'might affect the outcome of the suit under the governing law.'" *Royal Crown Day Care LLC v. Dep't of Health & Mental Hygiene of N.Y.*, 746 F.3d 538, 544 (2d Cir. 2014) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court resolves all ambiguities and draws all permissible factual inferences in the light most favorable to the opposing party. *Sec. Ins. Co. of Hartford v. Old Dominion Freight Line, Inc.*, 391 F.3d 77, 83 (2d Cir. 2004). "If, as to the issue on which summary judgment is sought, there is any evidence in the record from which a reasonable inference could be drawn in favor of the opposing party, summary judgment is improper." *Hetchkop v. Woodlawn at Grassmere, Inc.*, 116 F.3d 28, 33 (2d Cir. 1997).

## **ARGUMENT**

**I.    THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STATE CLAIMS AGAINST THE PA BECAUSE PLAINTIFFS SATISFIED ALL STATUTORY REQUIREMENTS TO SUE THE PA UNDER NEW YORK LAW**

The PA begins by arguing (half-heartedly) that this Court should dismiss Plaintiffs' state wrongful death and conscious pain and suffering claims against it because Plaintiffs failed to comply with "mandatory notice of claim requirements" under New York law. Defs. Mem. at 3. If Plaintiffs properly understand the PA's argument—which appears to conflate and interchange the two statutory requirements for suits against the PA, *see* NY Uncons. Laws § 7107, the statute of limitations and accrual date applicable to wrongful death claims, *see* N.Y. Est. Powers & Trusts Law § 5-4.1 ("N.Y. Est."), and tolling provisions impacting them—the PA's arguments are that Plaintiffs' filing of their original complaint two days after serving their notice of claim—which was otherwise valid—failed to provide the PA the 60-day notice the statute requires, *see* Defs. Mem. at 4, and that Plaintiffs filed their complaint "more than one year after Lagoda's death, which

5

exceeds the statute of limitations for wrongful death actions." *Id*. The PA's last-minute, last-ditch protestations are based on a mischaracterization of governing New York law. As explained below, Plaintiffs met all statutory requirements and the PA's motion in this respect should be denied.

### A. Plaintiffs Complied with Section 7107 by Filing an Amended Complaint 83 Days After Serving Their Notice of Claim

Plaintiffs' notice of claim—served on the PA on April 7, 2020—complied with Section 7107 because over 60 days elapsed before the filing and service of the operative complaint in this case—the Amended Complaint—on June 29, 2020. The PA's argument—which is premised on Plaintiffs' concededly premature filing of the original complaint—is misplaced for three reasons. *See* Defs. Mem. at 4 ("Plaintiffs filed their Complaint in New York Supreme Court, New York County, on April 9, 2021, two days after serving their notice of claim.").

*First*, the PA faulters out of the gate by (confusingly) seeking to tie the notice of claim requirement to its (incorrect) position on the accrual date of the claim. Defs. Mem. at 4 (calculating deadline by reference to the "one-year limitations period"). This PA argument was flatly rejected in *Espinal v. Port Auth. of N.Y. & N.J.*, 184 N.Y.S.3d 98, 100–01 (2d Dept. 2023) ("the plain language of section 7107 makes the deadline to serve a notice of claim dependent upon the date of commencement").

*Second*, the PA wrongly claims that "the notice of claim requirement is considered a jurisdictional defect *that cannot be cured*." Defs. Mem. at 3 (relying upon *Caceres v. Port Auth. of New York & New Jersey,* 631 F.3d 620, 624 (2d Cir. 2011) (emphasis added)). But *Ceceras* does *not* say that any oversight cannot be cured. In fact, neither the word "cure" nor that holding appear anywhere in the opinion. The case instead stands for the proposition that the prerequisites are jurisdictional and that state sovereign immunity must be assessed independently from Eleventh Amendment immunity. *Caceres,* 631 F.3d at 624–25.

6

*Third*, to the contrary, the New York Court of Appeals has found that: (1) a plaintiff *can* cure a jurisdictional defect flowing from an original complaint that was filed prematurely; and (2) an amended complaint filed over 60 days after a notice of claim *does* satisfy Section 7107's requirements *provided the notice itself was valid*. *Andrucki*, 24 NY3d at 279–82 (finding notice of claim for personal injury explaining how, where, and when plaintiff contracted malignant mesothelioma, coupled with subsequent amended complaint asserting wrongful death, satisfies jurisdictional prerequisite notwithstanding fact Plaintiff filed the original complaint only one day after serving the notice of claim).

The facts in *Andrucki* are analogous to those here. In that case, then-plaintiff Andrucki and his wife served on the PA a notice of claim for personal injury from asbestos on October 4, 2010. *Id*. at 279. The next day, they filed a lawsuit against the PA and other defendants. *Id*. Notwithstanding that filing, the NY Court of Appeals found that no action had been commenced because "as to the PA this October 5 filing was premature and may be treated as a nullity, because under Unconsolidated Laws § 7107 60 days must elapse between the notice of claim and the commencement of suit." *Id*. Following Andrucki's death, his widow became his administratrix and filed an amended complaint but did not file a new notice of claim. *Id*. at 280. As here, the PA moved to dismiss, asserting that plaintiffs "failed to satisfy the conditions precedent" to the bringing of the action.

The Court of Appeals rejected the PA's argument. The Court found plaintiffs were not required to file a new notice of claim because it would elevate form over substance to do so, and, because the original complaint is "treated as a nullity," the amended complaint—which was filed many months after the first and only notice of claim—satisfies Section 7107's textual requirement

that service of the notice of claim is made "at least sixty days before such suit, action or proceeding is commenced." NY Uncons. Law § 7107.

The same result holds true here. The PA does not contend Plaintiffs' notice of claim was somehow defective. Nor does the PA dispute that Plaintiffs filed and served their amended complaint on the PA outside the 60-day period. Plaintiffs' state claims against the PA therefore are not barred due to the original complaint's premature filing.

This result also makes good sense. The NY Court of Appeals specifically observed that its holding "fulfill[ed] the purpose of the notice of claim requirement: to allow the State to investigate the claim and to estimate its potential liability." *Andrucki*, 24 NY3d at 282. As in that case, the PA here has had more than sufficient notice and time to investigate Plaintiffs' claim and potentially settle this tragic case. Instead, the PA made the decision to agree to removal, file an answer, engage in full-blown discovery, and defend the case on the merits. In this light, "[i]t is hard to see how" dismissal at this juncture could "fulfill the purpose" of the statute. *Id.*

**B.      Plaintiffs Complied with Section 7107 by Timely Filing Their Amended Complaint**

Plaintiffs' amended complaint—filed and served on the PA on June 29, 2021—complied with Section 7107 because it fell comfortably within the statutory period after accounting for tolling of the commencement of a wrongful death action under NY Executive Orders, traditional state law accrual principles, and N.Y. Est. § 5-4.1(2). The PA's argument, on the other hand, is fatally flawed because it begins with a false premise: the accrual date from which the period in Section 7107 began to run was not the date of Mr. Lagoda's death but rather April 9, 2020, when the OAG concluded its criminal investigation of the IDOs and released the facts that are at the crux of Plaintiffs' claims. The COVID–19 health crisis additionally tolled the limitations period, extending the deadline to commence at action to November 23, 2020.

As an initial matter, the PA concedes—notwithstanding its repeated arguments that pre-suit requirements are immutable and always must be "strictly construed"—that the one-year period provided in Section 7107 is not absolute and is subject to tolling. Defs. Mem. at 4. Here, the limitations period was tolled by Executive Order for a total of 228 days. *See Espinal*, 184 N.Y.S.3d at 100–01 ("[a]s the Port Authority concedes, while the executive orders were in effect, from March 20, 2020, until November 3, 2020, the one-year deadline for commencing an action pursuant to section 7107 was tolled").

Next, Plaintiffs' wrongful death claim accrued not on the date of Mr. Lagoda's death, but rather April 9, 2020—the release date of the OAG report. The PA argues and concedes that Section 7107 does *not* adopt the two-year statute of limitations applicable to wrongful death claims that commences on the decedent's death. N.Y. Est. § 5-4.1. Instead, under Section 7107 and its more circumscribed limitations period, accrual is determined by reference to New York law governing accrual more generally. Specifically, "[i]n an action to recover for a liability created or imposed by statute, the statutory language determines the elements of the claim which must exist before the action accrues" and "a cause of action accrues, triggering commencement of the limitations period, when *all* of the factual circumstances necessary to establish a right of action have occurred, so that the plaintiff would be entitled to relief." *Gaidon v. Guardian Life Ins. Co. of Am.*, 96 N.Y.2d 201, 210 (2001) (emphasis added).

Here, Mr. Lagoda died on April 12, 2019. Defs. Mot. Ex. HH. As noted, just two days later, the OAG asserted jurisdiction and subsequently launched a criminal investigation, which did not conclude until approximately one year after Mr. Lagoda's death. PCSMF ¶¶ 229–30. Its April 9, 2020 report revealed key facts that were unknown at or around the time of Mr. Lagoda's death and established Plaintiffs' right of action. For example, the investigative report revealed: (1) "the force

9

used by the [IDOs] likely contributed to Mr. Lagoda's death"; (2) the IDOs were not trained about the unique vulnerability of an individual in the immediate wake of a seizure; (3) the IDOs punched and physically restrained Mr. Lagoda, who was in a prone position, while he was in the immediate wake of a seizure; and (4) and "emergency medical treatment for Mr. Lagoda was delayed by as much as 20 minutes." PCSMF ¶¶ 232–35.

These facts, coupled with the plain language of the wrongful death statute show the report's release date was the accrual date for purposes of Section 7107. Section 5-4.1 only permits a wrongful death actions to be brought (1) by a duly-appointed personal representative and (2) "against a person who would have been liable to the decedent by reason of such wrongful conduct if death had not ensued." N.Y. Est. § 5-4.1. In this case, all the facts necessary for Mr. Lagoda to bring a suit against the PA were not known and available until the OAG released its report. Nor would this Court (or any other) want to accelerate such lawsuits against law enforcement and other officers. Otherwise, litigants might be forced to rush to the courthouse without a strong factual basis to do so, purely out of fear a court may find their claims to have been filed out of time. The consequences of this are severe. Lawsuits alleging a police officer, first responder, or other state official or entity are responsible for the death of another are devasting and should not be encouraged by rules or rulings limiting wrongful death accrual only to the date of death.

In addition, due to the Covid-19 pandemic and other delays outside of Plaintiffs' control, the Queens Surrogate's Court did not appoint a personal representative for Mr. Lagoda until January 8, 2021. PCSMF ¶ 239. Therefore, a personal representative—an essential component of the wrongful death claim—was not available. In this respect, Defendants' interpretation makes no sense because if the one-year period began to run on Mr. Lagoda's death, Section 7107's commencement requirement would have expired before a lawsuit could even be filed.

10

Plaintiffs' claim is timely for another reason. New York's wrongful death statute sets a new accrual date in instances where criminal conduct is involved. *See* N.Y. Est. § 5-4.1(2). Specifically, that section changes the accrual date and limitations period "[w]henever it is shown that a criminal action has been commenced against the same defendant with respect to the event or occurrence from which a claim . . . arises." *Id*. This provides an additional basis for this Court to find the accrual date of the claims was April 9, 2020 when the OAG terminated its criminal investigations and released its findings, which are at the core of Plaintiffs' case.

In sum, Plaintiffs filed their amended complaint on June 29, 2021, which was served 147 days before the expiration of the statute of limitations on November 23, 2021. Plaintiffs' wrongful death claim therefore is timely and complies with Section 7107.

C. **Alternatively, This Court Should Find the PA Waived Compliance with Section 7107, or Allow Plaintiffs to Pursue Their Earlier-Filed Motion Under Section 7108, or Conclude Plaintiffs Substantially Complied with Section 7107**

In the alternative, this Court should find that the PA's bad-faith litigation conduct—specifically, by agreeing to litigate in federal court and then pretending to abandon their pre-suit legal arguments for four years—waived their right to insist upon compliance with Section 7107 for Plaintiffs' state claims, particularly given this Court has independent subject matter jurisdiction over them under 18 U.S.C. § 1367. If that relief is not available, this Court should allow Plaintiffs to pursue their previously filed state motion under N.Y. Uncons. Laws Section 7108—which provides an exception to Section 7107—or otherwise find that Plaintiffs substantially complied with Section 7107.

1. <u>**The PA's abandonment of its Section 7107 arguments in federal court after removal coupled with prejudice to Plaintiffs results in a waiver**</u>

As an initial matter, the PA's procedural arguments at this juncture of the case are outrageous. These arguments raise a pure issue of law that could have and, in all fairness to

Plaintiffs and this Court, should have been raised (a) in a motion to dismiss after removal to federal court, or (b) in a motion for judgment on the pleadings after it filed an answer, or (c) anytime in the course of the costly, three-to-four years of party discovery.

Having said that, Plaintiffs do not argue that the PA waived compliance with Section 7107 simply by agreeing to remove the case to federal court, or by its mere delay in bringing the arguments. *See, e.g., Lapides v. Bd. of Regents*, 535 U.S. 613, 624 (2002) (state's voluntary removal to federal court waived Eleventh Amendment immunity); *Beaulieu v. Vermont*, 807 F.3d 478, 490–91 (2d Cir. 2015) (court finds removal does not automatically waive state immunity). Rather, Plaintiffs' argument is that the PA's "duplicitous conduct" and the "serious unfairness to Plaintiffs resulting from the tardy invocation of immunity" results in a waiver of any immunity afforded by Section 7107. *Beaulieu*, 807 F.3d at 490–91 (court assumes arguendo that "prejudicial conduct by a state defendant can override state law limiting the manner in which the state's general sovereign immunity may be waived or abrogated"); *see Park v. Indiana Univ. Sch. of Dentistry*, 692 F.3d 828, 830 (7th Cir. 2012) (in federal court, "sovereign immunity is a waivable affirmative defense."). As explained in *Beaulieu*, the availability of waiver may be viewed as consistent with *Lapides*, *supra*, because "[i]f the unfairness of the state's conduct and the prejudice it inflicts on its litigating adversary justify imposing a waiver of Eleventh Amendment immunity . . . it follows that the tardiness of a state defendant's invocation of its general sovereign immunity can also deprive the defendant of that immunity, notwithstanding state law." *Beaulieu*, 807 F.3d at 491.

The undisputed facts in the record support the PA's bad-faith litigation conduct and profound prejudice to Plaintiffs. New York law contains an exception to Section 7107 allowing a plaintiff bringing wrongful death claims to commence an action out of time. NY Unconsol. Laws § 7108. That section provides:

12

where a person entitled to make a claim dies and by reason of his death no notice of claim is filed or suit, action or proceeding commenced within the time specified in [Section 7107] then any court in which such suit, action or proceeding may be brought may in its discretion grant leave to serve the notice of claim and to commence the suit, action or proceeding within a reasonable time but in any event within three years after the cause of action accrued.

*Id*.

Plaintiffs had filed such a motion in state court in response before the case was removed in July 2021. Defs. Mot. Ex. H; PCSMF ¶ 239; Dkt. 1. But, instead of moving to dismiss on jurisdictional grounds, the PA answered and pretended to abandon it, thereby running out the clock on this judicial safety valve, as its availability expired during discovery, three years after accrual of the claim. Under these circumstances, this Court should find the PA waived its consent to suit. *Beaulieu*, 807 F.3d at 491 (suggesting "serious unfairness" to plaintiff due to delay in invoking sovereign immunity may result in a waiver in federal court).

### 2.    The parties should brief Plaintiffs' motion under Section 7108

In the event this Court does not find waiver, this Court should exercise its inherent powers to allow Plaintiffs to re-file their state motion for leave to commence action out of time under Section 7108 in this Court *nunc pro tunc* and allow the parties to brief it now. *See Goodyear Tire & Rubber Co. v. Haeger*, 581 U.S. 101, 107 (2017) ("Federal courts possess certain inherent powers, not conferred by rule or statute, to manage their own affairs so as to achieve the orderly and expeditious disposition of cases") (internal quotation marks and citation omitted). That motion was pending at the time of removal on July 21, 2021, and may be treated as "ripe for decision." *Doe v. United Servs. Life Ins. Co.*, 123 F.R.D. 437, 438 (S.D.N.Y. 1988) ("motions pending in state court at the time of removal survive removal"); *accord* Wright & Miller, Federal Practice and Procedure § 3733 ("[F]ailure to attach a motion that is pending in state court at the time of removal

13

does not waive the motion, which may be pursued in the district court, following removal."). This would allow Plaintiffs to pursue relief denied by the PA's unfair delay in bringing its arguments.

### 3. Plaintiffs substantially complied with Section 7107

At the very minimum, Plaintiffs substantially complied with Section 7107. The PA's contention that the statute allows for "no exceptions for extenuating circumstances or substantial compliance" overstates the current state of the law. Defs. Mem. at 5. As discussed above, the New York Court of Appeals did *not* strictly apply Section 7107's requirements and require a new notice of claim, instead adopting an approach that both recognized the complexities of wrongful death claim litigation and refused to elevate form over substance. *Andrucki*, 24 NY3d at 282. As noted, New York courts also have found that the limitations period may be tolled.

In addition, New Jersey courts liberally construe the identical notice requirement and long have held that "substantial compliance" is sufficient for commencing an action against the PA. *See, e.g.*, *Atlantic Aviation Corp. v Port of N.Y. Auth.*, 168 A.2d 262, 264 (Super. Ct. 1961); *Zamel v Port of N.Y. Auth.*, 264 A.2d 201, 203 (1970). Of course, there is no just reason why New York and New Jersey plaintiffs should be held to different requirements when suing the same PA. Dismissal on jurisdictional grounds here is unwarranted and should be denied.

## II. THIS COURT HAS JURISDICTION OVER PLAINTIFFS' STATE CLAIMS AGAINST THE IDOs

Plaintiffs' claims for wrongful death and "conscious pain, suffering, and agony prior to his death," names both the PA and the IDOs as defendants. Am. Compl. ¶¶ 67–79 (including titles). The IDOs were sued in their individual capacity, as evidenced by service of the amended complaint at their personal residences. PCSMF ¶¶ 236–38.[2] Of course, any of the prerequisites to bringing a

---

[2] Despite exhaustive efforts, one of the officers—IDO Robert Joseph—could not be served at any of the personal addresses identified by Plaintiffs. Counsel for the PA, having already entered an appearance in the matter, agreed to accept service for IDO Joseph.

14

lawsuit against the PA (discussed above) do not apply to bringing a suit against the officers, and this Court has supplemental jurisdiction over those claims under 18 U.S.C. § 1367. So, although the heading in the Motion's Point I suggests that all of Plaintiffs' state law claims are barred, Defendants later concede that the jurisdictional arguments only apply to those claims "against the Port Authority." Defs. Mem. at 3.

## III.    PLAINTIFFS' FAILURE-TO-TRAIN CLAIMS SHOULD GO TO THE JURY

The factual record in this case shows that the PA's training of its officers was inadequate, the PA's failure in this regard demonstrated a deliberate indifference, and this woefully deficient training was related to Mr. Lagoda's death. That is a more than sufficient basis for this Court to deny summary judgment.

### A.    Legal Standards for Municipal Liability

The United States Supreme Court has held that the inadequacy of police training properly serves as the basis for 42 U.S.C § 1983 liability "where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." *City of Canton, Ohio v. Harris*, 489 U.S. 378, 388 (1989). Courts are directed to evaluate "whether [a] training program is adequate" and "in light of the duties assigned to specific officers or employees [where] the need for more or different training is so obvious, and the inadequacy so likely to result in the violation of constitutional rights, . . . the policymakers . . . can reasonably be said to have been deliberately indifferent to the need." *Id.* at 390. This "identified deficiency in a [] training program must be closely related to the ultimate injury." *Id*. The record here supports each element.

### B.    The History and Public Awareness of Prone Restraint and Positional/Compressional Asphyxiation

The law enforcement community has known for decades that restraining an individual in a prone position increases the danger of positional asphyxia and/or compressional asphyxiation, *i.e.*,

15

the potential for an individual to suffocate because the prone position inhibits normal air exchange and may cause sudden death. While normal air exchange is inhibited, individuals who are restrained in the prone position may have a fight-or-flight reaction, where trying to save one's own life may be mistaken as resistance. In many instances, law enforcement officers mistake this natural reaction for resistance and apply more pressure to a prone individual rather than understand an individual is experiencing a potentially fatal medical event.

In 1995, the U.S. Department of Justice issued a safety bulletin titled "Positional Asphyxia—Sudden Death" that emphasized that the "risk of positional asphyxia is compounded" when an individual is physically restrained by law enforcement officers who "use [] behind-the-back handcuffing combined with placing the subject in a stomach-down [prone] position." U.S. Dep't of Justice, Nat'l Law Enforcement Tech. Ctr., Positional Asphyxia—Sudden Death at 2 (June 1995), https://www.ojp.gov/pdffiles/posasph.pdf. This bulletin further states that the "natural reaction to oxygen deficiency occurs" and "the person struggles more violently." *Id.*

Over the past thirty years, law enforcement departments throughout the nation have since incorporated policies and training that address the severe risk of positional asphyxia during prone restraint. Nevertheless, lives continue to be taken from individuals who would not have died but for law enforcement officer's/officers' unlawful use of prone restrain.[3][4]

---

[3] In an article published by the Associated Press in May 2024, it found that "its cases involving prone restraint are among more than 1,000 AP documented over a decade of people who died not by gunshot but after officers used force that is not meant to kill. In all, at least 740 of these encounters involved prone restraint." *Risks of handcuffing someone facedown long known; people die when police training fails to keep up*, Associated Press, May 14, 2024, https://apnews.com/article/police-handcuff-facedown-dangers-investigation-963e94a574ef8d34d03e7ab27ee61835 (last visited May 4, 2025).
[4] Between July 8, 2015, and January 4, 2021, a total of 42 "deaths of civilians caused by law enforcement officers" were investigated pursuant to N.Y. Comp. Codes R. & Regs. Tit. 9 § 8.147 - Executive Order No. 147.

**C.    The Record Supports the PA's Deliberate Indifference and Failure to Train its Officers**

"In the Second Circuit, 'three requirements . . . must be met before a municipality's failure to train . . . constitutes deliberate indifference to the constitutional rights of citizens." *Avant v. Cty. of Erie*, No. 20-CV-1689-LJV-HKS, 2024 U.S. Dist. LEXIS 77866, at *12–13 (W.D.N.Y. Apr. 29, 2024) (quoting *Walker v. New York*, 974 F.2d 293, 297 (2d Cir. 1992)). "First, the plaintiff must show that a policymaker knows to a moral certainty that her employees will confront a given situation." *Id.* (internal quotation marks and citation omitted). In other words, "a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Id.* "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training . . . will make less difficult or that there is a history of employees mishandling the situation." *Id.* "Finally, the plaintiff must show that the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights." *Walker*, 974 F.3d at 298 (citing *City of Canton*, 489 U.S. at 390); *Avant*, 2024 U.S. Dist. LEXIS 77866 at *13.

Applying this standard, the *Avant* court rejected a municipality's motion for summary judgment—as this Court should here. *Avant*, 2024 U.S. Dist. LEXIS 77866 at *13. In *Avant*, the first factor was satisfied because the municipality was aware that some hypoglycemic individuals would be held at Eerie County Holding Center. *Id.* The second factor was satisfied because the existence of a policy "suggests that there is a difficult choice in how to handle the treatment of a hypoglycemic patient." *Id.* at *14 (internal quotation marks and citation omitted). The third factor, which "was poignantly demonstrated by the tragic outcome of [*Avant*]", was satisfied because it showed that "the wrong choice . . . will frequently cause the deprivation of a citizen's constitutional rights." *Id.* (internal quotation marks and citation omitted). In further support of the satisfaction of

17

the three-prong test, the *Avant* court noted that Avant "identified evidence supporting her claim that the County's training program—if it had one—was woefully inadequate." *Id.*

The record parallels that of the *Avant* case. As in *Avant*, there is at least some policy in place that governs how the IDOs should act when employing the use of force against an individual like Mr. Lagoda. *See* Defs. Mot. Exs. EE, FF (use of force policies). Next, as in *Avant*, the "existence of a policy itself" suggests that there is a difficult choice that PAPD officers must make in determining when and how to use force, if any, against an individual like Mr. Lagoda. *Avant*, 2024 U.S. Dist. LEXIS 77866 at *14. Last, as in *Avant*, the final factor is "poignantly demonstrated by the [death of Mr. Lagoda]", which shows that the improper application of force by PAPD officers will deprive individuals of their constitutional rights. *Id.*; *Graham v. Connor*, 490 U.S. 386, 393–94 (1989) (recognizing constitutional right not to be subject to excessive force).

The record here also shows the PA, by its own admission, did *not* train its officers as to positional restraint, compressional asphyxiation, and duties to intercede until 2020, the year *after* Mr. Lagoda's death. PCSMF at ¶¶ 223–28. Furthermore, the PA did not train its officers as to the "uniquely vulnerable condition of such individuals in the period immediately after the resolution of a seizure." Defs. Mot. Exs. GG at 12. This "woefully inadequate" training—or lack thereof—was discussed at length in Plaintiffs' expert Scott DeFoe's Rule 26 report and in his deposition testimony. For example, Mr. DeFoe determined that the IDOs:

- "failed to initially determine that Mr. Evgeniy Lagoda was experiencing a medical emergency and act appropriately" and as such their "actions fell below the standard of care";
- "failed to immediately take the pressure and weight off of Mr. Evgeniy Lagoda's back once he was on the ground in an a prone position";
- "failed to recognize that Mr. Evgeniy Lagoda was in medical distress and having difficulty breathing and take appropriate action";
- "used inappropriate, unnecessary and unreasonable force when they punched/struck Mr. Evgeniy Lagoda numerous times to include the on the head and face while he was in a prone position and in the throes of a medical emergency";

18

- Their "inappropriate, unnecessary and unreasonable force unnecessarily escalated and unnecessarily prolonged the incident";
- "use of force/lethal force in this matter did not comport with standard police practices and violated [PAPD] training or the training that [PAPD] should have received that resulted in the death of Mr. Evgeniy Lagoda";
- had a "gross lack of situational awareness and fundamental tactical errors";
- "failed to use de-escalation and defusing techniques during their interaction with Mr. [] Lagoda";
- "should have intervened immediately, either verbally, physically, or both" in order to prevent other officers from endangering the life and safety of Mr. Lagoda.

PCSMF at ¶¶ 196–222.

Contrary to PA's claim there is more than evidence in the record for a jury to conclude that the PA's training was "woefully inadequate," and that Defendants' failures were deliberately indifferent to the rights of Mr. Lagoda.

**D.    The Record Shows That the PA's Deliberate Indifference and Failure to Train Its Officers Caused Mr. Lagoda's Death**

Unrefuted medical testimony shows the PA's indifference and the IDOs lack of awareness and training caused of Mr. Lagoda's death. Indeed, Defendants offer no medical expert opinion to the contrary.

Plaintiffs' expert Dr. Kris Sperry, highly experienced in the fields of clinical, anatomical and forensic pathology, testified:

- Mr. Lagoda's seizure was simply a medical event that led to the response of the Defendant Officers;
- that, while being restrained, Mr. Lagoda was suffering and trying to alleviate himself from the hurt and from the struggle;
- that the deep contusions on Mr. Lagoda's upper back and base of neck may be consistent with "great pressure [] exerted on those areas when Mr. Lagoda was restrained prone" which "would have the effect of pushing the neck and lower head and face into the floor, distorting the upper airway and inhibiting normal air exchange"—*i.e.*, positional asphyxiation;
- that Mr. Lagoda "was subject to severe and unremitting violence" and "he was beat to death";
- "he succumbed to the point where he eventually died because of his inability to save himself from the actions of others";

19

- that Mr. Lagoda's seizure wasn't the cause of death, that Mr. Lagoda did not die because of his seizure, and Mr. Lagoda did not die because of an alleged seizure disorder.

PCSMF at ¶¶ 171–86.

Defendants offer no medical expert opinion to rebut or contradict these findings. Defendants' purported medical expert testified that he is not a forensic pathologist, anatomical pathologist, clinical pathologist, neurologist, or cardiologist, and his expert opinion was for the purposes of making a determination on whether there was excessive force (a police term of art) used by IDOs despite not being a police officer and never reviewing any PAPD policies and procedures. PCSMF at ¶¶ 187–89.

For the reasons stated above, Defendant's Motion to dismiss the claim should be denied.

## IV.   IDOs ARE NOT ENTITLED TO QUALIFIED IMMUNITY

The facts relied upon by Defendants in support of their request for dismissal on grounds of qualified immunity are highly contested. Summary judgment therefore is unwarranted and the Motion should be denied.

### A.   Legal Standard for Qualified Immunity at Summary Judgment Stage

"[Q]ualified immunity . . . cannot be resolved as a matter of law" where the version of facts proffered by Defendants as to the reasonableness of officers' actions "is sharply disputed". *Weyant v. Okst*, 101 F.3d 845, 858 (2d Cir. 1996). Furthermore, "factual disputes [that] bear upon whether it was reasonable for [] officers to believe they were acting lawfully [] must be resolved by a jury." *Rattray v. City of N.Y.*, No. 17-CV-8560 (PGG) (KHP), 2022 U.S. Dist. LEXIS 166312, at *24 (S.D.N.Y. Sep. 14, 2022) (denying motion for summary judgment on grounds of qualified immunity because material facts were in dispute); *Kaminsky v. Rosenblum*, 929 F.2d 922, 927 (2d Cir. 1991) (where objective reasonableness of officers' action depends upon disputed facts,

20

district court properly denied summary judgment); *Brawer v. Carter*, 937 F. Supp. 1071, 1082 (S.D.N.Y. 1996) (declining to grant summary judgment on issue of qualified immunity where the parties disagreed on the facts known to the arresting officers at the time).

### B.     The Facts Upon Which Defendants Rely Are Highly Contested and Contradicted by Explicit Findings in the Record

The narrow set of facts proffered by Defendants are sharply disputed by extensive evidence in the record supporting Plaintiffs' claim. *See generally* PCSMF ¶¶ 117–239. For instance, Defendants rely upon highly contested facts, or ignore material facts and/or events, when asking this Court to grant them summary judgment: (1) Mr. Lagoda's seizure and his display of common post-ictal responses, PCSMF ¶¶ 124–27; (2) the immediacy of the Flight 659's return to the gate, PCSMF ¶ 128; (3) the medical emergency to which IDO Bugiada responded, PCSMF ¶ 129–30; (4) the continuous nature of a response to a medical emergency, PCSMF ¶¶ 171, 214; (5) the heightened standard owed by the IDOs to Mr. Lagoda given the medical emergency, PCSMF ¶ 211; (5) the inability for individuals in post-ictal states as it concerns understanding verbal communication, PCSMF ¶ 212; (6) Mr. Lagoda's native tongue and inability to understand English, PCSMF ¶¶ 121–22; (6) the extensive force used on Mr. Lagoda while he was in the throes of an on-going medical emergency, PCSMF ¶¶ 171–222; (7) IDOs' use of improper restraining techniques, including punching, kneeing, and kicking with shod feet Mr. Lagoda, *id.*; (8) immediacy of Mr. Lagoda's lack of breathing and lack of pulse after he was restrained in a prone position, PCSMF ¶¶ 143–50; (9) the significant delay of Emergency Medical Services arriving to render aid to Mr. Lagoda because IDOs failed to stay behind as assigned to escort the ambulance to the scene, PCSMF ¶¶ 151–65; (10) the lack of training as to the unique vulnerability of individuals in the immediate wake of a seizure, PCSMF ¶ 226; (11) the lack of training as to positional restraint, compressional asphyxiation, and duties to intercede until 2020, the year after

21

Mr. Lagoda's death, PCSMF ¶¶ 223–28; (12) that, as concerns an individual in the immediate wake of a seizure, "Convulsions, confusion, and episodes of agitated behavior during an episode should not be perceived as deliberate hostility or resistance to the officer", PCSMF ¶ 197; (13) when an individual is in a postictal state after suffering a seizure, the individual's oxygen saturation is to be monitored, Defs. Ex. BB at 148:13-25; (14) after somebody has suffered a seizure, an individual's brain is still recovery from the seizure, *id.*; (15) seizures are "[r]arely life-threatening, but a serious emergency", PCSMF ¶ 195; (16) when an individual has had a seizure, "prevent injury especially to head" and "don't restrain", *id.*; and (17) most fundamentally that the IDOs caused the death of Mr. Lagoda, PCSMF ¶¶ 171–86.

Plaintiffs' police expert (Scott DeFoe) and medical expert (Dr. Kris Sperry), discussed *supra*, Section III(C) and III(D), further underscore the unreasonableness of IDOs actions and failures. S*ee* PCSMF ¶¶ 171–222.

### C.    Summary Judgment Should Be Denied Under Circuit Precedent

Defendants' Motion argues that the IDOs have qualified immunity because their use of force was reasonable under the circumstance and there are no genuine issues of material facts to refute their reasonableness argument. Defendants' argument fails and should be denied.

In deciding a qualified immunity claim on summary judgment, "the court must consider (1) whether the facts shown make out a violation of a constitutional right; and (2) whether the right at issue was clearly established at the time of defendant's alleged misconduct." *Gjenashaj v. City of N.Y.*, No. 19cv4142, 2020 U.S. Dist. LEXIS 234531, at *7 (S.D.N.Y. Dec. 14, 2020); *see also Williams v. Hughes*, No. 20-CV-10571 (PMH), 2024 U.S. Dist. LEXIS 233250, at *18 (S.D.N.Y. Dec. 27, 2024) (same). The court in *Gjenashaj* further stated that the "key determination of reasonableness depends on which version of events one credits[,]" and

that the "Second Circuit has consistently held that summary judgment is inappropriate if it is clear that determination of a constitutional violation turns on which of two conflicting stories best captures what happened on the street." *Gjenashaj*, 2020 U.S. Dist. LEXIS 234531 at *8–9 (cleaned up; internal quotation marks and citations omitted).

In *Gjenashaj*, the parties disputed five critical areas of fact, including (but not limited to) "whether Gjenashaj pointed the gun at Lieutenant Harrison while she was inside the SUV"; "whether Gjenashaj heard either officer yell 'Gun!' or any other command; and "whether Gjenashaj pointed the gun at the officers and assumed a two-handed shooting stance." *Id.* at 9. The *Gjenashaj* court denied the officer's motion for summary judgment, determining that "Even assuming there was a violation of a constitutional right, summary judgment is still inappropriate" because "[the disputed facts] overlap both the excessive force and qualified immunity issues, [and as such] summary judgment must be denied." *Id.* at 10.

In *Williams*, the court similarly denied the defendant officer's motion for summary judgment because the court could not make a determination on the reasonableness of the officer's conduct because of the genuine dispute over the material facts on the record. *Williams*, 2024 U.S. Dist. LEXIS 233250 at *19 (citing and including the accompanying parentheticals *Bacote v. Riverbay Corp.*, No. 16-CV-01599, 2017 U.S. Dist. LEXIS 233078, 2017 WL 11567934, at *12 (S.D.N.Y. Nov. 8, 2017) ("Because summary judgment on qualified immunity grounds is inappropriate where there are disputed issues of fact pertinent to a determination of the reasonableness of an officer's conduct, Defendants' motion for summary judgment on this basis is denied."); *Nazario v. Thibeault*, No. 22-01657, 2023 U.S. App. LEXIS 28813, 2023 WL 7147386, at *2 (2d Cir. Oct. 31, 2023) (open material issues of fact preclude finding of qualified immunity); *Zwick v. Town of Cheektowaga*, No. 17-CV-00727, 2021 U.S. Dist. LEXIS 202413, 2021 WL

23

4895106, at *6 n.7 (W.D.N.Y. Oct. 20, 2021) ("[G]iven the existence of a genuine issue of material

fact, the Court will not address the viability of any qualified-immunity defense.")).

In the instant case, like in *Gjenashaj* and *Williams*, there are sharply disputed issues of fact

pertinent to the determination of reasonableness of the IDOs' conduct. Contrary to Defendants'

contentions, the evidentiary record shows (but is not limited to):

- IDOs were not adequately trained as to compressional asphyxiation and positional restraint, as well as the unique vulnerability of individuals in the immediate wake of a seizure;
- IDOs responded to what should have been considered an on-going medical emergency and failed to adhere to the appropriate standard of care to an individual in a medical emergency;
- Individuals in the immediate wake of a seizure are uniquely vulnerable and may be confused, disoriented, agitated, and/or combative;
- Mr. Lagoda was not actively resisting arrest, but was instead in the throes of an on-going medical emergency where his brain was still recovering from the seizure and he was trying to alleviate himself from the hurt and from the struggle;
- IDOs excessively punched, kicked with shod feet, and kneed Mr. Lagoda when trying to restrain him;
- IDOs used improper restraining techniques;
- IDOs used unnecessary, inappropriate, and unreasonable force against Mr. Lagoda;
- IDOs failed to intervene or intercede to prevent any further inappropriate, unnecessary, and unreasonable excessive force on an individual who was in the immediate wake of a seizure;
- Mr. Lagoda's seizure was not the cause of death and that it was simply a medical event that led to the response of the IDOs;
- Deep contusions on Mr. Lagoda's upper back and base of neck may be consistent with "great pressure [] exerted on those areas when Mr. Lagoda was restrained prone" which "would have the effect of pushing the neck and lower head and face into the floor, distorting the upper airway and inhibiting normal air exchange"—*i.e.*, positional asphyxiation;
- Mr. Lagoda was subject to severe and unremitting violence and he was beaten to death.

PCSMF ¶¶ 171–222.

For the reasons stated above, this Court should find that Point III of Defendants' Motion

cannot be resolved as a matter of law because the version of facts proffered by Defendants as to

the reasonableness of officers' actions is sharply disputed. The issue of qualified immunity is not appropriate at this stage, and should be heard by a jury.

## V.    PUNITIVE DAMAGES ARE AVAILABLE IN THIS CASE AGAINST THE IDOs AND PA

Defendants final request to this Court is to dismiss all claims for punitive damages (Point IV). Defendants' arguments are misplaced for three reasons.

*First*, as a threshold matter, even if the PA were correct that punitive damages are never available against the PA—which it is not—Defendants do not argue—and therefore concede—that punitive damages are available against the IDOs. Defs. Mot. at 24.

*Second*, the PA misstates the uniformity in this area of law when it claims punitive damages are not available. To the contrary, in *Kondakjian*, the court observed that while punitive damages are not typically available against a municipal entity in a civil action, the "rationale of those decisions is to avoid punishing all of the taxpayers in the general public." *Kondakjian v. Port Auth. of N.Y. & N.J.*, No. 94 Civ. 8013, 1996 U.S. Dist. LEXIS 7200, at *1 (S.D.N.Y. 1996). But, as the *Kondakjian* aptly pointed out, "the taxpayers bear no legal liability for PA debts or judgments." *Id.* at *2 (citing *Hess v. Port Auth. Trans-Hudson Corp.*, 513 U.S. 30, 45 (1994)). As such, the court in *Kondakjian* declined to "immuniz[e] the Port Authority from punitive damages" and "refuse[d] to strike the claim for punitive damages." *Kondakjian*, 1996 U.S. Dist. LEXIS 7200, at *2.

*Third*, Defendants fail to point out that the Second Circuit has *not* held that the PA cannot be assessed punitive damages. This Court is therefore free to find that because "the taxpayers bear no legal liability for PA debts or judgments" there is no compelling reason automatically to preclude the consideration of punitive damages against it for egregious conduct should that be proved at trial.

Accordingly, this Honorable Court should deny Points I–III and V of Defendants' Motion.

25

Dated: May 12, 2025          Respectfully Submitted,

/s/ *J. Christopher Amrhein, Jr.*
J. Christopher Amrhein, Jr. (*pro hac vice*)
Michael J. Sullivan (*pro hac vice*)
*Ashcroft Law Firm, LLC*
200 State Street, 7th Floor
Boston, MA 02109
P: 617-573-9400
camrhein@ashcroftlawfirm.com
msullivan@ashcroftlawfirm.com

***Attorneys for Plaintiffs***

26

## CERTIFICATE OF SERVICE

I, J. Christopher Amrhein, Jr., certify that this document is being filed through the ECF system on May 12, 2025, which serves counsel for Defendants who are registered participants as identified on the ECF docket.

/s/ *J. Christopher Amrhein, Jr.*
J. Christopher Amrhein, Jr.