# Exhibit C

*The Ministry of Public Healthcare of the Russian Federation State Budgetary Institution of Healthcare (SBIH) "Bureau of Forensic Medical Examination" of the Ministry of Healthcare of the Krasnodar Territory*

**DEPARTMENT OF COMPLEX FORENSIC MEDICAL EXAMINATIONS**

44 October St., Krasnodar 350063
Tel. / fax: +8 (861) 268-13-97

**CONCLUSION OF THE EXPERT No. 280/2019**
(forensic medical examination commission)

September 2, 2019
City of Krasnodar

In the period from 3 p.m. on May 8, 2019 to 2 p.m. on September 2, 2019, on the basis of a decision on conducting a forensic medical examination made by the investigator of the Russian Investigative Committee for the Krasnodar Territory Birov, R.B., dated May 02, 2019, at the SBIH "Forensic Medical Examination Bureau" in the Krasnodar Territory, a commission of experts consisting of:

    – **Natalya Aleksandrovna Garkusha** – head of the department of complex forensic medical examinations of SBIH "Forensic Medical Examination Bureau", physician of forensic examination of the highest qualification category, with a higher medical education and special training in forensic medical examination with 17 years of experience;
    – **Yury Alexandrovich Doroshkevich** – physician of forensic examination of the department for professional offenses of medical workers of the SBIH "Forensic Medical Examination Bureau", with a higher medical education and special training in forensic medical examination with 13 years of experience;
    – **Lyudmila Ivanovna Skoromnikova** – physician of forensic examination of the forensic histological department of SBIH "Forensic Medical Examination Bureau" of the highest qualification category, having a higher medical education and special training in forensic medical examination with 37 years of experience;

CONFIDENTIAL
EL000230

   – **Yulia Gennadyevna Yachmeneva** – head of the forensic histological department of SBIH "Forensic Medical Examination Bureau", a physician of forensic examination of the highest qualification category, with a higher medical education and special training in forensic medical examination with a work experience of 15 years;

   – **Olga Alexandrovna Firsenko** – physician of forensic examination at the medical forensics department of SBIH "Forensic Medical Examination Bureau", with a higher medical education, special training in forensic science, with nearly one year of work experience in the field;

   – **Emma Anatolevna Kibler** – physician of forensic examination at forensic chemical department of SBIH "Forensic Medical Examination Bureau", with a higher medical education, special training in forensic science with 21 year of field experience;

   – **Yulia Anatolievna Solodovnik** – physician of forensic examination of the second qualification category of the department of forensic medical examinations in cases of professional offenses of medical workers of SBIH "Forensic Medical Examination Bureau", with a higher medical education and special training in forensic medical examination with 9 years of work experience in the field;

performed a forensic medical examination on prints of material KRSP No. 649pr-19, with a second examination of the exhumed corpse of Evgeny Grigorievich Lagoda, born on 03/02/1980, taking into account the results of additional studies.

Rights and obligations of an expert, Art. 57 Code of Criminal Procedure, clarified.

Experts:
Signatures
Y.A. Solodovik
U.G. Yachmeneva
O.A. Firsenko
E.A. Kibler

Issues to be resolved and other sections of the "Conclusion" are set out on 11 sheets + 9 sheets of photo tables.

CONFIDENTIAL          EL000231

**The following questions were raised for an expert conclusion:**

1) What injuries are present on the body of Lagoda, E.G., their numerical quantity, location, degree of severity, time of infliction?

2) What could be the cause of injury to the corpse of Lagoda, E.G.?

3) Are all injuries caused at the same time or at different times; if at different times, then which ones occurred first, and within what time intervals did the other occur; are all injuries caused while alive; if not, which ones are post-mortem injuries and how long after death did they occur?

4) In what sequence of episodes have the injuries been inflicted?

5) What was the relative position of Lagoda, E.G. and the attacker at the moment of injury infliction?

6) Was Lagoda, E.G. capable to committing any independent actions after the injuries caused to him?

7) With what force (significant or insignificant) were the wounds (injuries) inflicted?

8) Was Lagoda, E.G. intoxicated and to what extent?

9) What is the cause of death of Lagoda, E.G.?

10) What is the time of death of Lagoda, E.G.?

11) Is death causally related to bodily injuries found on the corpse of Lagoda, E.G.?

12) What weapon caused damage to Lagoda, E.G., resulting in his death?

13) Are there marks and signs on the corpse Lagoda, E.G. allowing to judge the shape, size and other individual qualities of the weapons applied?

14) Was one weapon or more than one weapon used to cause injuries found on the corpse of Lagoda, E.G.? Which ones are deadly, and which are not?

15) Could the injuries to Lagoda, E.G. be caused from kicking with human legs or punching with human hands?

16) Did Lagoda, E.G. suffer from ongoing illnesses during his lifetime; if so, what were they, and what were their causes?

17) Did the illnesses discovered in Lagoda, E.G. lead to his death?

CONFIDENTIAL                                                                 EL000232

1.4. The results of laboratory tests dated 03/15/2019 were studied by a commission of experts.

1.5. The results of an ultrasound examination of the abdominal organs dated 03/17/2019 were studied by a panel of experts.

1.6. The report of the gastroenterologist dated 03/18/2019 was studied by a panel of experts.

SBIH "Forensic Medical Examination" Expert opinion No. 280/2019

1.7. The Death Certificate issued by the Department of Health and Mental Hygiene "... Record 156-19-015741. Place of death: Emergency medical department patient. The immediate cause: an investigation is underway ... Type of death: an investigation is underway ... Forensic expert Yvonne Milewski...".

2. Repeated forensic medical examination of an exhumed corpse of Lagoda, E.G., born in 1980, held on 05/08/2019 in the period from 9 am to 18 pm by a commission of forensic experts Y.A. Solodovnik and Y.A. Doroshkevich. At the study was present an investigator of the Investigative Committee of the Russian Federation for the Karasun district of the city of Krasnodar Birov, R.B. The object of inspection is a box made of light brown wood. The box is sealed with numerous tags made of sheets of white paper. The tags contain numerous typewritten notes containing records in English. There are explanatory inscriptions on the box made using a black dye, reading as: "Head, legs." On the left side surface of the wooden box is placed a green paper tag made of a sheet of lined paper. The tag has an explanatory text reading as: "INVESTIGATIVE COMMITTEE OF THE RUSSIAN FEDERATION. PACK NO. KRSP No. 458. Description of the object in the package: corpse of Lagoda, E.G., born ██/██/1980. Date and place of receipt: 05/02/2019. Investigator R.B. Birov...". The integrity of the box is not disturbed. The head end was opened, a feather pillow of white color was found in it, without impurities and damage. The pillow is removed. A gray-blue coffin with a double opening lid was removed from the box, on the side surfaces of which there are three handles made of gray-blue plastic material. The cover is removed, intact, not deformed. The strength of the coffin boards is preserved. By removing the coffin lid, it was found that the edges of the base of the coffin are trimmed with golden lace; the inside of the coffin is lined (upholstered) with a white fabric made of synthetic material that imitates silk. At the head end of the coffin is a white plastic bag containing inscriptions and images of religious

content. Also, at the head end of the coffin are two fragments of white cotton fabric, without soiling and damage. The items above have been removed. The body lies on its back, facing up, the upper limbs are slightly bent at the elbow joints, somewhat brought closer to the body; the lower limbs are straight. Hands are tied with a plastic bag. At the foot end of the coffin there is a blanket of white silk fabric with a religious inscription on it. A liner of white color was found between the folds of the blanket (without soiling and damage). The corpse has been moved to the section table. Clothes on the corpse: a black jacket; it fastens with two black plastic buttons. A patch pocket is located on the left tail of the jacket, from which a small gray handkerchief with white stripes comes out. The shirt is white; it fastens with plastic buttons. A tie of gray color in a small strip of white. Black classic trousers fasten with a black plastic button and a zipper. On the back of the trousers there are mortise pockets with a black plastic button. Black cotton socks. Black leather shoes. Clothing without contamination and damage, put on sequentially, the integrity of loops and buttons is not disturbed. When clothes are removed, a dense translucent suit made of rubberized fabric with long sleeves was found on the body of the deceased.

Boxer shorts from black knitwear are put on over the jumpsuit. In the area of the wrist and ankle joints, the jumpsuit is tightly wrapped with tape. A zipper is located on the front surface from the neck.

Valuables are not delivered with the corpse. Clothing and suit are removed. On the sectional table lies the corpse of a man of hypersthenic physique, slightly increased nutrition; body length in the form presented is 175 cm. On the outer surface of the right shoulder there is a light blue tattoo with the image of a tiger. The skin of the face, hands are abundantly covered with dark-brown make-up. The hair on the head is black, straight, up to 3.0 cm long in the parietal regions. The body is washed with cool running water. The skin is cold to the touch in all areas of the body. Cadaverous spots are absent. Rigor mortis is absent. The bones of the skull, cartilage of the nose and auricles are without pathological mobility to the touch. The skin of the face is gray-violet with the exception of those places where there is damage, as described below. Eyes are closed; corneas dried out; sunken eyeballs. The connective membranes of the eyes are grayish-whitish, cloudy. Teeth in the oral cavity are without damage. The tongue in the oral cavity is absent. The neck is of cylindrical shape of medium length and thickness. The chest is cylindrical, symmetrical, without pathological mobility to the touch. The anterolateral wall of the abdomen is above the edge of the rib arches. The external genitalia are formed correctly,

CONFIDENTIAL

EL000234

according to the male type. Scrotum is with traces of the initial sectional study. The testicles are absent. In their place, there are fragments of spermatic cords with patches of dark red, reminiscent of hemorrhage. The foreskin covers the glans penis. The external opening of the urethra is located correctly; there is no discharge from it. The anus is closed, the skin around it is clean, without damage. The mucous lining of the anal canal is folded, shiny, without specific features. Hairiness in the axillary and pubic areas is markedly moderate. The nail plates on the fingers and toes are short cut, without damage. The nail box is a pale cyanotic blue. The skin of the hands and feet is macerated, wrinkled. When conducting an external examination, traces of the primary sectional examination were found: in the parietal region, a standard sectional incision is sutured by a thread. On the front surface of the body from the shoulder joints, uniting with each other at the level of the sternum to the pubic joint, bypassing the umbilical ring on the left, there is a sectional incision sutured by a thread. The skin in the projection of the sternum with a drying area of dark brown color, parchment density, is of an irregular oval shape, 12x6 cm in size. In the right clavicular region, there is a horizontally oriented linear wound, 6.5 cm long, sutured with a sectional suture, white thread. Along the periphery of the above-described sectional sutures, there are multiple symmetrically-located point wounds with a dried-up sunken surface of a dark brown color (traces of the previous sectional study). On the back of the body from the outer occipital protuberance along the vertebral column with a transition to the gluteal region, the posterior surfaces of the hips and lower legs goes a continuous sectional incision, sutured with a white thread. On the posterior surfaces of the upper limbs along the shoulder blades passes a continuous sectional cut, sutured with a white thread. During an external examination, bodily injuries were found. All injuries are described assuming an anatomically correct vertical position of the body, with arms extended along the torso, palm surfaces facing forward. Bruises of dark bluish-violet color, are located: in the buccal region on the right extending to the right eyelids, the right temporal and frontal region (1), about 17x8.5 cm in size; the buccal region on the left with the spread entirely on the left auricle; left eye eyelids, left temporal and frontal region (1), about 21x9.5 cm in size. Against the background of bruising of the frontal forehead region, there is a dense patch of dark brown color with a dried surface of parchment density. Small pointy abrasions under a dark brown surface, located below the ambient present skin layer, are in the backrest region and alar rim portions, the size is 1.5 and 21.0 cm in the area. Glabellar area has a "Y"-shaped wound, the ends of which are glued with a sticky substance. When separating the ends and

EL000235

angles of the wound, the latter appear to be fine-toothed, with barely noticeable areas of tears. Wound depth is 0.4 cm in the walls and edges of the wound with dark red dull hemorrhage. The bottom of the wound is represented by deep layers of the skin. [Injuries also observed:] in the area of the tip of the right auricle of an indefinite shape, 1.0x0.4 cm in size; in the projection of the right shoulder joint (1), an irregular oval of the size of 4x2.5 cm; the antero-inner surface of the right shoulder at the border with an oval-shaped armpit of the size of 2.5x1.2 cm; the anteroposterior surface of the right shoulder at the border of the upper and middle third (2) of oval shape 2.5x0.9 cm in size; in the projection of the ulnar tip, round shape with a diameter of 3.5 cm; on the border of the middle and lower third (1), rounded shape with a diameter of 5.5 cm; the posterior outer surface of the right forearm in the upper third (1), 3.0 cm in diameter; the posterior outer surface of the right forearm of the lower third (1), 2.0 cm in diameter; the posterior outer surface of the right forearm at the border of the middle and lower third (1); on the rear surface of the forearm in the lower third (1), rounded, 2.5 cm in diameter; the rear surface of the forearm in the projection of the wrist joint with spreading to the back surface of the wrist (1), of an indefinite shape, 8x6.5 cm in size; on the back surface of the right hand, in the projection of the 2 metacarpal bones (1), oval shape, with dimensions 1.8x0.7 cm; in the projection of the left shoulder joint (1), oval shape in size 2.5x0.9 cm; the front surface of the left shoulder in the upper third (1), rounded, 2.5 cm in diameter; the posterior surface of the left shoulder at the border of the middle and lower third (1), rounded, 3.5 cm in diameter; the rear surface of the left shoulder in the projection of the ulnar tip (1), round, diameter 3.0 cm; the inner surface of the left shoulder in the lower third (1), strip-shaped vertically oriented, 6x1.7 cm in size; inside the left side of the left shoulder in the lower third (1), oval, 6x1.7 cm in size; the left forearm in the upper third (1), oval, 2x2.7 cm; on the left upper limb in the projection of the left wrist joint (1), round shape with a diameter of 3.5 cm; the inguinal region on the left with spreading to the front surface of the thigh (1), indefinite shape (1), size 30x12 cm; in the area of the anterior abdominal wall to the left of the umbilical ring (1), round shape, pale bluish bruising with fuzzy contours, diameter 2.5x0.8 cm; the anterior outer front surface of the left thigh in the middle third (1), diameter 2.5 cm; the posterior outer surface of the left thigh in the upper third (1), rounded, dimensions of 4.0x2.7 cm; the anterior outer surface of the left tibia in the upper third (3), irregular oval bruising with fuzzy contours, ranging in size from 1x0.7 cm to 3.7x0.9 cm; the front surface of the left lower leg on the border of the middle and the lower third of pale cyanotic color, bruised in an irregular round

CONFIDENTIAL                                                                                           EL000236

shape, 3.5 cm in diameter with fuzzy blurry contours. Against that backdrop is a dark brown dried-up segment, of parchment density to the touch, which lies on the outer surface of the left tibia in the lower third closer to the ankle joint, diameter 2,0x0,7 cm; [the following addition injuries are observed:] in the anterior abdominal wall in the right iliac region (1), rounded, with a diameter of 2.5 cm; the inguinal region on the right (1), of irregular round shape with fuzzy contours, 6x5 cm in size; the front surface of the right thigh in the middle third (1) with fuzzy blurry contours, 5.5 cm in diameter; on the right lower limb in the projection of the patella (1), bruising of an irregular rounded shape, 2.7x0.8 cm in size; the anterior-inner surface of the left thigh in the lower third, an oblique-vertically oriented bruise with fuzzy contours, strip-shaped, 4x0.9 cm in size; the anteroposterior surface of the left tibia in the upper third (1), rounded shape, 2.3 cm in diameter; back of the right foot (1), rounded shape, 2.0 cm in diameter; the parieto-occipital region along the midline (1), round shape, diameter 5.5 cm; the back surface of the neck with extension to the shoulder girdle (1), irregular shape, size 8x7 cm; in the projection of the left shoulder blade (1), rounded, 3.0x2.7 cm in size; posterior torso in the interscapular region (1), indefinite shape, dimensions 12x9 cm; in the projection of the right scapula (1), extensive bruising of a round shape, size 14x9 cm; the lumbar region along the midline (1), round shape, 15x8 cm in size; buttock area to the right (1) in the projection of its inner quadrant, round shape, 5x3 cm in size; posterior surface of the left shoulder in the middle third (1), oval shape, 4.0x2.7 cm in size; the outer surface of the left thigh in the upper third (1), oval shape, 3.5x1.8 cm in size; the posterior surface of the right shoulder in the upper third (1), oval shape, 7x4.5 cm; the posterior surface of the right shoulder in the middle third (1), oval shape, 5x3.5 cm in size; the posterior surface of the left lower leg in the upper third is covered with bruises (2), which have an oblong shape with a relief. Elongated bruising 7x1.8 cm in size is perpendicular to the second bruise, which has relief contours (its dimensions are 6x4.5 cm), on the back surface of the right thigh in the middle third, oval in shape, 7x4.5 cm in size. The sutures are removed. The muscle flap is separated anteriorly to the level of the supraorbital edges and posteriorly below the external occipital protuberance. The inner surface is dirty-brown in color, dull, with an extensive dark red hemorrhage located in the frontal region (in the projection of injuries, detailed from external examination.) The size of the hemorrhage is 15x9 cm, the thickness is up to 0.7 cm. When separating the skin-muscle flap between it and the bones of the skull, a large number of small granules of rounded shapes, saturated with a dark brown liquid, emitting a sharp smell characteristic of formalin. A

CONFIDENTIAL                                                                    EL000237

small part of the granules is yellowish-whitish in color. The bones of the skull with traces of the initial examination, are sawn with a standard "peak-like" cut. The thickness of the bones of the skull on the cut: frontal – 0.6 cm, temporal – 0.3 cm, parietal – 0.4 cm, occipital – 0.5 cm. The longitudinal size of the skull (the distance from the most prominent anterior point between the superciliary arches to the most protruding posterior points on the occipital bone) is 18.5 cm. The transverse size of the skull (the distance between the most protruding outward points of the lateral walls of the skull lying on the parietal bones) is 12.0 cm. Inside the scull cavity is a rag and about 400 g of dense granules saturated with a dark brown substance emitting a pungent smell characteristic of formalin. The contents of the cranial cavity were removed, washed with running water, and dried using a clean rag. The bones of the skull are intact. The skin of the face and the neck were separated. It was found that the left temporal muscle is absent. In the projection of lesions described in an external examination, extensive dark red shiny hemorrhages were found, located in the projection of the lower jaw on the left (1), measuring 7x6.5 cm, thickness up to 0.8 cm, in the cavity of the left orbit (approximately 3.5x2.0 cm), of the buccal-zygomatic area on the right, measuring 7x5 cm up to 0.8 cm thick. Sutures of the anterior surface of the body were removed. Soft tissues contain a large amount of granules saturated with a dark brown substance emitting a sharp smell characteristic of formalin. The granules were removed. The muscles in the sections are red-brown in color, structureless, visually without damage. A dense cellophane bag tied with a simple knot is found in the chest and abdominal cavity. When the package was opened, fragments of biological origin were detected that emit a sharp odor characteristic of formalin. Objects were washed with running water, dried. The study presents: kidney fragments (5), sizes 5x4.0 cm, thickness up to 0.6 cm, dark brownish, dull, without damage, distinguishable calyx and pelvis. Fragments of muscle tissue resembling a tongue with a total length of 7.0 with traces of transverse sections. The tissue is dirty brown in color, structureless, without damage, a fragment of the opened trachea with rings crossed along, gray-brown color, dull, without damage, fragments of the liver with traces of sectional examination (9), tissue on sections is brownish-yellow, structureless, without damage, the stomach with traces of autopsy on its great curvature. The mucous liner folded, dull, structureless, dirty brown color, a fragment of the small intestine with a total length of about 80 cm (opened throughout), dirty reddish color, structureless, a fragment of tissue resembling a diaphragm, 15x9 cm in size, yellowish brown in color without damage, lung fragment, weighing about 170 g, dark brown color, increased

CONFIDENTIAL                                                                 EL000238

lightness, visually undamaged. In the pelvic cavity of the body, thoracic and abdominal cavities there are multiple dense granules saturated with a dirty reddish-brown contents. The cavities are washed with a large amount of running water, drained with a dry rag. It was found that the spinal canal was opened throughout. The spinal cord is absent. No areas suggesting of hemorrhage were found along the opening line. The cut line is flat, located longitudinally from the lumbar to the cervical spine. Cut off fragments of the vertebrae in a single complex are located in the chest cavity. Intercostal spaces are dissected from two sides. Parietal pleura is intact. The adjacent soft tissues are separated from the ribs in a blunt way. Complete transverse fractures of the 3rd and 4th ribs were found to the left along the anterior axillary line without displacement of bone fragments.

From the side of the external bony plates, the fracture lines are coarse, sometimes incomparable (signs of compression). From the side of the internal bone plates, the fracture lines are even, comparable to each other (signs of compression). In soft tissues, dark red continuous hemorrhage of a limited nature is distinguishable, 6x3.7 cm in size, up to 0.9 cm thick. The remaining ribs, including the sternum, are intact. Areas suggesting of hemorrhage were not visually detected. Stitches along the back of the body and limbs have been removed. When removed, a large number of dense granules was found all over, dark brown in color, emitting a sharp smell characteristic of formalin. The muscles are dirty brown, their anatomical structure is poorly distinguishable, continuous dark red dull hemorrhages are detected, in the projection of the lesions described by external examination. Soft tissues were opened and separated along the spinal column, a focal dark red dull hemorrhage was detected in the area of the 6th thoracic vertebra and surrounding soft tissues, measuring 6x5 cm, thickness up to 1.5 cm. After removal of the material for subsequent laboratory studies, all available internal organs are packed in a plastic bag and placed back into the corpse. At autopsy, a pronounced smell of formalin was felt. No other smells were felt. During the forensic examination of the corpse, standard tools were used (large and small amputation knives, rib knife, intestinal scissors, tweezers, electric drill with a circular cutter). For the forensic chemical study, skeletal muscle was taken (10 g in a glass penicillin vial, closed with rubber stoppers, sealed with the seal of the Bureau of FME) to determine the quantitative and qualitative content of ethyl alcohol. For the forensic chemical study in order to determine the presence of potent, narcotic, psychotropic and medicinal substances, the stomach, intestines and lung were withdrawn in the volume that they were submitted for the study. For forensic and histological examination, pieces of

internal organs, including those with markings were taken (fixed in a 10% formalin solution, placed in a vessel with a tight-fitting lid and sealed with a seal of the Bureau of FME).  Ribs 3 and 4 on the left were removed  for subsequent investigation in order to determine the origin of the injury. During the examination, key step photography was carried out with a digital camera SM 3 ZZOR followed by printing photographs (printer – 960s). The examination was carried out in accordance with the "Procedure for the organization and production of forensic medical examinations in state forensic institutions of the Russian Federation", approved by order of the Ministry of Health and Social Development of Russia of 05/12/2010. No. 346n.
2. Laboratory and special research methods 3.1.

Histological study

Signature
Stamp

Doroshkevich Y.A. Solodovnik

From Act No. 6298 of the forensic histological examination it follows that the organs from the corpse of Lagoda, E.G. were delivered in 2 containers in a sealed form. Separated 30 pieces were drawn through an automatic histological processor Tek U1 p 6. Paraffin filling, hematoxylin-eosin staining, picrofuxin, sudan-SH.
94 preparations were examined using microscopes No. e 200. Microsections were viewed at high and low magnification.
Research part: Organs from the 1st container:
No. 1. Kidneys (4) – the capsule is loosened, on the surface there is a colony of bacteria. Against the background of autolytic changes, the glomeruli are medium-sized; the gaps of the Shumlyansky-Bowman capsules are free; the nucleus of the endothelium are colored unevenly. In some places within the cortex in the 2 preparations there are putrefactive blisters, in the lumens of which bacteria are mostly located. In the remaining fields of view, there are convoluted tubule epithelial cells with unstained nuclei, diffused boundaries, their cytoplasm is muddy, grainy; in the lumina, there are some tubular cells of desquamated epithelium and eosinophilic content; the wall interlobar arteries are loosened, sclerotic; the greater part of vessels in cortex and medulla are with free lumen; in some parts, the vessel lumen contain hemolyzed blood as granular pink mass, as well as colonies of

CONFIDENTIAL                                                                                  EL000240

bacteria. When stained according to Van Gieson, connective tissue is colored red. When sudan-SH was additionally stained, no fat inclusions were found in the lumens of blood vessels and capillaries.

No. 2. Liver (4) – against the background of autolytic changes, the capsule is loosened during the preparation. The beam-radar structure is not pronounced. There are large and small vacuoles in the cytoplasm of the hepatocytes, pushing cell nuclei to the periphery of the cytoplasm; sometimes the cytoplasm of the hepatocytes is cloudy, colored unevenly; the nucleus of cells weakly stained with hematoxylin, sometimes cell boundaries are not clear; the weak focal lymph-histiocytic infiltration of portal tracts is with insignificant growth of connective tissue. In the lumens of the central veins and veins of the portal stroma, there are hemolyzed erythrocytes in the form of a granular mass of pink color. Colonies of bacteria are present in 2 samples in the gaps of the central veins. When staining according to Van Gieson, connective tissue is colored red (color is positive).

No. 3. Lungs (14) – pleura is presented in 2 samples, loosened, without signs of sclerosis and inflammation; bronchi are not present in the sections; in 2 samples, alveoli of various sizes and shapes, in separate sections, are emphysematously dilated; distelectasis is visible in places. In the gaps of some alveoli, there is serous fluid; in the gaps of some alveoli, there are single alveolar macrophages, desquamated alveolocytes; in the interstices in some places, there are small deposits of coal pigment. The epithelium of bronchioles is desquamated into the lumen. Hemolyzed erythrocytes are within the lumen and an enlarged number of leukocytes (7), the nuclei of which are colored unevenly. The walls of the vessels are loose, with the swelling of the endothelium. Numerical values of the signs for determining the shock coefficient: pulmonary edema-1, sludge, thrombus-0, fat emboli-1, leukocytosis in the vessels of the lungs-1, megakaryocytosis in the vessels-0, alveolar macrophages-1.

Digital combination 101101-Shock coefficient 0.71 / with additional staining with sudan-SH, sudanophilic inclusions were found in the lumens of some vessels.

In 6 other samples, against the background of autolytic changes, hemolysis with imbibition of the interalveolar septa and the accumulation of serous fluid in the cavities of the alveoli. Cells are poorly contoured, the nuclei are mostly not stained, hemolyzed blood in the form of granular mass of pink color in the lumen of blood vessels, with bacteria colonies in some; small deposits of coal pigment in interstitium in some places.

CONFIDENTIAL                                   EL000241

No. 4. Diaphragm (19) – in the material sent, muscle fibers are observed with muddy sarcoplasm; transverse striation is not determined; nuclei are not stained.

In 2 samples, in one of the visual fields in the stroma, there is a small accumulation of hemolyzed red blood cells in the form of a pink granular mass similar to the contents of blood vessels; among them colonies of bacteria are visible.

No. 5. Stomach (4) – against the background of pronounced autolytic changes, the mucous membrane throughout is preserved, epithelial cells are loosely shaped; their nuclei are not stained. The underlayer of the mucous membrane is loose; there is hemolyzed blood in the vascular lumina in the form of a mesh. Smooth muscle fibers are for the most part loosely shaped; the nuclei are not stained.

No. 6. Tongue (4) – the epithelium of the mucous membrane is presented in fragments; the nuclei are not stained. Muscle fibers are contoured; the sarcoplasm is muddy; the nuclei are not stained. In the samples there are fragments mixed in with the mucous serous salivary gland, predominate mucous end sections; cell nuclei are not stained. The vessels are half-collapsed, with free gaps.

No. 7. Small intestine (4) – in the sample there are fragments of the wall of the small intestine; the villi are distinguishable; the nuclei of the cells of the layers of the wall are not visible; the cytoplasm of the cells is cloudy; the cell boundaries are poorly distinguishable; the vessels are empty in places; there are bacterial colonies in the gaps of some vessels.

Organs from the 2nd container:

No. 1. Hemorrhage in the left buccal region (3) – against the background of autolytic changes, a fat cell tissue specimen is presented, wherein there is a focal accumulations of free-lying hemolyzed erythrocytes; among them the contours of leukocytes are visible; their nuclei are not stained. In places there is visible edema epicenters. Half-collapsed vessels. Unevenly blood-filled, single leukocytes are visible parietally and perivascularly in the lumens of some vessels; their nuclei are not stained.

No. 2. Hemorrhage in the soft tissues of the occipital region (3) – against the background of autolytic changes in the samples among muscle fibers and in adipose tissue, focal accumulations of free-lying hemolyzed erythrocytes; among them leukocytes are visible, in some places located in groups; their nuclei are not stained.

No. 3. fragment of the body of the 6th cervical vertebra with hemorrhage (3) – after decalcification in the samples, connective tissue fibers and fragments of bone tissue, among which focal accumulations of free-

CONFIDENTIAL

EL000242

lying partially hemolized, partially preserved relatively clear contours of red blood cells, among them are single white blood cells; their nuclei are not stained. The vessels are collapsed.

No. 4. Hemorrhage in the soft tissue of the inguinal region on the right (3) – against the background of autolytic changes, fatty tissue is presented in the samples, in which focal accumulations of free-lying partially hemolized, partially preserved relatively clear erythrocyte contours are visible; among them white blood cells are visible; their nuclei are not stained. Vessels are half-collapsed, unevenly filled with blood; in the gaps in some of the near-wall vessels, isolated leukocytes are seen; nuclei are not stained.

No. 5. Hemorrhage in soft tissues of the left inguinal region (4) – against the background of autolytic changes, adipose tissue is represented in the samples, in which extensive accumulation of free-laying mostly hemolyzed erythrocytes are visible, including visible leukocytes, sometimes arranged in groups; their nuclei are not stained. Vessels are half-collapsed, unevenly filled with blood; in the gaps in some vessels near the walls, isolated leukocytes are visible; their nuclei are not stained. In places, there are foci of edema.

No. 6. Hemorrhage in the spermatic cord (7) – the spermatic cord is presented in a longitudinal section. Against the background of autolytic changes, the epithelium of the vas deferens is preserved in some places and is sometimes desquamated. Arteries are for the most part collapsed, with free gaps; hemolized blood is in the gaps of the veins. Striated muscle fibers along the edge of the samples contain muddy sarcoplasm; their nuclei are not stained. In the adventitial membrane, in one of the visual fields, there is a small accumulation of hemolized red blood cells in the form of a pink granular mass.

No. 7. Hemorrhage in the soft tissues of the 4th rib on the right along the front axillary line (7) – against the background of autolytic changes, muscle fibers with muddy sarcoplasm are presented; unevenly stained nuclei. In 2 samples along the edge, there are small focal accumulations of free-lying partially hemolized, partially preserved relatively clear contours of the erythrocytes; leukocytes are distinguishable among them; their nuclei are not stained. The vessels are half-collapsed, unevenly filled with blood, single leukocytes near the walls are visible in the lumens of some vessels; their nuclei are not stained.

No. 8. Hemorrhage in the soft tissue of the left leg on the back surface in s/3 (3) – against the background of autolytic changes, there are focal accumulations of free-laying mostly hemolized red blood cells in the adipose tissue, including visible individual white blood cells with nuclei not

CONFIDENTIAL                                                                 EL000243

stained. The vessels are half-collapsed, unevenly filled with blood; single leukocytes are parietally visible in the lumens of some vessels; their nuclei are not stained.

No. 9. Hemorrhage into soft tissues from the region of the internal angle of the scapula (2) – against the background of changes, muscle fibers with a muddy sarcoplasma are presented with unevenly stained nuclei. In places, focal accumulations of free-lying partially hemolized, partially preserved relatively clear contours of erythrocytes; among them single leukocytes are distinguishable; the nuclei are not stained. Vessels are half-collapsed, unevenly blood-filled; single leukocytes are parietally visible in the lumens of some vessels; their nuclei are not stained.

No. 10. Hemorrhage in the soft tissue of the gluteal muscle on the left (3) – against the background of changes, muscle fibers with a muddy sarcoplasm are presented in the sample submitted; unevenly stained nuclei of muscle fibers; the transverse pattern is not expressed; and the nuclei are not stained. Vessels are mostly collapsed, with free gaps.

No. 11. Hemorrhage in the soft tissues of the left lower leg along the front surface in s/3 (3) – within samples of adipose tissue, focal accumulations of free-lying mostly hemolized red blood cells are presented; among them single leukocytes are visible; their nuclei are not stained. The vessels are half-collapsed; unevenly filled with blood; single leukocytes are parietally visible in the lumens of some vessels; their nuclei are not stained. There is plasma in the gaps of some vessels.

Forensic histological diagnosis:

Small focal hemorrhage in the diaphragm.
Focal hemorrhage in the left buccal region on the left with leukocytes in the hemorrhage zone; single leukocytes in perivascular lumen and lumen of blood vessels (No. 1).
Focal hemorrhage in the soft tissues of the occipital region (No. 2).
Focal hemorrhages in a fragment of the 6th cervical vertebra with single leukocytes in the hemorrhage zone (No. 3).
Focal hemorrhages in the soft tissues of the inguinal region on the right and the inguinal region on the left with single leukocytes in the hemorrhage zone and parietal lumen (No. 4, 5). Small focal hemorrhage in adventitia: Seminal vein cord (No. 6).
3.2. From act No. 94mk-19 forensic medical studies No. 94 mk-19

CONFIDENTIAL                                                    EL000244

L.I. Skoromnikova
Y.G. Yachmenev
Forensics

Stamp
Signatures

Issues to be resolved:

1. Determine method by which injuries were inflicted?
2. Are there signs of re-injury?

The following were provided for the study:

3. Ribs 3 and 4 on the right

RESEARCH PART

Objects provided for research: in a sealed envelope with the corresponding explanatory inscription. When opening the envelope, ribs 3 and 4 on the right with areas of soft tissue were found; after preliminary processing (maceration), bone samples were obtained.

1. The rib marked as 3 on the right (photo 1, photo 2) – when comparing two fragments of the rib 1.8 cm from one edge of the fragment of the rib, a complete transverse fracture has been found; the plane of the fracture is oblique-horizontal. On the inner surface of the edge of the fracture, it is uneven, wavy, well-fitting in a "lock-and-key" model; on the outer surface with the transition to the same edge of the rib; the edges are uneven, coarse-toothed, poorly comparable, with areas of chipping of the compact material; triangular chipping is present in the area of one edge of the rib, dimensions of 0.5x0.3 cm.

Thus, on rib 3 on the right, there is a complete transverse fracture with signs of stretching of the bone tissue on the inner surface of the rib; there are signs of compression on the outer surface.

2. The rib marked as 4 on the right (photo 3, photo 4) – when comparing two fragments of the rib 2 cm from one edge of the fragment of the rib, a complete transverse fracture is found; the plane of the fracture is oblique-horizontal. On the inner surface, the edge of the fracture is fine-toothed, well-fitting in a "lock-and-key" model; on the outer surface, the

CONFIDENTIAL                                                                 EL000245

edges are uneven, coarse, poorly comparable, with areas of chipping of the compact material; triangular chipping is present in the area of one edge of the rib, dimensions of 0.3x0.2 cm.

Thus, on the 4th rib on the right there is a complete transverse fracture with signs of stretching of the bone tissue on the inner surface of the rib, signs of compression on the outer surface.

The expert opinion was carried out in accordance with the "Procedure for the organization and performance of forensic medical examinations in state forensic institutions of the Russian Federation", approved by order of the Ministry of Health and Social Development of Russia dated 05/12/2010 No. 346n.

## CONCLUSION

Based on the forensic investigation, ribs 3 and 4 on the right of the corpse of Mr. Lagoda, E.G., born on ██/██/1980 (expert opinion No. 280 / 2019), I come to the following conclusion:

1. On the 3rd rib on the right there is a complete transverse fracture with signs of stretching of the bone tissue on the inner surface of the rib, signs of compression on the outer surface.

2. On the 4th rib on the right there is a complete transverse fracture with signs of stretching of the bone tissue on the inner surface of the rib, signs of compression on the outer surface.

3. On ribs 3-4, signs of repeated trauma are not detected.

Forensic medical expert
Signature

**The result of a forensic chemical study O.A. Firsenko**

During a forensic chemical study of intestines, liver, kidney, lungs, the following was not detected: morphine, codeine, promedol, methadone, pregabalin, tropicamide; derivatives of 1.4-benzodiazepine (phenazepam, oxazepam, diazepam etc.), derivatives of delta 9 – THC, ephedrine, ephedra, amitriptyline, strychnine, brucine, atropine, pachycarpinum, anabasine, diphenhydramine, derivatives of barbituric acid (phenobarbital, barbamil, etaminal, etc.), phenothiazine derivatives (chlorpromazine, diprazine, etc.), strychnine, brucin, atropine, hyosciamine, pachycarpine, scopolamine, anabazine, nicotine, konin, arecoline, narcotine, papaverine, reserpine, quinine,

CONFIDENTIAL                                                    EL000246

synthetic cannabimimetics (1\UN-18, 1\UN-122, RV-22) and other substance of a neutral or basic nature – ethyl alcohol was **not found** in the intestine, liver, and kidney.

Note: the internal organs delivered to the study were in a state of formalin preservation.

Expert Kibler, E.A.

The results of additional studies were analyzed by a panel of experts.

The experts

Y.A. Doroshkevich
Y.A. Solodovnik
N.A. Garkusha

Stamp
Signature

Conclusions:

Based on the studies conducted on the materials submitted for the repeated forensic medical examination of the corpse, the Commission of Experts comes to the following conclusions:

The answer to question No. 9: "What is the cause of the death of Lagoda, E.G.?"

During the study of the corpse of Lagoda, E.G. by the forensic medical commission, the commission of experts established the presence of traces of the initial sectional study (the thoracic, abdominal, and cranial cavities were opened), most of the internal organs were absent (brain, spinal cord, heart, testicles), fragments of the internal organs present in the corpse were naturally exposed to putrefactive changes and chemical preservation in formaldehyde solution.

Due to the fact that the commission of experts was not given the results of the initial investigation of the corpse, including laboratory tests, as well as the absence of a majority of the internal organs of the corpse of Lagoda, E.G., it is not possible to answer the question posed.

When conducting a forensic histological examination of the pieces of internal organs, microscopic signs of a life-threatening condition (shock and fat embolism) were revealed that were formed close to the time of death of Lagoda, E.G. (according to the act of a forensic histological study, the shock coefficient is equal to 0.71).

CONFIDENTIAL

EL000247

It is not possible to establish the cause of shock and fat embolism for the reasons stated above.

The answer to question No. 10: "What is the time of the death of Lagoda, E.G.?"

It does not seem possible to answer the question posed because the results of the initial study were not presented to the expert commission.

Answer to questions No. 1, 2: "What injuries are present on the body of Lagoda, E.G., their numerical quantity, location, degree of severity, time of infliction? What could be the cause of injury to the corpse of Lagoda, E.G.?"

When conducting a second forensic medical examination of the corpse, the following injuries were discovered:

1. Bruising, located: in the buccal region on the right with the extension to the eyelids of the right eye; the right temporal and frontal region (1); the buccal region on the left with the spread entirely on the left auricle; the eyelids of the left eye; the left temporal and frontal region (1); superficial bruised wound of the glabellar region (1); in the region of the tip of the right auricle (1); in the projection of the right shoulder joint (1); the antero-inner surface of the right shoulder at the border with the armpit; the anterior external surface of the right shoulder at the border of the upper and middle one-third segments (2); in the projection of the ulnar tip (1); the posterior outer surface of the right forearm in the upper third (1); the posterior outer surface of the right forearm in the lower third (1); the posterior outer surface of the right forearm at the border of the middle and lower third (1); on the rear surface of the forearm in the lower third (1); the rear surface of the forearm in the projection of the wrist joint with an extension to the back of the hand surface (1); the back surface of the right hand, in the projection of the bimacular bone (1); in the left shoulder joint projection (1), the front left shoulder surface in the upper third (1); the rear surface of the left shoulder between the middle and the lower third (1); the posterior surface of the left shoulder in the projection of the ulnar tip (1); the inner surface of the left shoulder in the lower third (1); the inner surface of the left shoulder in the lower third (1); the inner surface of the left forearm in the upper third (1); on the left upper limb in the projection of the left wrist joint (1); the inguinal region on the left with extension to the front surface of the thigh (1); in the region of the anterior abdominal wall to the left of the umbilical ring (1); the anteroposterior surface of the left thigh in the middle third (1); the posterior-outer surface of the left thigh in the upper third (1); the anterior-outer surface of the left tibia in the upper third (3); the front surface of the left tibia between the middle and the lower thirds; the

CONFIDENTIAL                                                              EL000248

outer surface of the left tibia in the lower third closer to the ankle joint; in the anterior abdominal wall in right suprailiac region (1); the inguinal region on the right (1); the front of the right thigh in the middle third (1); the right leg in the projection of the patella (1); the anterior-surface of the left thigh in the lower third (1); the posterior-outer surface of the left tibia in the upper third (1); the back surface of the right foot (1); the parietal-occipital region along the conditional midline (1); the posterior surface of the neck with extension to the shoulder girdle (1); in the projection of the left shoulder blade (1); the posterior surface of the body in the interscapular region (1); in the projection of the right shoulder blade (1); lumbar region along the conditional midline (1); the gluteal region on the right (1); the back surface of the left shoulder in the middle third (1); the outer surface of the left thigh in the upper third (1); the back surface of the right shoulder in the upper third (1); the back surface of the right shoulder in the middle third (1); the back surface of the left lower leg upper third (2); posterior surface of the right thigh in the middle third (1); as well as extensive hemorrhages in the adjacent soft tissues located in the projection of the described lesions; hemorrhages in the spermatic cords; complete transverse fractures of the 3rd and 4th ribs on the left in the front axillary line without displacement of bone fragments. Focal hemorrhage in the body and surrounding tissues of the 6th thoracic vertebra.

The above damages are caused by repeated exposure to a blunt solid object(s), in a short period of time relative to each other, shortly before death (within a few tens of minutes).

This conclusion is confirmed by the results of a forensic histological study, which revealed the presence of single leukocytes in the lumen of blood vessels in all injuries. It is not possible to assess the severity and harm caused to the health of Lagoda, E.G. from the aforementioned injuries, as well as to establish their relationship with the onset of death, due to the lack of results of the initial examination of his corpse (in accordance with paragraph 27 of the appendix to the order of the Ministry of Health and Social Development of the Russian Federation dated April 24, 2008 No. 194n "On the approval of medical criteria for determining the degree of the severity of harm to human health").

Answer to questions No. 3, 4: "Are all injuries caused at the same time or at different times; if at different times, then which ones occurred first, and within what time intervals did the other occur; are all injuries caused while alive; if not, which ones are post-mortem injuries and how long after death did they occur?  In what sequence of episodes have the injuries been inflicted?"

CONFIDENTIAL                                                    EL000249

According to the forensic histological study, all the injuries on the corpse of Lagoda, E.G. were formed in a short period of time relative to each other (they have a similar cellular reaction), which does not allow the expert commission to reliably determine their sequence.

The answer to question No. 12: "What weapon was used to cause injuries to Lagoda, E.G., causing his death?"

All injuries found on Lagoda, E.G. are caused by the action of a blunt solid object(s).

Answer to question No. 14: "Was one weapon or more than one weapon used to cause injuries found on the corpse of Lagoda, E.G.? Which ones are deadly, and which are not?"

It is not possible to answer the question posed for the reasons set forth in the answer to question No. 9.

The answer to question No. 5: "What was the relative position of Lagoda, E.G. and the attacker at the moment of injury infliction?"

Taking into account the anatomical accessibility to the traumatic factors of the places where the damage was caused, the mutual position of the victim and the attacker(s) could be different.

Given the multiplicity, nature and varied anatomical locations, it can be asserted that the relative position of Lagoda, E.G. at the time of the infliction of injuries upon him repeatedly changed.

The answer to questions No. 6, 8, 10: "Was Lagoda, E.G. capable of committing any independent action after the injuries caused to him? Was Lagoda, E.G. intoxicated and to what extent? What is the time of death of Lagoda, E.G.?"

It is not possible to answer the questions posed for the reasons stated in the answer to question No. 9.

The answer to question No. 7: "With what force (significant or insignificant) were the wounds (injuries) inflicted?"

It is not possible to express the value with which damages were inflicted in physical units, due to the lack of scientifically approved methods and literature data.

The answer to questions No. 13, 15: "Are there marks and signs on the corpse Lagoda, E.G. allowing to judge the shape, size and other individual qualities of the weapons applied? Could the injuries to Lagoda, E.G. be caused from kicking with human legs or punching with human hands?"

No individual trail-forming signs of a traumatic weapons were shown in the injuries. All detected injuries have signs of group-identification level, caused by objects (objects) having a limited contact surface.

CONFIDENTIAL

EL000250

Human hands clenched into fists possess similar properties, as well as shod feet, objects similar to a baton, etc.

Answer to question No. 16: "Did Lagoda, E.G. suffer during his lifetime any diseases, if so, what were they and what were their causes?"

In the studied internal organs (tongue, trachea, kidney, fragment of the abdominal aorta, liver, stomach, intestines, part of the diaphragm, spermatic cord) against the background of the development of pronounced processes of autolysis (i.e. decay), the expert commission did not find any signs of the presence of chronic diseases in Lagoda, E.G.

Answer to question No. 17: "Did the illnesses discovered in Lagoda, E.G. lead to his death?"

It is not possible to answer the question posed due to the development of putrefactive changes in the internal organs, as well as the absence of most internal organs (heart, brain, internal organs, etc.)

The experts

Stamp
Signature
U.A. Doroshkevich
U.A. Solodovnik

The examination began on 05/08/2019, 3 p.m.
The examination was completed on 09/02/2019, at 2 p.m.

CONFIDENTIAL                                    EL000251

*Министерство здравоохранения Российской Федерации государственное бюджетное учреждение здравоохранения «Бюро судебно-медицинской экспертизы» министерства здравоохранения Краснодарского края*

## ОТДЕЛ СЛОЖНЫХ СУДЕБНО-МЕДИЦИНСКИХ ЭКСПЕРТИЗ
350063, г. Краснодар, ул. Октябрьская, д. 44, тел/факс +8(861)268-13-97

### ЗАКЛЮЧЕНИЕ ЭКСПЕРТА № 280/2019
(комиссионная судебно-медицинская экспертиза)
02 сентября 2019 г. г. Краснодар

В период с 15 часов 00 минут 08 мая 2019 года до 14 часов 00 минут 02 сентября 2019 года на основании постановления о назначении комиссионной судебно-медицинской экспертизы следователя СО по Карасунскому округу г. Краснодара СУ СК РФ по Краснодарскому краю Бирова Р.Б. от 02 мая 2019г. в ГБУЗ «Бюро СМЭ» по Краснодарскому краю, комиссия экспертов в составе:
- **Гарькуша Натальи Александровны** — заведующей отделом сложных судебно- медицинских экспертиз ГБУЗ «Бюро СМЭ», врача судебно-медицинского эксперта высшей квалификационной категории, имеющей высшее медицинское образование и специатьную подготовку по судебно-медицинской экспертизе, со стажем работы по специальности 17 лет;
- **Дорошкевич Юрия Александровича** - врача судебно-медицинского эксперта отдела по делам о профессиональных правонарушениях медицинских работников ГБУЗ «Бюро СМЭ», имеющего высшее медицинское образование и специальную подготовку по судебно- медицинской экспертизе, со стажем работы по специальности 13 лет;
- **Скоромниковой Людмилы Ивановны** - врача судебно-медицинского эксперта судебно-гистологического отделения ГБУЗ «Бюро СМЭ» высшей квалификационной категории, имеющей высшее медицинское образование и специальную подготовку по судебно-медицинской экспертизе со стажем работы по специальности 37 лет;
- **Ячменёвой Юлии Геннадьевны** - заведующей судебно-гистологическим отделением ГБУЗ «Бюро СМЭ», врача судебно-медицинского эксперта высшей квалификационной категории, имеющей высшее медицинское образование и специальную подготовку по судебно-медицинской экспертизе со стажем работы по специальности 15 лет;

CONFIDENTIAL                                                                      EL000252

-    **Фирсенко Ольги Алексеевны** - врача судебно-медицинского эксперта медикокриминалистического отделения ГБУЗ «Бюро СМЭ», имеющей высшее медицинское образование, специальную подготовку по судебно-медицинской экспертизе, со стажем работы по специальности менее года;

-    **Киблер Эммы Анатольевны** - врача судебно-медицинского эксперта судебнохимического отделения ГБУЗ «Бюро СМЭ», имеющей высшее медицинское образование, специальную подготовку по судебно-медицинской экспертизе, со стажем работы по специальности 21 год;

-    **Солодовник Юлии Анатольевны** - врача судебно-медицинского эксперта второй квалификационной категории отдела судебно-медицинских экспертиз по делам о профессиональных правонарушениях медицинских работников ГБУЗ «Бюро СМЭ», имеющей высшее медицинское образование и специальную подготовку по судебно-медицинской экспертизе, со стажем работы по специальности 9 лет; произвела комиссионную судебно-медицинскую экспертизу по светокопиям материала КРСП №649пр-19, с повторным исследованием эксгумированного трупа Лагода Евгения Григорьевича, 02.03.1980 года рождения, с учетом результатов выполненных дополнительных исследований.

Права и обязанности эксперта, ст. 57 УПК РФ, разъяснены.

Эксперты:



Ю.А. Солодовник



Ю.Г. Ячменёва О.А. Фирсенко Э.А. Киблер

Вопросы, подлежащие разрешению, и другие разделы «Заключения» излагаются на 11-ти листах + 9 листов фототаблиц.

CONFIDENTIAL

EL000253

**Для экспертного решения поставлены вопросы:**

1) Какие повреждения имеются на трупе Лагода Е.Г., их количество, локализация, степень тяжести, давность причинения?

2) Чем могли быть причинены установленные повреждения на трупе Лагода Е.Г.?

3) Причинены ли все повреждения одновременно или в разное время, если в разное время, то какие, когда и через какие промежутки времени возникли, все ли повреждения причинены пожизненно, если нет, то какие повреждения посмертные и через какое время наступления смерти они причинены?

4) В какой последовательности причинены повреждения?

5) Каково было взаиморасположение Лагода Е.Г. и нападавшего в момент причинения повреждений?

6) Способен ли был Лагода Е.Г. после причинения ему повреждений, совершать какие-либо самостоятельные действия?

7) С какой силой (значительной, либо малозначительной) наносились ранения (повреждения)?

8) Находился ли Лагода Е.Г. в состоянии алкогольного опьянения и в какой степени?

9) Какова причина смерти Лагода Е.Г.?

10 Каково время наступления смерти Лагода Е.Г.?

11) Находится ли смерть в причинной связи с телесными повреждениями, обнаруженными на трупе Лагода Е.Г.?

12) Каким орудием причинены повреждения Лагода Е.Г., повлекшие его смерть?

13) Имеются ли на трупе Лагода Е.Г. признаки, позволяющие судить о форме, размере и других индивидуальных качествах примененного орудия?

14) Одним или несколькими орудиями причинены повреждения, обнаруженные на трупе Лагода Е.Г.? Какие из них являются смертельными, а какие нет?

15) Могли ли возникнуть обнаруженные на трупе Лагода Е.Г. повреждения, от ударов ногами, руками человека?

16) Страдал ли при жизни Лагода Е.Г. какими-либо заболеваниями, если да, то какими и какова их причина?

17) Находятся ли обнаруженные у Лагода Е.Г. заболевания в причинной связи с его смертью?.

CONFIDENTIAL

EL000254

1.4.Результаты лабораторных исследований от 15.03.2019 г. изучены комиссией экспертов.

1.5.Результаты ультразвукового исследования органов брюшной полости от 17.03.2019 изучены комиссией экспертов.

1.6.Заключение врача-гастроэнтеролога от 18.03.2019 изучено комиссией экспертов.

ГБУЗ «Бюро СМЭ» Заключение эксперта № 280/2019

1.7. Свидетельство о смерти, выдано Управлением здравоохранения и психической гигиены «... Запись 156-19-015741. Место смерти: пациент отделения экстренной мед помощи. Непосредственная причина: ведется следствие... Тип смерти: ведется следствие... Судебно-медицинский эксперт Ивонн Милевски ...».

2. Повторное комиссионное судебно-медицинское исследование эксгумированного трупа Повторное судебно-медицинское исследование эксгумированного трупа Лагода Е. Г., 1980 г.р. проведено 08.05.2019 г. в период с 09⁰⁰-18⁰⁰ комиссией в составе судебно- медицинских экспертов Ю.А. Солодовник и Ю.А. Дорошкевич. При исследовании присутствовал следователь СО по Карасунскому округу г. Краснодар СУСК РФ по КК Биров Р.Б. Объектом осмотра является ящик, выполненный из древесного материала светло- коричневого цвета. Ящик опечатан, при помощи многочисленных бирок, выполненных из листов бумаги белого цвета.

На бирках имеются многочисленные записи, выполненные машинописным способом, содержащими записи, изложенные на английском языке. На ящике имеются пояснительные надписи, выполненные при помощи красителя черного цвета, читаемые как: «Голова, ноги». На левой боковой поверхности деревянного ящика фиксирована бумажная бирка зеленого цвета, изготовленная из листа линованной бумаги. На бирке имеется пояснительный текст, читаемый как: «СЛЕДСТВЕННЫЙ КОМИТЕТ РОССИЙСКОЙ ФЕДЕРАЦИИ. ПАКЕТ №. КРСП № 458.

Описание объекта, находящегося в пакете: труп Лагода Е.Г., ██.██.1980 г.р.

Дата и место изъятия: 02.05.2019. Следователь Р.Б. Биров...».

 Целостность ящика не нарушена. Вскрыт головной конец, в нем обнаружена перьевая подушка белого цвета, без опачкиваний и повреждений. Подушка удалена. Из ящика извлечен гроб серо-голубого цвета с двойной открывающейся крышкой. На боковых поверхностях

CONFIDENTIAL

EL000255

которого имеются по три ручки, выполненных из пластикового материала серо-голубого цвета. Крышка снята, цела, не деформирована. Прочность досок гроба сохранена. По извлечению крышки гроба установлено, что края основания гроба обиты тесьмой золотистого цвета, внутренняя часть гроба выстлана (обита) белой тканью из синтетического материала, имитирующего шелк. В головном конце гроба расположен целлофановый пакет белого цвета, содержащими надписи и изображения религиозного содержания. Также в головном конце гроба расположены два фрагмента хлопчатобумажной ткани белого цвета, без опачкиваний и повреждений. Вышеописанные предметы удалены. Тело лежит на спине, лицом вверх, верхние конечности слегка согнуты в локтевых суставах, несколько приведены к туловищу, нижние конечности прямые. Кисти рук связаны при помощи целлофанового пакета. В ножном конце гроба расположено покрывало из шелковистой ткани белого цвета, на котором имеется надпись религиозного содержания. Между складками покрывала обнаружена пеленка белого цвета (без опачкиваний и повреждений). Труп перемещен на секционный стол. На трупе надето: пиджак черного цвета, застёгивается на две пластиковые пуговицы черного цвета. На левой полочке пиджака расположен накладной карман, из которого выступает хлопчатобумажный носовой платок серого цвета в мелкую полоску белого цвета. Рубашка белого цвета, застегивается на пластиковые пуговицы. Галстук серого цвета в мелкую полоску белого цвета. Брюки черного цвета классические, застегивается на пластиковую пуговицу черного цвета и застежку- молнию. На задней поверхности брюк расположены врезные карманы с пластмассовой пуговицей черного цвета. Носки черного цвета из хлопчатобумажной ткани. Туфли из кожевенного материала черного цвета. Одежда без опачкиваний и повреждений, надета последовательно, целостность петель, пуговиц не нарушена. При снятии ее на теле умершего обнаружен плотный полупрозрачный костюм из прорезиненной ткани, с длинными рукавами.

Поверх комбинезона надеты трусы-боксеры из черной трикотажной ткани. В области лучезапястных и голеностопных суставов комбинезон плотно обмотан лентой скотч. По передней поверхности от горловины расположена застежка-молния.

Ценные вещи с трупом не доставлены. Одежда и костюм удалены. На секционном столе труп мужчины гиперстенического телосложения, несколько повышенного питания, длиной тела в представленном виде 175 см. На наружной поверхности правого плеча татуировка светло- синего цвета с изображением тигра. Кожный покров лица, кисти рук обильно покрыты темно-коричневым гримом. Волосы на голове черного цвета, прямые, длиной до 3,0 см в теменных областях. Труп обмыт прохладной проточной водой. Кожный покров холодный наощупь во всех областях тела. Трупные пятна отсутствуют. Трупное окоченение отсутствует. Кости

CONFIDENTIAL                                                                    EL000256

черепа, хрящи носа и ушных раковин на ощупь без патологической подвижности. Кожа лица серо-фиолетовая за исключением тех мест, где ниже будут описаны повреждения. Глаза закрыты, роговицы подсохшие, глазные яблоки запавшие. Соединительные оболочки глаз серовато-беловатые, мутные. Зубы в ротовой полости без повреждений. Язык в полости рта отсутствует. Шея цилиндрической формы, средней длины и толщины. Грудь цилиндрическая, симметричная, без патологической подвижности при ощупывании. Переднебоковая стенка живота выше уровня края рёберных дуг. Наружные половые органы сформированы правильно, по мужскому типу. Мошонка со следами первичного секционного исследования. Яички отсутствуют. На их месте различимы фрагменты семенных канатиков с участками темно-красного цвета, напоминающими кровоизлияния. Крайняя плоть прикрывает головку полового члена. Наружное отверстие мочеиспускательного канала расположено правильно, выделений из него нет. Задний проход сомкнут, кожа вокруг него чистая, без повреждений. Слизистая анального канала складчатая, блестящая, без особенностей. Оволосение в подмышечных и лобковой областях выраженно умеренно. Ногтевые пластинки на пальцах рук и стоп коротко острижены, без повреждений. Ногтевые ложа бледно-синюшно-голубого цвета. Кожный покров кистей рук и стоп мацерирован, сморщен. При проведении наружного исследования были обнаружены следы первичного секционного исследования: В теменной области стандартный секционный разрез, ушитый нитью. По передней поверхности туловища от плечевых суставов соединяясь между собой на уровне грудины до лонного сочленения, обходя пупочное кольцо слева, проходит секционный разрез, ушитый нитью. Кожный покров в проекции грудины с участком подсыхания темно-бурого цвета, пергаментной плотности, неправильной овальной формы, размерами 12x6 см. В правой ключичной области горизонтально ориентированная линейной формы рана, длиной 6,5 см, ушитый секционным швом, нитью белого цвета. По периферии вышеописанных секционных швов имеются множественные симметрично расположенные точечные ранки с подсохшей западающей поверхностью темно-бурого цвета (следы предшествующего секционного исследования). На задней поверхности туловища от наружного затылочного бугра вдоль позвоночного столба с переходом на ягодичные области, задние поверхности бедер и голеней проходит сплошной секционный разрез, ушитый нитью белого цвета. По задним поверхностям верхних конечностей вдоль лопаток проходит сплошной секционный разрез, ушитый нитью белого цвета. При проведении наружного исследования обнаружены телесные повреждения. Все повреждения описаны при условии анатомически правильного вертикального положения тела, с вытянутыми вдоль туловища руками, ладонными поверхностями,

CONFIDENTIAL                                                    EL000257

обращенными кпереди. Кровоподтёки темно- синюшно-фиолетового цвета, расположенные: в щёчной области справа с распространением на веки правого глаза, правую височную и лобную область (1), размерами около 17x8,5 см, щёчной области слева с распространением сплошь на левую ушную раковину, веки левого глаза, левую височную и лобную область (1), размерами около 21x9,5 см. На фоне кровоподтёка лобной области расположен плотный участок темно-бурого цвета с подсохшей поверхностью, имеющей пергаментную плотность. Мелкие точечные ссадины под темнобурой поверхностью, расположены ниже уровня окружающего кожного покрова имеются в области спинки и крыльев носа на участках размерами 1,5 и 21,0 см. В области надпереносья «У» - образной формы рана, концы которой склеены липким веществом. При разделении концов и углов раны последние представляются мелкозубчатыми, с едва заметными участками надрывов. Глубина раны составляет 0,4 см, в стенках и ребрах раны темнокрасные тускловатые кровоизлияния. Дно раны представлено глубокими слоями кожи. В области кончика правой ушной раковины неопределенной формы, размерами 1,0x0,4 см, в проекции правого плечевого сустава (1), неправильной овальной формы размерами 4 x 2,5 см, передневнутренней поверхности правого плеча на границе с подмышечной впадиной овальной формы размерами 2,5x1,2 см, передненаружной поверхности правого плеча на границе верхней и средней трети (2) овальных форм размерами по 2,5x0,9 см, в проекции локтевого отростка, округлой формы диаметром 3,5 см, на границе средней и нижней трети (1), округлой формы диаметром 5,5 см, задненаружной поверхности правого предплечья в верхней трети (1), диаметром 3,0 см, задненаружной поверхности правого предплечья нижней трети (1), диаметром 2,0 см, задненаружной поверхности правого предплечья на границе средней и нижней трети (1), на задней поверхности предплечья в нижней трети (1), округлой формы, диаметром 2,5 см, задней поверхности предплечья в проекции лучезапястного сустава с распространением на тыльную поверхность кисти (1), неопределенной формы, размерами 8x6,5 см, на тыльной поверхности правой кисти, в проекции 2 пястной кости (1), овальной формы, размерами 1,8x0,7 см, в проекции левого плечевого сустава (1), овальной формы размерами 2,5x0,9 см, передней поверхности левого плеча в верхней трети (1), округлой формы, диаметром 2,5 см, задней поверхности левого плеча на границе средней и нижней трети (1), округлой формы, диаметром 3,5 см, задней поверхности левого плеча в проекции локтевого отростка (1), округлой формы, диаметром 3,0 см, внутренней поверхности левого плеча в нижней трети (1), полосовидной формы вертикально ориентированный, размерами 6x1,7 см, внутренней поверхности левого плеча в нижней трети (1), овальной формы, размерами 6x1,7 см, внутренней поверхности левого предплечья в верхней трети (1), овальной формы, размерами 2x2,7 см, на

CONFIDENTIAL

EL000258

левой верхней конечности в проекции левого лучезапястного сустава (1), округлой формы диаметром 3,5 см, паховой области слева с распространением на переднюю поверхность бедра (1), неопределенной формы (1), размерами 30x12 см, в области передней брюшной стенки левее пупочного кольца (1) округлой формы бледно-синюшный кровоподтёк с нечеткими контурами, диаметром 2,5x0,8 см, передненаружной поверхности левого бедра в средней трети (10, диаметром 2,5 см, задне-наружной поверхности левого бедра в верхней трети (1), округлой формы размерами 4,0x2,7 см, передненаружной поверхности левой голени в верхней трети (3) неправильных овальных форм кровоподтёки с нечеткими контурами размерами от 1x0,7см до 3,7x0,9 см, передней поверхности левой голени на границе средней и нижней трети бледно-синюшного цвета кровоподтёк неправильной округлой формы, диаметром 3,5 см с нечеткими расплывчатыми контурами. На его фоне расположена темнобурый подсохший участок, на ощупь пергаментной плотности, наружной поверхности левой голени в нижней трети ближе к голеностопному суставу, диаметром 2,0x0,7 см, в области передней брюшной стенки в правой подвздошной области (1), округлой формы, диаметром 2,5 см, паховой области справа (1), неправильной округлой формы с нечеткими контурами, размерами 6x5 см, передней поверхности правого бедра в средней трети (1) с нечеткими расплывчатыми контурами, диаметром 5,5 см, на

правой нижней конечности в проекции надколенника (1) неправильной округлой формы кровоподтёк, размерами 2,7x0,8 см, передневнутренней поверхности левого бедра в нижней трети косо-вертикально ориентированный кровоподтек с нечеткими контурами, полосовидной формы, размерами 4x0.9 см, передненаружной поверхности левой голени в верхней трети (1), округлой формы, диаметром 2,3 см, тыльной поверхности правой стопы (1), округлой формы, диаметром 2,0 см, теменно-затылочной области по условно срединной линии (1), округлой формы, диаметром 5,5 см, задней поверхности шеи с распространением на область надплечий (1), неправильной формы размерами 8x7 см, в проекции левой лопатки (1), округлой формы, размерами 3,0x2,7 см, задней поверхности туловища в межлопаточной области (1), неопределенной формы, размерами 12x9 см, в проекции правой лопатки (1), обширный кровоподтёк округлой формы, размерами 14x9 см, поясничной области по условно срединной линии (1), округлой формы 15x8 см, ягодичной области справа (1) в проекции ее внутреннего квадранта, округлой формы, размерами 5x3 см, задней поверхности левого плеча в средней трети (1), овальной формы, размерами 4,0x2,7 см, наружной поверхности левого бедра в верхней трети (1), овальной формы, размерами 3,5x1,8 см, задней поверхности правого плеча в верхней трети (1), овальной формы, размерами 7x4,5 см, задней поверхности правого

CONFIDENTIAL                                                                                    EL000259

плеча в средней трети (1), овальной формы, размерами 5x3,5 см, задней поверхности левой голени в верхней трети расположены кровоподтёки (2), имеющие продолговатую и рельефную форму. Продолговатой формы кровоподтёк размерами 7x1,8 см расположен перпендикулярно по отношению ко второму кровоподтёку, имеющему рельефные контуры (размеры его составляют 6x4,5 см, на задне поверхности правого бедра в средней трети овальной формы, размерами 7x4,5 см. Швы удалены. Кожно-мышечный лоскут отсепарован кпереди до уровня надглазничных краев и кзади ниже наружного затылочного бугра. Внутренняя его поверхность грязно-бурого цвета, тусклая, с обширным темно-красным кровоизлиянием, расположенным в лобной области (в проекции повреждений, описанных при наружном исследовании). Размеры кровоизлияния составляют 15x9 см, толщина-до 0,7 см. При отделении кожно-мышечного лоскута между ним и костями черепа обнаружено большое количество мелких гранул округлых форм, пропитанных темно-бурой жидкостью, издающих резкий характерный запах формалина. Небольшая часть имеющихся гранул желтовато-белесоватого цвета. Кости черепа со следами первичного исследования, выпилены стандартным «козырькообразным» распилом. Толщина костей черепа на распиле: лобная 0,6 см, височные - 0,3 см, теменные - 0,4 см, затылочная - 0,5 см. Продольный размер черепа (расстояние от наиболее выступающей вперед точки между надбровными дугами до наиболее выступающей кзади точки на затылочной кости) 18,5 см. Поперечный размер черепа (расстояние между наиболее выступающими кнаружи точками боковых стенок черепа, лежащими на теменных костях) 12,0 см. В полости черепа расположена ветошь и около 400 г. плотных гранул, пропитанных веществом темно-бурого цвета, издающим характерный резкий запах формалина. Содержимое полости черепа удалено, промыто проточной водой, просушено при помощи чистой ветоши. Кости черепа целы. Отсепарованы кожные покровы лица и шеи. Установлено, что отсутствует левая височная мышца. В проекции повреждений, описанных при наружном исследовании, обнаружены обширные темно-красные блестящие кровоизлияния, расположенные в проекции нижней челюсти слева (1), размерами 7x6,5 см, толщиной до 0,8 см, в полости левой глазницы (примерно 3,5x2,0 см), щечно-скуловой области справа, размерами 7x5 см. толщиной до 0,8 см. Удалены швы передней поверхности туловища. В мягких тканях большое количество гранул, пропитанных веществом темно-бурого цвета, издающим характерный резкий запах формалина. Гранулы удалены. Мышцы на разрезах красно-бурого цвета, бесструктурные, визуально без повреждений. В грудной и брюшной полости плотный целлофановый пакет, завязанный при помощи простого узла. При вскрытии пакета обнаружены фрагменты биологического происхождения, издающие резкий характерный запах формалина.

CONFIDENTIAL                                                        EL000260

Объекты промыты проточной водой, высушены. На исследование представлены: фрагменты почки (5), размерами по 5х4,0 см, толщиной до 0,6 см, темно буроватого цвета, тусклые, без повреждений, различимы чашечки и лоханка. Фрагменты мышечной ткани, напоминающие язык общей длиной 7,0 со следами поперечных разрезов. Ткань грязно-бурого цвета, бесструктурная, без повреждений, фрагмент вскрытой трахеи с пересеченными вдоль колец, серо-бурого цвета, тусклая, без повреждений, фрагменты печени со следами секционного исследования (9), ткань на разрезах буровато-желтого цвета, бесструктурная, без повреждений, желудок со следами вскрытия по большой его кривизне. Слизистая складчатая, тусклая, бесструктурная, грязно-бурого цвета, фрагмент тонкого кишечника общей длиной около 80 см (вскрыт на всем протяжении), грязно-красноватого цвета, бесструктурный, фрагмент ткани, напоминающий диафрагму, размерами 15х9 см, желтовато-бурого цвета без повреждений, фрагмент легкого, массой около 170 гр., темно-бурого цвета, повышенной воздушности, визуально без повреждений. В полости малого таза, грудной и брюшной полости множественные плотные гранулы, пропитанные грязно-краснокоричневым содержимым. Полости промыты большим количеством проточной воды, осушены при помощи сухой ветоши. Установлено, что на всем протяжении вскрыт спинномозговой канал. Спинной мозг отсутствует. Со стороны линии распила участков, подозрительных на кровоизлияния, не обнаружено. Линия распила ровная, расположена продольно от шейного до поясничного отделов позвоночника. Отсеченные фрагменты позвонков в едином комплексе расположены в грудной полости. Рассечены межреберные промежутки с двух сторон. Пристеночная плевра цела. Прилежащие мягкие ткани отделены от ребер тупым путем. Обнаружены полные поперечные переломы 3-го и 4-го ребер слева по передней подмышечной линии без смещения костных отломков.
Со стороны наружных костных пластинок линии перелома крупнозубчатые, местами несопоставимы между собой (признаки сжатия). Со стороны внутренних костных пластинок линии переломов ровные, сопоставимы между собой (признаки сжатия). В мягких тканях различимо темно-красное ограниченного характера сплошное кровоизлияние, размерами 6х3,7 см, толщиной до 0,9 см. Остальные ребра, в том числе и грудина, без повреждений. Участков, подозрительных на кровоизлияния, визуально не обнаружено. Удалены швы вдоль задней поверхности тела и конечностей. При удалении их на всем протяжении большое количество плотных гранул, окрашенных в темно-бурый цвет, издающие резкий характерный запах формалина. Мышцы грязно-коричневые,анатомическое строение их слабо различимо, определяются сплошные темно-красные тускловатые кровоизлияния, в проекции повреждений, описанных при наружном исследовании. Вскрыты и отсепарованы мягкие ткани вдоль

CONFIDENTIAL                                                    EL000261

позвоночного столба, определяется очаговое темно-красное тускловатое кровоизлияние в области тела 6-го грудного позвонка и окружающих мягких тканей, размерами 6х5 см, толщиной до 1,5 см. После изъятия материала для последующих лабораторных исследований все имеющиеся внутренние органы упакованы в целлофановый пакет, помещены обратно в труп. При вскрытии трупа ощущался выраженный запах формалина. Иных запахов не ощущалось. При проведении судебно-медицинской экспертизы трупа использовались штатные инструменты (большой и малый ампутационные ножи, реберный нож, кишечные ножницы, пинцеты, электродрель с циркулярной фрезой). Для судебно-химического исследования взята скелетная мышца (10 гр. в стеклянном пенициллиновом флаконе, закрытых резиновыми пробками, опечатан печатью Бюро СМЭ) для определения количественного и качественного содержания этилового спирта. Для судебно-химического исследования с целью определения наличия сильнодействующих, наркотических, психотропных и лекарственных веществ изъят желудок, кишечник и легкое, в объёме, котором они были представлены на исследование. Для судебно-гистологического исследования взяты кусочки внутренних органов в том числе и с маркировками (фиксированы в 10 % растворе формалина, помещены в сосуд с плотно закрывающейся крышкой, опечатанный печатью Бюро СМЭ). Для последующего медико криминалистического исследования изъяты 3,4 ребра слева с целью определения механизма образования повреждений. В процессе обследования производилась узловая фотосъемка цифровым фотоаппаратом СМ 3 ЗЗОР с последующей распечаткой фотографий (принтер - 960с). Экспертиза выполнена в соответствии с «Порядком организации и производства судебно-медицинских экспертиз в государственных судебно-экспертных учреждениях Российской Федерации утверждённым приказом Минздравсоцразвития России от 12.05.2010г. № 346н.

2. Лабораторные и специальные методы исследования 3.1. Гистологическоё
исследование

Дорошкевич Ю.А. Солодовник
Из Акта № 6298 судебно-гистологического исследования следует, что Органы от трупа Лагода Е.Г. доставлены в 2-х банках в опечатанном виде. Вырезанные 30 кусочков проведены через автоматический гистологический процессор Тек У1 р 6. Заливка парафиновая, окраска гематоксилин-эозином, пикрофуксином, суданом -Ш.
 Просмотрено 94 препарата с использованием микроскопов № е 200.

CONFIDENTIAL                                                                                    EL000262

Микросрезы просмотрены под большим и малым увеличением.

Исследовательская часть: Органы из 1-й банки:

№ 1 Почки (4) - капсула разрыхлена, на поверхности колонии бактерий. На фоне аутолитических изменений клубочки средних размеров, просветы капсул Шумлянского- Боумена свободные, ядра эндотелия окрашены неравномерно. Местами в коре в 2-х препаратах видны гнилостные пузыри, в просветах которых бактерии, большей частью палочки. В остальных полях зрения клетки эпителия извитых канальцев с неокрашенными ядрами, размытыми границами, цитоплазма их мутная, зернистая, в просветах некоторых канальцев клетки десквамированного эпителия и эозинофильное содержимое, стенки междолевых артерий разрыхлены, склерозированы, сосуды коркового и мозгового слоя большей частью со свободными просветами, в отдельных участках просветы сосудов содержат гемолизированную кровь в виде зернистой массы розового цвета, колонии бактерий. При окраске по Ван-Гизону соединительная ткань окрашена в красный цвет. При дополнительной окраске суданом-Ш жировые включения в просветах сосудов и капилляров не обнаружены.

№ 2 Печень (4) - на фоне аутолитических изменений капсула на протяжении препарата разрыхлена. Балочно-радиарное строение не выражено. В цитоплазме гепатоцитов крупные и мелкие вакуоли, оттесняющие ядра клеток на периферию цитоплазмы, местами цитоплазма гепатоцитов мутная, неравномерно окрашена, ядра клеток слабо окрашены гематоксилином, границы клеток местами не четкие, очаговая слабая лимфоидно-гистиоцитарная инфильтрация портальных трактов с незначительным разрастанием соединительной ткани в них. В просветах центральных вен и вен портальной стромы гемолизированные эритроциты в виде зернистой массы розового цвета. В 2-х препаратах в просветах центральных вен колонии бактерий. При окраске по Ван-Гизону соединительная ткань окрашена красный цвет (окраска положительная)

№ 3 Легкие (14) - плевра представлена в 2-х препаратах, разрыхлена, без признаков склероза и воспаления, бронхи в срезах не представлены; в 2-х препаратах альвеолы различной величины и формы, в отдельных участках эмфизематозно расширены, местами видны дистелектазы. В просветах некоторых альвеол серозная жидкость, в просветах некоторых альвеол единичные альвеолярные макрофаги, десквамированные альвеолоциты, в интерстиции местами небольшие отложения угольного пигмента. Эпителий бронхиол десквамирован в просвет. В просветах сосудов гемолизированные эритроциты, увеличенное количество лейкоцитов (7), ядра которых окрашены неравномерно. Стенки сосудов рыхлые, отечные с явлениями набухания эндотелия. Числовые значения признаков для определения коэффициента шока: отек легких-1, сладжи, тромбы-0,

CONFIDENTIAL                                                            EL000263

жировые эмболы-1, лейкоцитоз в сосудах легких-1, мегакариоцитоз в сосудах-0, альвеолярные макрофаги-1. Цифровая комбинация 101101- Коэфф.шока 0,71 /при дополнительной окраске суданом-Ш в просветах некоторых сосудов обнаружены суданофильные включения.

В 6-и других препаратах на фоне аутолитических изменений гемолиз с имбибицией межальвеолярных перегородок и накоплением серозной жидкости в полостях альвеол. Клетки слабо контурируются, ядра большей частью не окрашены, в просветах сосудов гемолизированная кровь в виде зернистой массы розового цвета, в некоторых колонии бактерий, в интерстиции местами небольшие отложения угольного пигмента.

№ 4 Диафрагма (19) - в присланном материале мышечные волокна с мутной саркоплазмой, поперечная исчерченность не определяется, ядра не окрашены.

В 2-х препаратах в одном из полей зрения в строме небольшое скопление гемолизированных эритроцитов в виде зернистой массы розового цвета, аналогичной содержимому сосудов, среди них видны колонии бактерий.

№ 5 Желудок (4) - на фоне выраженных аутолитических изменений слизистая оболочка на всем протяжении сохранена, эпителиоциты слабо контурируются, ядра их не окрашены. Подслизистая оболочка разрыхлена, в просветах сосудов гемолизированная кровь в виде сеточки. Гладкомышечные волокна большей частью не контурируются, ядра не окрашены.

№ 6 Язык (4)- эпителий слизистой оболочки представлен в обрывках, ядра не окрашены. Мышечные волокна контурируются, саркоплазма мутная ядра не окрашены. В препаратах видны фрагменты смешанной слизисто-серозной слюнной железы, преобладают слизистые концевые отделы, ядра клеток не окрашены. Сосуды полуспавшиеся, со свободными просветами.

№ 7 Тонкий кишечник (4) - в препаратах фрагменты стенки тонкого кишечника, различимы ворсинки, ядра клеток слоев стенки не просматриваются, цитоплазма клеток мутная, границы клеток плохо различимы, сосуды местами запустевшие, в просветах некоторых колонии бактерий.

Органы из 2-й банки:

№ 1 Кровоизлияние в левой щечной области слева (3)- на фоне аутолитических изменений представлена в препаратах жировая клетчатка, в которой очаговые скопления свободнолежащих гемолизированных эритроцитов, среди них видны контуры лейкоцитов, ядра их не окрашены. Местами видны очажки отека. Сосуды полуспавшиеся. неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно и периваскулярно видны единичные лейкоциты, ядра их не окрашены.

№ 2 Кровоизлияние в мягкие ткани затылочной области (3)- на фоне аутолитических изменений в препаратах среди мышечных волокон и в

CONFIDENTIAL                                                      EL000264

жировой клетчаткеочаговые скопления свободнолежащих гемолизированных эритроцитов, среди них видны лейкоциты, местами расположенные группами, ядра их не окрашены.

№ 3 фрагмент тела 6-го шейного позвонка с кровоизлиянием (3)- после декальцинации в препаратах соединительнотканные волокна и фрагменты костной ткани, среди которых очаговые скопления свободнолежащих частично гемолизированных, частично сохраняющих относительно четкие контуры эритроцитов, среди них видны единичные лейкоциты, ядра их не окрашены. Сосуды спавшиеся.

№ 4 кровоизлияние в мягкие ткани паховой области справа (3) - в препаратах на фоне аутолитических изменений представлена жировая клетчатка, в которой видны очаговые скопления свободнолежащих частично гемолизированных, частично сохраняющих относительно четкие контуры эритроцитов, среди них видны лейкоциты, ядра их не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены.

№ 5 кровоизлияние в мягкие ткани паховой области слева (4) - в препаратах на фоне аутолитических изменений представлена жировая клетчатка, в которой видны обширные скопления свободнолежащих большей частью гемолизированных эритроцитов, среди них видны лейкоциты, местами располагающиеся группами, ядра их не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены. Местами очажки отека.

№ 6 кровоизлияние в семенной канатик (7) - семенной канатик представлен в продольном срезе. На фоне аутолитических изменений эпителий семявыносящего протока местами сохранен, местами десквамирован. Артерии большей частью спавшиеся, со свободными просветами, в просветах вен гемолизированная кровь. Мышечные поперечнополосатые волокна по краю препарата с мутной саркоплазмой, ядра их не окрашены. В адвентициальной оболочке в одном из полей зрения мелкое скопление гемолизированных эритроцитов в виде зернистой массы розового цвета.

№ 7 кровоизлияние в мягкие ткани 4-го ребра справа по передней подмышечной линии (7) - на фоне аутолитических изменений представлены мышечные волокна с мутной саркоплазмой, неравномерно окрашенными ядрами. В 2-х препаратах по краю мелкоочаговые скопления свободнолежащих частично гемолизированных, частично сохраняющих относительно четкие контуры эритроцитов, среди них различимы лейкоциты, ядра их не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены.

CONFIDENTIAL                                                                EL000265

№ 8 кровоизлияние в мягкие ткани левой голени по задней поверхности в с/3 (3)

 - фоне аутолитических изменений в жировой клетчатке очаговые скопления свободнолежащих большей частью гемолизированных эритроцитов, среда них видны единичные лейкоциты, ядра их не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены.

№ 9 кровоизлияние в мягкие ткани из области внутреннего угла лопатки (2)- на фоне изменений представлены мышечные волокна с мутной саркоплазмой, неравномерно окрашенными ядрами. Местами очаговые скопления свободнолежащих частично гемолизированных, частично сохраняющих относительно четкие контуры эритроцитов, среди них различимы единичные лейкоциты, ядра не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены.

№ 10 кровоизлияние в мягкие ткани ягодичной мышцы слева (3) - в присланном материале на фоне аутолитических изменений представлены мышечные волокна с мутной саркоплазмой, поперечная исчерченность не выражена, ядра не окрашены. Сосуды большей частью спавшиеся, со свободными просветами

№ 11 кровоизлияние в мягкие ткани левой голени по передней поверхности в с/3 (3)-в препаратах в жировой клетчатке очаговые скопления свободнолежащих большей

частью гемолизированных эритроцитов, среди них видны единичные лейкоциты, ядра их не окрашены. Сосуды полуспавшиеся, неравномерно кровенаполнены, в просветах некоторых сосудов пристеночно видны единичные лейкоциты, ядра их не окрашены.

В просветах некоторых сосудов плазма.

 Судебно-гистологический диагноз:

Мелкоочаговое кровоизлияние в диафрагме.

Очаговое кровоизлияние в левой щечной области слева с лейкоцитами в зоне кровоизлияний, единичными лейкоцитами в просветах сосудов и периваскулярно (№1).

Очаговое кровоизлияние в мягкие ткани затылочной области (№2).

Очаговые кровоизлияния в фрагменте тела 6-го шейного позвонка с единичными лейкоцитами в зоне кровоизлияний (№3).

Очаговые кровоизлияния в мягких тканях паховой области справа и паховой области слева с единичными лейкоцитами в зоне кровоизлияний и просветах сосудов пристеночно (№ 4,5).  Мелкоочаговое кровоизлияние в адвентициальной: Волочке семенного

канатика (№6)

3.2. Из акта № 94мк-19 судебно-медиц исследования № 94 мк-19

CONFIDENTIAL                                    EL000266

Л.И. Скоромникова Ю.Г. Ячменева
криминалистического
 Вопросы, поставленные на разрешение:



1.Установление механизма образования повреждений?
2.Наличие признаков повторной травматизации?
На исследование предоставлено:
3. 3,4 ребра справа ИССЛЕДОВАТЕЛЬСКАЯ ЧАСТЬ
На исследование объекты предоставлены: в запечатанном конверте имеющую соответствующую пояснительную надпись. При вскрытии конверта в нем обнаружены 3 и 4 ребра справа с участками мягкой ткани, после предварительной обработки
(мацерации) были получены костные препараты.
1. Ребро, маркированное как 3 справа (фото 1, фото 2) - при сопоставлении двух фрагментов ребра в 1,8 см от одного края фрагмента ребра определятся полный поперечный перелом, плоскость перелома косо-горизонтальная. На внутренней поверхности края перелома неровные, волнообразные, хорошо сопоставимы по «замка», на наружной поверхности с переходом на один край ребра, края неровные, крупнозубчатые, плохо сопоставимы, с зонами выкрашивания компактного вещества;в области одного края ребра имеется выкрашивание треугольной формы, размерами 0,5х0,3 см.
Таким образом на 3 ребре справа имеется полный поперечный перелом с признаками растяжения костной ткани на внутренней поверхности ребра, признаками сжатия на наружной поверхности.
2. Ребро маркированное, как 4 справа (фото 3, фото 4) - при сопоставлении двух фрагментов ребра в 2 см от одного края фрагмента ребра определятся полный поперечный перелом, плоскость перелома косо-горизонтальная.
На внутренней поверхности края перелома мелкозубчатые, хорошо сопоставимы по признаку «замка», на наружной поверхности, края неровные, крупнозубчатые, плохо
сопоставимы, с зонами выкрашивания компактного вещества; в области одного края ребра имеется смятие края треугольной формы, размерами 0,3х0,2 см.
Таким образом на 4 ребре справа имеется полный поперечный перелом с признаками растяжения костной ткани на внутренней поверхности ребра, признаками сжатия на наружной поверхности.
Экспертное заключение выполнено в соответствии с «Порядком организации и производства судебно-медицинских экспертиз б государственных судебно-экспертных учреждениях Российской

CONFIDENTIAL                    EL000267

Федерации», утвержденным приказом Минздравсоцразвития России от 12.05.2010 №346н.

**ЗАКЛЮЧЕНИЕ**

На основании произведенного медико-криминалистического исследования 3,4 ребра справа от трупа гр. Лагода Е.Г. ██.██.1980 года рождения (заключение эксперта №280/2019), прихожу к следующему заключению:

1. На предоставленном 3 ребре справа имеется полный поперечный перелом с признаками растяжения костной ткани на внутренней поверхности ребра, признаками сжатия на наружной поверхности.

2. На представленном 4 ребре справа имеется полный поперечный перелом с признаками растяжения костной ткани на внутренней поверхности ребра, признаками сжатия
на наружной поверхности.

3. На предоставленных 3-4,^|Щэах: спраад признаки повторной травматизации
не обнаружены.


Судебно-медицинский эксперт


Результат судебно-химического исследования О.А. Фирсенко
При судебно-химическом исследовазгаи-кишечника, печени, почки, легкого не обнаружены: морфин, кодеин, промедол, метадон, прегабалин, тропикамид; производные
1,4-бензодиазепина (феназепам, оксазепам, диазепам и др.), производные дельта 9- тетрагидроканнабинола, эфедрин, эфедрой, амитриптилин, стрихнин, бруцин, атропин, пахикарпин, анабазин, димедрол;производные барбитуровой кислоты (фенобарбитал, барбамил, этаминал и др.), производные фенотиазина (аминазин, дипразин и др.), стрихнин, бруцин, атропин, гиосциамин, пахикарпин, скополамин, анабазин, никотин, кониин, ареколин, наркотин, папаверин,резерпин, хинин, синтетические каннабимиметики (1\УН-18, 1\УН-122, РВ-22) и др. нейтрального иосновного характера - в кишечнике, печени, почке, этиловый спирт **не обнаружен**.

Примечание: внутренние органы, доставленный, на исследование, находились в состоянии консервирования формалином.

Эксперт Э.А. Киблер

Результаты дополнительных исследований изучены комиссией экспертов.

Эксперты

Н.А. Гарькуша                      Ю.А. Дорошкевич

Ю.А. Солодовник


Выводы:

На основании проведенных исследований представленных лгатфиалов,

CONFIDENTIAL

EL000268

результатов повторного судебно-медицинского исследования трупа Комиссия экспертов приходит к следующим выводам:

Ответ на вопрос № 9: «Какова причина смерти Лагода Е.Г.?»
При проведении комиссионного судебно-медицинского исследования трупа Лагода Е.Г. комиссией экспертов установлено наличие следов первичного секционного исследования (вскрыты грудная, брюшная и полости черепа), большая часть внутренних органов отсутствовала (головной мозг, спинной мозг, сердце, яички), имеющиеся в трупе фрагменты внутренних органов были закономерно подвергнуты гнилостным изменениям и химической консервации в растворе формальдегида.
В связи с тем, что комиссии экспертов не были представлены результаты первичного исследования трупа, в том числе лабораторные, а также отсутствие большинства
внутренних органов трупа Лагода Е.Г. ответить на поставленный вопрос не представляется возможным.
    При проведении судебно-гистологического исследования кусочков внутренних органов были выявлены микроскопические признаки угрожающего жизни состояния (шока и жировой эмболии), которые образовались в момент близкий к наступлению смерти Лагода Е.Г. (согласно акту судебно-гистологического исследования, коэффициент шока равен 0,71).
Установить причину возникновения шока и жировой эмболии не представляется возможным по причинам, изложенным выше.

Ответ на вопрос № 10: «Каково время наступления смерти Лагода Е.Г.?»
Ответить на поставленный вопрос не представляется возможным ввиду того, что экспертной комиссии не были представлены результаты первичного исследования.
Ответ на вопросы № 1,2: «Какие повреждения имеются на трупе Лагода Е.Г., их количество, локализация, степень тяжести, давность причинения? Чем могли быть причинены установленные повреждения на трупе Лагода Е.Г.?»
    При проведении повторного комиссионного судебно-медицинского исследования трупа были обнаружены повреждения:
1. Кровоподтёки, расположенные: в щёчной области справа с распространением на веки правого глаза, правую височную и лобную область (1), щёчной области слева с распространением сплошь на левую ушную раковину, веки левого глаза, левую височную и лобную область (1), поверхностная ушибленная рана области надпереносья (1), в области кончика правой ушной раковины (1), в проекции правого плечевого сустава (1), передневнутренней поверхности правого плеча на границе с

CONFIDENTIAL

EL000269

подмышечной впадиной, передненаружной поверхности правого плеча на границе верхней и средней трети (2), в проекции локтевого отростка (1), задненаружной поверхности правого предплечья в верхней трети (1), задненаружной поверхности правого предплечья нижней   трети (1), задненаружной поверхности правого предплечья на границе средней и нижней трети (1), на задней поверхности предплечья в нижней трети (1), задней поверхности предплечья в проекции лучезапястного сустава с распространением на тыльную поверхность кисти (1), тыльной поверхности правой кисти, в проекции двупястной кости (1), в проекции левого плечевого сустава (1), передней поверхности левого плеча в верхней трети (1), задней поверхности левого плеча на границе средней и нижней трети (1), задней поверхности левого плеча в проекции локтевого отростка (1), внутренней поверхности левого плеча в нижней трети (1), внутренней поверхности     левого плеча в нижней трети (1), внутренней поверхности левого предплечья в верхней трети (1), на левой верхней конечности в проекции левого лучезапястного сустава (1), паховой области слева с распространением на переднюю поверхность бедра (1), в области передней брюшной стенки левее пупочного кольца (1), передненаружной поверхности левого бедра в средней трети (1), задне-наружной поверхности левого бедра в верхней трети (1), передненаружной поверхности левой голени в верхней трети (3), передней поверхности левой голени на границе средней и нижней   трети, наружной поверхности левой голени в нижней трети ближе к голеностопному суставу, в области передней брюшной стенки в правой подвздошной области (1), паховой области справа (1), передней поверхности правого бедра в средней трети (1), правой нижней конечности в проекции надколенника (1), передневнутренней поверхности левого бедра в нижней трети (1), передненаружной поверхности левой голени в верхней трети (1), тыльной поверхности правой стопы П). теменно-затылочной области по условно срединной линии (1), задней поверхности шеи с распространением на область надплечий (1), в проекции левой лопатки (1), задней поверхности туловища в межлопаточной области (1), в проекции правой лопатки (1).поясничной области по условно срединной линии (1), ягодичной области справа (1). задней поверхности левого плеча в средней трети (1), наружной поверхности левого бедра в верхней трети (1), задней поверхности правого плеча в верхней трети (1), задней поверхности правого плеча в средней трети (1), задней поверхности левой голени в верхней трети (2), задней поверхности правого бедра в средней трети (1), а также обширные кровоизлияния в прилежащие мягкие ткани, расположенные в проекции описанных повреждений, кровоизлияния в семенные канатики, Полные поперечные переломы 3-го и 4-го ребер слева по передней подмышечной линии без смещения костных отломков. Очаговое кровоизлияние в область тела и окружающих тканей 6-го

CONFIDENTIAL                                                                                           EL000270

грудного позвонка.

Вышеуказанные повреждения причинены многократным воздействием тупого твердого предмета (предметов), в короткий промежуток времени относительно друг друга, незадолго до наступления смерти (в пределах нескольких десятков минут).

Данный вывод подтверждается результатами судебно-гистологического исследования, выявившими наличие единичных лейкоцитов в просветах сосудов во всех изъятых повреждениях.Оценить степень тяжести вреда, причиненного здоровью Лагода Е.Г. вышеупомянутыми повреждениями, а также установить связь их с наступлением смерти не представляется возможным ввиду отсутствия результатов первичного исследования его трупа (в соотв. с п. 27 приложения к приказу Минздравсоцразвития РФ от 24 апреля 2008 г. №194н «Об утверждении Медицинских критериев определения степени тяжести вреда, причиненного здоровью человека».

Ответ на вопросы № 3,4: «Причинены ли все повреждения одновременно или в разное время, если в разное время, то какие, когда и через какие промежутки времени возникли, все ли повреждения причинены пожизненно, если нет, то какие повреждения посмертные и через какое время наступления смерти они причинены?
В какой последовательности причинены повреждения?»

По данным судебно-гистологического исследования, все повреждения, имеющиеся на трупе Лагода Е.Г., образовались в короткий промежуток времени относительно друга (имеют сходную клеточную реакцию), что не позволяет экспертной комиссии достоверно определить их последовательность.

Ответ на вопрос № 12: «Каким орудием причинены повреждения Лагода Е.Г., повлекшие его смерть?»
Все повреждения, обнаруженные у Лагода Е.Г., причинены действием тупого твердого предмета (предметов).

Ответ на вопрос № 14: «Одним или несколькими орудиями причинены повреждения, обнаруженные на трупе Лагода Е.Г.?
Какие из них являются смертельными, а какие нет?»
Ответить на поставленный вопрос не представляется возможным по причинам, изложенным на ответ на вопрос № 9.

Ответ на вопрос № 5: «Каково было взаиморасположение Лагода Е.Г. и нападавшего в момент причинения повреждений?»
Взаиморасположение потерпевшего и нападавшего (нападавших) могло быть самым разнообразным с учетом анатомической доступности травмирующим факторам тех мест, куда были причинены повреждения.
С учетом множественности, характера и разносторонней анатомической локализации можно утверждать, что положение Лагода Е.Г. в момент причинения ему повреждений неоднократно изменялось.

Ответ на вопрос № 6,8,10: «Способен ли был Лагода Е.Г. после

CONFIDENTIAL

EL000271

причинения ему повреждений, совершать какие-либо самостоятельные действия?

Находился ли Лагода Е.Г. в состоянии алкогольного опьянения и в какой степени?

Находится ли смерть в причинной связи с телесными повреждениями, обнаруженными на трупе Лагода Е.Г. ?»

Ответить на поставленные вопросы не представляется возможным по причинам, изложенным при ответе на вопрос № 9.

Ответ на вопрос № 7: «С какой силой (значительной, либо малозначительной) наносились ранения (повреждения) ?

Выразить величину, с которой наносились повреждения в физических единицах, не подставляется возможным, ввиду отсутствия научно утвержденных методик и литературных данных.

Ответ на вопрос № 13,15: «Имеются ли на трупе Лагода Е.Г. признаки, позволяющие оценить о форме, размере и других индивидуальных качествах примененного орудия? Могли ли возникнуть обнаруженные на трупе Лагода Е.Г. повреждения, от ударов

ногами, руками человека?»

Каких-либо индивидуальных следообразующих признаков травмирующего орудия в повреждениях не отобразилось. Все обнаруженные повреждения обладают признаками

группового идентификационного уровня-причинены предметов (предметами), имеющими ограниченную контактирующую поверхность. Подобными свойствами обладают в том числе кисти рук человека, сжатые в кулак, обутые ноги, предметы похожие на полицейскую дубинку и т.д.

Ответ на вопрос № 16: «Страдал ли при жизни Лагода Е.Г. какими-либо заболеваниями, если да, то какими и какова их причина?»

В исследуемых внутренних органах (язык, трахея, почка, фрагмент брюшной аорты, печень, желудок, кишечник, часть диафрагмы, семенные канатики) на фоне развития выраженных процессов аутолиза (т.е. гниения), каких-либо признаков, свидетельствующих в пользу наличия у Лагода Е.Г. хронических заболеваний, экспертной комиссией

не обнаружено.

Ответ на вопрос № 17: «Находятся ли обнаруженные у Лагода Е.Г. заболевания в причинной связи с его смертью?».

Ответить на поставленный вопрос не представляется возможным ввиду развития гнилостных изменений внутренний органов, а также отсутствия большинства внутренних органов (сердца, головного мозга, внутренних органов и т.д.)

Эксперты

CONFIDENTIAL

EL000272



Н.А. Гарькуша                Ю.А. Дорошкевич

                                 Ю.А. Солодовник

Экспертиза начата 08.05.2019 года, 15.00.
Экспертиза окончена 02.09.2019 года, 14.00.

CONFIDENTIAL                                                    EL000273