# Exhibit M

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | POI 5-10 | Date Issued: | 12/23/14 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | 07/09/15 |
| Issuing Authority: | Michael A. Fedorko | Procedure No: | 100-05 |
| Subject: | **USE OF NON-DEADLY FORCE** | Page(s): | 1 of 4 |

**PURPOSE**

To provide members of the service with guidelines on the use of force that is not intended to cause or create a risk of death or serious physical injury.

**POLICY**

This department recognizes and respects the value and special integrity of each human life. In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority of NY and NJ Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Before non-deadly force is used, reasonable alternatives, such as persuasion, warning and advice, are to be attempted.

**DEFINITIONS**

NON-DEADLY FORCE - Any use of force, physical or mechanical, other than what is considered deadly force. Non-deadly force is equivalent to less than lethal force.

PHYSICAL FORCE - Involves contact with a subject beyond that which is generally utilized to effect an arrest or other law enforcement objective. Physical force is employed when necessary to overcome a subject's physical resistance to the police officer's exertion of authority, or to protect persons or property.

MECHANICAL FORCE - Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.

Pride    •    Service    •    Distinction

PA2594

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 3 of 81

A law enforcement officer should use the least amount of force necessary to bring a situation safely under control and/or effect an arrest. A suspect's verbal threat of violence is insufficient by itself to justify the use of force. Therefore, as the suspect's level of resistance or aggression escalates or de-escalates, the officer must respond with an appropriate level of force. The non-deadly force options available to a police officer are described below:

- Verbalization - Persuasion, warning, advice, command.
- Escort Holds - Physical control established to direct or control.
- OC spray.
- Compliance Holds - Intended to overcome resistance through firm grip or come along holds.
- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. Officers should make every reasonable effort to avoid compressing and restricting the suspect's airway, or compressing the suspect's neck and chest area when applying physical force. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

**PROCEDURE**

Members of the force are justified in using non-deadly force when they reasonably believe force is necessary to:

- Enforce lawful orders.
- Control a violent or potentially violent suspect.
- Protect themselves or others against the use of unlawful force.
- Control a resistant individual.
- Prevent a person from committing suicide or causing serious bodily harm to himself or herself.
- Stop or prevent a crime involving loss of property.
- Stop or prevent a crime involving bodily harm or the threat of bodily harm.

PA2595

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 4 of 81

- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey.

Any method of physical control should be used in accordance with the techniques taught at the Port Authority Police Academy.

Port Authority police officers are to carry and/or use only Port Authority Police Department issued and/or defensive instruments.

The use of the listed less than lethal instruments is authorized:

- Issued Baton

- Riot Baton - Only to be carried when specifically authorized for duty at a particular incident

- Police K-9 - Only to be used by a certified K-9 handler

- OC spray

- Conducted Energy Device, for those officers who are trained and qualified

REPORTING THE USE OF FORCE

A member of this department who uses force, that causes an apparent or alleged injury or death, must file a Use of Force Report (PA 3979).

When an officer's use of force results in an apparent or alleged injury, the Tour Commander should submit a detailed report to the Commanding Officer. The report should contain the Tour Commander's evaluation of whether the use of force was justified. The report should also include the following but is not limited to:

- Reason for officer's use of force.

- Description of suspect's apparent/alleged injuries.

- Medical treatment provided by police or emergency medical service (EMS).

- Name, address, and phone number of independent witnesses.

- Notifications made, if applicable.

- Copy of EMS and/or hospital reports regarding the subject.

PA2596

Case 1:21-cv-06226-NRB   Document 80-13   Filed 05/12/25   Page 5 of 81

- Injuries sustained by police officer(s) present at the scene.
- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury.
- All arrests and/or aided reports, if applicable.
- Photographs of all injuries to police, if applicable.
- Photographs of all injuries to subject(s), if applicable.
- Report(s) from supervisor(s) present or dispatched to the scene.
- Report(s) from other member(s) present or dispatched to the scene.

By Order of:

Michael A. Fedorko
Superintendent of Police/
Director, Public Safety Department

Pride　　　　•　　　　Service　　　　•　　　　Distinction

PA2597

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | POI 5-9 | Date Issued: | 3/6/17 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | |
| Issuing Authority: | Michael A. Fedorko | Procedure No: | 100-04 |
| **Subject:** | **USE OF DEADLY FORCE** | Page(s): | 1 of 7 |

## PURPOSE

To establish guidelines for the use of deadly force by the Port Authority of New York and New Jersey Police Department.

## POLICY

This Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of this department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the life of the officer or another. The firearm, a defensive weapon, is the ultimate use of force and will be used only after every other reasonable alternative has been exhausted or is found impractical.

## DEFINITIONS

<u>Reasonable Belief</u> – The determination that the necessity for using force and the level of force used is based upon the officer's evaluation of the situation in light of the totality of the circumstances known to the officer at the time the force is used and upon what a reasonably prudent officer would use under the same or similar situations.

<u>Serious Physical Injury</u> – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

<u>Deadly Force</u> – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm constitutes deadly physical force.

Pride   •   Service   •   Distinction

PA2598

Case 1:21-cv-06226-NRB   Document 80-13   Filed 05/12/25   Page 7 of 81

A police officer shall not discharge a weapon to signal for help or as a warning shot.

Firearms should remain holstered or secured until the police officer reasonably believes that it may become necessary to use a firearm.

*NOTE*: Drawing a firearm prematurely or unnecessarily limits a member of the service's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a member of the service determines that the potential for serious physical injury is no longer present, the member of the service will holster the firearm as soon as practicable.

*Discharging a Weapon at or from a Moving Vehicle*

Discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, officers shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle unless the officer reasonably believes:

- a person in the vehicle is threatening the officer or another person with deadly force by means other than the vehicle; or
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

AUTHORIZED USES OF WEAPONS

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice or qualification;
- At competitive shooting events;
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others);
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.)

Pride            •            Service            •            Distinction

PA2599

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 8 of 81

## RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, the Desk Personnel will undertake the following:

- Notify the Tour Commander.

- Notify the Central Police Desk (CPD).

- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.

- At the Tour Commander's direction, notify the local police department, if applicable.

- Contact Emergency Medical Service (EMS) for medical aid, as needed.

- Maintain a chronological record of events.

- Secure command tapes.

## RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a member of the Port Authority Police force has discharged a weapon, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.

- Request emergency medical assistance, if applicable.

- Request the presence of the Police Integrity Unit through the Central Police Desk.

- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.

- Notify the local police department, if applicable.

- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.

- Assist the police officers involved.

- Retrieve and protect the firearm involved.

- Assign supervisory personnel to conduct preliminary interview.

- Assign police personnel to identify witnesses and record witnesses' statements.

Pride          •          Service          •          Distinction

PA2600

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all members of the force who have discharged a weapon in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as with statewide, county and the Port Authority Police Department rules and regulations.

By Order of:

_____

Michael A. Fedorko    **FOR**
Superintendent of Police/
Director, Public Safety Department

Pride    •    Service    •    Distinction

PA2601

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER




# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## OPERATIONS ORDER

| Command(s) | ALL MEMBERS OF THE FORCE | Date Issued: | 08/06/20 |
|---|---|---|---|
| Section: | | Date Revised: | |
| Issuing Authority: | Edward T. Cetnar | Order No: | 2020-OPS-52 |
| Subject: | **PATROL GUIDE UPDATE (USE OF NON-DEADLY FORCE)** | Page(s): | 1 of 1 |
| Copy to: | J. Bilich, L. Klock, E. Gonzalez, M. Brown, G. Frank, S. Rotolo, R. Bryan, G. Silva, M. Wilson, J. Marino, K. Beard-Wilcher, K. Connelly, R. Darcy, D. Lee, DEA, LBA, PBA, SBA | | |

The following General Order has been updated:

**Section**    **General Order**

100-05    Use of Non-Deadly Force

Changes have been made to ensure Port Authority Police Department policy is consistent with New York City Administrative Code § 10-181, Unlawful Methods of Restraint.

Commanding Officers will ensure that the contents of this order are brought to the attention of all members of your command.

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride    •    Service    •    Distinction

PA2602

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



## THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

### GENERAL ORDER

| | | | |
|---|---|---|---|
| Replaces: | POI 5-10 | Date Issued: | 12/23/14 |
| Section: | General Regulations | Date Revised: | 08/06/20 |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-05 |
| Subject: | **USE OF NON-DEADLY FORCE** | Page(s): | 1 of 4 |

### PURPOSE

To provide members of the service with guidelines on the use of force that is not intended to cause or create a risk of death or serious physical injury.

### POLICY

This department recognizes and respects the value and special integrity of each human life. In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority of NY and NJ Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Before non-deadly force is used, reasonable alternatives, such as persuasion, warning and advice, are to be attempted.

### DEFINITIONS

NON-DEADLY FORCE - Any use of force, physical or mechanical, other than what is considered deadly force. Non-deadly force is equivalent to less than lethal force.

PHYSICAL FORCE - Involves contact with a subject beyond that which is generally utilized to effect an arrest or other law enforcement objective. Physical force is employed when necessary to overcome a subject's physical resistance to the police officer's exertion of authority, or to protect persons or property.

MECHANICAL FORCE - Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.

CHOKEHOLD – A chokehold includes, but is not limited to, any pressure to the throat, windpipe,

PA2603

or carotid arteries, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

A law enforcement officer should use the least amount of force necessary to bring a situation safely under control and/or effect an arrest. A suspect's verbal threat of violence is insufficient by itself to justify the use of force. Therefore, as the suspect's level of resistance or aggression escalates or de-escalates, the officer must respond with an appropriate level of force. The non-deadly force options available to a police officer are described below:

- Verbalization – Persuasion, warning, advice, command

- Escort Holds – Physical control established to direct or control

- OC spray

- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.

- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

Members of the Force are NOT authorized to use chokeholds. Furthermore, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, or abdomen) in a manner that compresses the diaphragm.

**PROCEDURE**

Members of the Force are justified in using non-deadly force when they reasonably believed force is necessary to:

- Enforce lawful orders

- Control a violent or potentially violent suspect

- Protect themselves or others against the use of unlawful force

- Control a resistant individual

- Prevent a person from committing suicide or causing serious bodily harm to himself or herself

- Stop or prevent a crime involving loss of property

- Stop or prevent a crime involving bodily harm or the threat of bodily harm

PA2604

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey

Any method of physical control must be used in accordance with the techniques taught at the Port Authority Police Academy.

Port Authority police officers are to carry and/or use only Port Authority Police Department issued and/or defensive instruments.

The use of the listed less than lethal instruments is authorized:

- Issued Baton

- Riot Baton – only to be carried when specifically authorized for duty at a particular incident

- Police K-9 – only to be used by a certified K-9 handler

- OC spray

- Conducted Energy Device, for those officers who are trained and qualified

## REPORTING THE USE OF FORCE

A member of this department who uses force, that causes an apparent or alleged injury or death, must file a Use of Force Report (PA 3979).

When an officer's use of force results in an apparent or alleged injury, the Tour Commander should submit a detailed report to the Commanding Officer. The report should contain the Tour Commander's evaluation of whether the use of force was justified. The report should also include the following but is not limited to:

- Reason for officer's use of force

- Description of suspect's apparent/alleged injuries

- Medical treatment provided by police or emergency medical service (EMS)

- Name, address, and phone number of independent witnesses

- Notifications made, if applicable

- Copy of EMS and/or hospital reports regarding the subject

- Injuries sustained by police officer(s) present at the scene

- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury

PA2605

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 14 of 81

- All arrests and/or aided reports, if applicable
- Photographs of all injuries to police, if applicable
- Photographs of all injuries to subject(s), if applicable
- Report(s) from supervisor(s) present or dispatched to the scene
- Report(s) from other member(s) present or dispatched to the scene

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

PA2606

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | POI 5-9 | Date Issued: | 3/6/17 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | 06/07/21 |
| Issuing Authority: | Michael A. Fedorko | Procedure No: | 100-04 |
| Subject: | **USE OF DEADLY FORCE** | Page(s): | 1 of 7 |

## PURPOSE

To establish guidelines for the use of deadly force by the Port Authority of New York and New Jersey Police Department.

## POLICY

This Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of this department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the life of the officer or another. The firearm, a defensive weapon, is the ultimate use of force and will be used only after every other reasonable alternative has been exhausted and is found impractical.

## DEFINITIONS

Reasonable Belief – The determination that the necessity for using force and the level of force used is based upon the officer's evaluation of the situation in light of the totality of the circumstances known to the officer at the time the force is used and upon what a reasonably prudent officer would use under the same or similar situations.

Serious Physical Injury – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

Deadly Force – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm constitutes deadly physical force.

Pride      •      Service      •      Distinction

RESCINDED

PA2607

## PROCEDURE

A police officer is authorized to use deadly physical force when the officer reasonably believes that the use of deadly physical force is immediately necessary to:

- Protect the officer or another person from imminent danger of death or serious bodily harm;

- Prevent the escape of a fleeing suspect whom the officer has probable cause to believe has committed an offense in which the suspect caused or attempted to cause death or serious bodily harm/injury; and

- Who will pose an imminent danger of death or serious bodily harm should the escape succeed; and

- When the use of deadly force presents no substantial risk of injury to innocent persons.

If feasible, prior to the use of deadly force, the officer should identify himself/herself and state the intent to use such force. If the suspect heeds the warning, the officer is no longer justified in using deadly force.

When an officer is confronted with a situation in which physical force is likely to cause death or serious bodily harm, the officer should consider the following factors:

- The seriousness and nature of the offense.

- The subjects' physical ability, mental competence and the degree of resistance or violence that the suspect poses.

- Whether physical control of the subject is an immediate necessity, or whether the situation can be defused and effectively handled without the use of deadly force.

- Whether the use of deadly force will escalate into violence and create an unreasonable risk of injury to other persons.

## SPECIFIC RESTRICTIONS ON THE USE OF FIREARMS

An officer may not use a firearm if its use would in any way unjustifiably endanger innocent persons whom the officer is not seeking to arrest or retain in custody. If in using a firearm, an officer consciously disregards or fails to perceive substantial and unjustifiable risk of injury to innocent persons, the officer may be held liable for reckless conduct or criminal negligence. Care and good judgment must be exercised in all instances involving the discharge of firearms.

Deadly force shall not be used to subdue persons who only destroy property.

Pride            •            Service            •            Distinction

PA2608

A police officer shall not discharge a weapon to signal for help or as a warning shot.

Firearms should remain holstered or secured until the police officer reasonably believes that it may become necessary to use a firearm.

*NOTE:* Drawing a firearm prematurely or unnecessarily limits a member of the service's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a member of the service determines that the potential for serious physical injury is no longer present, the member of the service will holster the firearm as soon as practicable.

*Discharging a Weapon at or from a Moving Vehicle*

Discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, officers shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle unless the officer reasonably believes:

- a person in the vehicle is threatening the officer or another person with deadly force by means other than the vehicle; or
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

AUTHORIZED USES OF WEAPONS

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice or qualification;
- At competitive shooting events;
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others);
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.)

Pride          •          Service          •          Distinction

PA2609

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

PROCEDURES TO BE FOLLOWED UPON DISCHARGE OF A WEAPON

Any discharge of a firearm, except at in-service training, at a licensed pistol range, or during competitive shooting events, should be immediately reported to the Central Police Desk. A Use of Force Report (PA3979) should be completed at all Police Commands when an officer discharges a firearm or is fired upon while performing lawful duty.

If the officer is unable to prepare the Use of Force Report due to injury or death, the Tour Commander or designee will be responsible for the preparation of the report. The Commanding Officer will review the report, attach the original CCR, and forward it to Police Headquarters.

County Prosecutors may require the preparation and submission of additional reports. Commands should comply with County reporting requirements in addition to preparing the reports required above.

The police officer who discharged a weapon will submit a detailed written report for review by:

- The facility Commanding Officer;
- Police Integrity Unit; and
- Superintendent of Police

The officer will remain at the scene until the appropriate investigator arrives, unless:

- The officer is injured and requires medical treatment.
- The officer's presence at the scene would, as per the determination of the Incident Commander, result in the escalation of violence.

The officer is required to protect the firearm for examination, and will be required to surrender the firearm to the Tour Commander or the Tour Commander's designee or investigating unit. A replacement weapon can be issued through the Central Police Desk 24 hours a day subject to supervisory approval.

OFF DUTY INCIDENTS

An officer involved in any off duty incident will:

- Notify the local police department and the Central Police Desk.
- Cooperate with the local agency involved in the investigation.
- Follow applicable sections of this instruction as required, for an on duty incident.

PA2610

Case 1:21-cv-06226-NRB   Document 80-13   Filed 05/12/25   Page 19 of 81

RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, the Desk Personnel will undertake the following:

- Notify the Tour Commander.

- Notify the Central Police Desk (CPD).

- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.

- At the Tour Commander's direction, notify the local police department, if applicable.

- Contact Emergency Medical Service (EMS) for medical aid, is needed.

- Maintain a chronological record of events.

- Secure command tapes.

RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a member of the Port Authority Police force has discharged a weapon, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.

- Request emergency medical assistance, if applicable.

- Request the presence of the Police Integrity Unit through the Central Police Desk.

- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.

- Notify the local police department, if applicable.

- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.

- Assist the police officers involved.

- Retrieve and protect the firearm involved.

- Assign supervisory personnel to conduct preliminary interview.

- Assign police personnel to identify witnesses and record witnesses' statements.

Pride          •          Service          •          Distinction

PA2611

- Provide all information to investigative personnel upon arrival.

- Assign police personnel to escort the injured officer and/or suspect to hospital, if applicable, and to further insure that any evidence, including clothing, is protected, including any such items of clothing or evidence removed by medical personnel at the scene or the hospital.

- Submit a written report to the Commanding Officer.

- Ensure Use of Force Report is completed.

- Notify Absence Control Unit for purpose of scheduling the police officer whose weapon was discharged for medical services.

- Ensure the facility recording tape has been secured.

- Contact Media Relations to handle press inquiries.

## NOTIFICATIONS

In all cases in which a person is shot, seriously injured, or killed as a result of a firearm discharge or other force used by a member of this department, the Tour Commander will ensure that the following are notified:

- The Central Police Desk

- Police Integrity Unit

- Affected outside agencies

- District Attorney's/Prosecutor's Office, if applicable

## RESPONSIBILITIES OF THE POLICE INTEGRITY UNIT

The assigned PIU personnel will conduct an investigation to determine if the firearm discharge was intentional or accidental, and if the discharge complied with these instructions. PIU will then prepare and submit a written report of the findings to the Superintendent of Police. Additionally, PIU will insure that all evidence is available to the pertinent prosecutorial authority.

## COMMANDING OFFICER

- The Commanding Officer is responsible for the supervision of the Police Command activities, including criminal complaints, arrests, etc., related to the initial incident.

- The Commanding Officer will provide investigators with all relevant information and reports available at the command.

PA2612

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

## MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all members of the force who have discharged a weapon in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

## TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as with statewide, county and the Port Authority Police Department rules and regulations.

By Order of:

Michael A. Fedorko    FOR
Superintendent of Police/
Director, Public Safety Department

RESCINDED

Pride    •    Service    •    Distinction

PA2613



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | POI 5-10 | Date Issued: | 12/23/14 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | 06/07/21 |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-05 |
| Subject: | **USE OF NON-DEADLY FORCE** | Page(s): | 1 of 4 |

**PURPOSE**

To provide members of the service with guidelines on the use of force that is not intended to cause or create a risk of death or serious physical injury.

**POLICY**

This department recognizes and respects the value and special integrity of each human life. In vesting police officers with the lawful authority to use force to protect the public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority of NY and NJ Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Before non-deadly force is used, reasonable alternatives, such as persuasion, warning and advice, are to be attempted.

**DEFINITIONS**

NON-DEADLY FORCE - Any use of force, physical or mechanical, other than what is considered deadly force. Non-deadly force is equivalent to less than lethal force.

PHYSICAL FORCE - Involves contact with a subject beyond that which is generally utilized to effect an arrest or other law enforcement objective. Physical force is employed when necessary to overcome a subject's physical resistance to the police officer's exertion of authority, or to protect persons or property.

MECHANICAL FORCE - Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.

CHOKEHOLD – A chokehold includes, but is not limited to, any pressure to the throat, windpipe,

RESCINDED

PA2614

or carotid arteries, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

A law enforcement officer should use the least amount of force necessary to bring a situation safely under control and/or effect an arrest. A suspect's verbal threat of violence is insufficient by itself to justify the use of force. Therefore, as the suspect's level of resistance or aggression escalates or de-escalates, the officer must respond with an appropriate level of force. The non-deadly force options available to a police officer are described below:

- Verbalization – Persuasion, warning, advice, command

- Escort Holds – Physical control established to direct or control

- OC spray

- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.

- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

Members of the Force are NOT authorized to use chokeholds. Furthermore, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, or abdomen) in a manner that compresses the diaphragm.

**PROCEDURE**

Members of the Force are justified in using non-deadly force when they reasonably believed force is necessary to:

- Enforce lawful orders

- Control a violent or potentially violent suspect

- Protect themselves or others against the use of unlawful force

- Control a resistant individual

- Prevent a person from committing suicide or causing serious bodily harm to himself or herself

- Stop or prevent a crime involving loss of property

- Stop or prevent a crime involving bodily harm or the threat of bodily harm

RESCINDED

- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey

Any method of physical control must be used in accordance with the techniques taught at the Port Authority Police Academy.

Port Authority police officers are to carry and/or use only Port Authority Police Department issued and/or defensive instruments.

The use of the listed less than lethal instruments is authorized:

- Issued Baton

- Riot Baton – only to be carried when specifically authorized for duty at a particular incident

- Police K-9 – only to be used by a certified K-9 handler

- OC spray

- Conducted Energy Device, for those officers who are trained and qualified

## REPORTING THE USE OF FORCE

A member of this department who uses force that causes an apparent or alleged injury or death, must file a Use of Force Report (PA 3970).

When an officer's use of force results in an apparent or alleged injury, the Tour Commander should submit a detailed report to the Commanding Officer. The report should contain the Tour Commander's evaluation of whether the use of force was justified. The report should also include the following but is not limited to:

- Reason for officer's use of force

- Description of suspect's apparent/alleged injuries

- Medical treatment provided by police or emergency medical service (EMS)

- Name, address, and phone number of independent witnesses

- Notifications made, if applicable

- Copy of EMS and/or hospital reports regarding the subject

- Injuries sustained by police officer(s) present at the scene

- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury

PA2616

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

- All arrests and/or aided reports, if applicable

- Photographs of all injuries to police, if applicable

- Photographs of all injuries to subject(s), if applicable

- Report(s) from supervisor(s) present or dispatched to the scene

- Report(s) from other member(s) present or dispatched to the scene

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

RESCINDED

PA2617

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | General Order 100-04 & 100-05 | Date Issued: | 06/07/2021 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-13 |
| **Subject:** | **USE OF FORCE** | Page(s): | 1 of 12 |

## PURPOSE

To provide Members of the Force with guidelines on the use of deadly force and non-deadly force.

## POLICY

The Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting Police Officers with the lawful authority to use force to protect public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Members of the Force should exhaust all other reasonable means before resorting to the use of force. If feasible, and before force is used, reasonable alternatives such as persuasion, warning and advice shall be attempted.

## DEFINITIONS

CHOKEHOLD – A Chokehold includes, but is not limited to, any pressure to the throat or windpipe, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

DEADLY FORCE – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm always constitutes deadly physical force.

DE-ESCALATION – The action of communicating verbally or non-verbally in an attempt to reduce, stabilize, or eliminate the immediacy of the threat. De-escalation may also be used to create the time needed to position additional resources to resolve the situation with the least amount of force necessary.

EXCESSIVE FORCE – Force that is greater than that which a reasonable officer, in the same situation, would use under the circumstances that existed and were known to that officer at the time force was used.

Pride          •          Service          •          Distinction

PA2618

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

MECHANICAL FORCE – Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance. Examples include Oleoresin Capsicum (OC) spray, impact weapons, batons, K-9's or restraining devices.

NON-DEADLY FORCE – Any use of force, physical or mechanical, other than what is considered deadly force. Non-deadly force is less than lethal force.

PHYSICAL CONTACT – Contact with a subject necessary to effectively accomplish a legitimate law enforcement objective, (e.g., guiding a subject into a police vehicle, holding a subject's arm while transporting, handcuffing, and maneuvering or securing a subject for a frisk).

PHYSICAL FORCE – Force necessary to overcome a subject's resistance to the police officer's exertion of authority, or threat or overt act of assault coupled with the present ability to execute the threat or assault and reasonable indication that the assault is imminent. Examples include, but are not limited to, bringing a resisting subject to the ground, using wrist-locks or arm-locks, striking with the hands or feet, or other similar methods of hand-to-hand defensive tactics.

ENHANCED MECHANICAL FORCE – An intermediate force option between mechanical force and deadly force, requiring a greater level of justification than that pertaining to physical or mechanical force, but a lower justification than that required for the use of deadly force. Examples include conducted energy devices and less-lethal ammunition.

REASONABLE BELIEF – An objective assessment based upon an evaluation of how a reasonable law enforcement officer with comparable training and experience would react to, or draw inferences from, the facts and circumstances confronting and known by the law enforcement officer at the scene.

SERIOUS PHYSICAL INJURY – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

SUBJECT – A suspect, prisoner, or other person over whom a Member of the Force is attempting to maintain custody or control, or direct.

VERBALIZATION – The use of a law enforcement officer's authority to exert control over a situation by means of verbal commands and gestures.

**PROCEDURE**

Force shall only be used as a last resort when necessary, to accomplish lawful objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques. Force shall never be used as a retaliatory or punitive measure.

Members of the Force shall use the least amount of force that is objectively reasonable, necessary, and proportional to safely achieve the legitimate law enforcement objective under the circumstances.

The non-deadly force options available to a Member of the Force are described below:

- Verbalization – Persuasion, warning, advice, command
- Escort Holds – Physical control established to direct or control
- OC Spray
- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.
- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

NOTE: Members of the Force shall carry and/ or use only Port Authority Police Department issued equipment.

Members of the Force are NOT authorized to use chokeholds. Furthermore, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, abdomen) in a manner that compresses the diaphragm. Moreover, under no circumstances shall Members of the Force use any contact with the neck area in order to prevent the destruction of evidence by ingestion.

In deciding whether the use of force is reasonable, a Member of the Force must consider the following:

- The nature and severity of the crime and/or circumstances
- The subject's actions
- Duration of the subject's actions
- Immediacy of the perceived harm or threat to the subject, Member of the Force, and/or bystanders.
- Whether the subject is attempting to evade arrest by fleeing, and the factors specific to flight set out below.
- Whether the subject is actively resisting control or custody.
- The number of Members of the Force as compared to the number of subjects.
- The age, size, and condition of the subject as compared to the Member(s) of the Force.
- If known, the subject's history of violence
- Whether the subject appears to be under the influence of a stimulant, which increases the likelihood of violence or affects the subject's pain tolerance.
- The presence of aggressive person(s)

Members of the Force are justified in using non-deadly force when they reasonably believe force is necessary to:

- Enforce lawful orders
- Control a violent or potentially violent suspect
- Protect themselves or others against the use of unlawful force
- Control a resistant Subject

Pride        •        Service        •        Distinction

Page **3** of **12**

PA2620

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

- Prevent a person from committing suicide or causing serious bodily harm to himself or herself.
- Stop or prevent a crime involving loss of property
- Stop or prevent a crime involving bodily harm or the threat of bodily harm.
- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey.

Any use of physical force shall be undertaken in accordance with the techniques taught at the Port Authority Police Academy.

<u>DE-ESCALATION</u>

Physical force shall only be used as a last resort and when necessary, to accomplish legitimate law enforcement objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques. When feasible, Members of the Force should employ de-escalation techniques, consistent with Police Academy training. De-escalation may be used to create the time needed to allow the situation to resolve itself or to position additional resources to resolve the situation with the least amount of force necessary. Time, distance, positioning, and effective communication skills can all be utilized to safely bring a situation under control. De-escalation techniques should be considered when utilizing them would not create an immediate threat to the public or place officers in unreasonable danger.

The following are approved mechanical and enhanced mechanical force devices:

- Department-issued Baton
- Department-issued Disorder Control Baton - Only to be carried when specifically authorized for duty at a particular incident.
- Police K-9 - Only to be used by a certified K-9 handler.
- Department-issued OC spray
- Department-issued Conducted Energy Device, for those officers who are trained and qualified.

A Member of the Force is authorized to use deadly physical force when and only when the Member reasonably believes that the use of deadly physical force is strictly necessary to:

- Protect the officer or another person from imminent danger of death or serious physical injury, and when doing so does not pose an inordinate risk of disproportional injury to any innocent persons.
- Prevent the escape of a fleeing suspect when (1) the officer has probable cause to believe the suspect has committed an offense in which the suspect caused or attempted to cause death or serious physical injury; and (2) the officer has a reasonable belief that the suspect will pose an imminent danger of death or serious physical injury should the escape succeed; and (3) the use of deadly force presents no substantial risk of injury to any innocent persons.

Pride　　　•　　　Service　　　•　　　Distinction

PA2621

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

If feasible, prior to the use of deadly force, the officer must identify himself/herself and state the intent to use such force. If the suspect heeds the warning, the officer is no longer justified in using deadly force.

## DUTY TO RENDER MEDICAL ASSISTANCE

After any use of force, and when the environment is safe, Members of the Force shall promptly render medical assistance, consistent with his/her level of training, to any injured persons or persons requesting medical attention.   There is also an affirmative duty to monitor individuals for potential medical intervention after any Member of the Force uses force and to immediately summon any additional, potentially necessary medical assistance.  This duty applies to all Members of the Force on scene and continues throughout any transportation and custody of the individual and is further described in General Order 100-12.  Particular attention should be paid to the following individuals:

- Pregnant
- Elderly
- Physically frail individuals
- Mentally ill or those under the influence of alcohol or drugs

## DUTY TO INTERVENE AND REPORT

All Members of the Force, regardless of rank, title, seniority, or status, have an affirmative duty to take steps to prevent any use of force that is illegal, excessive, or otherwise inconsistent with governing laws, regulations, or Port Authority Police Department policies.  If possible, this action should take place prior to the use of excessive, illegal, or otherwise inappropriate force by another Member of the Force.  All improper uses of force must be reported to a supervisor as soon as it is safe and reasonable to do so.  Use of force compliance is the responsibility of all Members of the Force and as such those who report illegal or inappropriate uses of force shall be protected from retaliation or other negative consequences.

## SPECIFIC RESTRICTIONS ON THE USE OF FIREARMS

Unholstering or pointing a firearm are tactics that should be used with great caution. The presence of a Member of the Force firearm, under the right circumstances, can discourage resistance and ensure officer safety in potentially dangerous situations without the need to resort to force. Unnecessarily or prematurely drawing a firearm could limit a Member of the Force's options in controlling a situation, could create greater anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the firearm. In general, Members of the Force may not discharge their weapons or use other deadly force:

- to signal for help
- to issue a warning shot
- to prevent property damage or loss
- to prevent the destruction of evidence

Pride    •    Service    •    Distinction

PA2622

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

A Member of the Force may not use a firearm if its use would in any way unjustifiably endanger innocent persons whom the Member of the Force is not seeking to retain in custody. If in using a firearm, a Member of the Force consciously disregards or fails to perceive substantial and unjustifiable risk of injury to innocent persons, the Member of the Force may be held criminally liable. Care and good judgment must be exercised in all instances involving the discharge of firearms.

- Deadly force shall not be used to subdue persons whose actions are only destructive to property.
- Deadly force shall not be used against persons whose conduct is only harmful to themselves.
- Firearms should remain holstered or secured until a Member of the Force reasonably believes that it may become necessary to use a firearm.

NOTE: As noted above, drawing a firearm prematurely or unnecessarily limits a Member of the Force's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a Member of the Force determines that the potential for serious physical injury is no longer present, the Member of the Force will holster the firearm as soon as practicable.

NOTE: Strict additional requirements must be met before Members of the Force may use deadly force against a driver or passenger of a moving vehicle.

While any discharge of a firearm entails some risk, discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. The safety of innocent people is jeopardized when a fleeing suspect is disabled and loses control of his or her vehicle. There is also a substantial risk of harm to occupants of the suspect vehicle who may not be involved, or involved to a lesser extent, in the actions which necessitated the use of deadly force.

Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, Members of the Force shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle, unless the officer reasonably believes:

- a person in the vehicle is threatening the Member of the Force or another person with deadly force by means other than the vehicle
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

## AUTHORIZED USES OF FIREARMS

Consistent with training, Members of the Force may point a firearm at a person only when circumstances create a reasonable belief that it may be necessary for the officer to use deadly force. When the officer no longer reasonably believes that deadly force may be necessary, the officer shall, as soon as practicable, secure or holster the firearm.

Pride　　　•　　　Service　　　•　　　Distinction

PA2623

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 32 of 81

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice, or qualification
- At competitive shooting events
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others).
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.).

PROCEDURES TO BE FOLLOWED UPON DISCHARGE OF A FIREARM

Any discharge of a firearm, except at in-service training, at a licensed pistol range, or during competitive shooting events, should be immediately reported to the Central Police Desk. A Use of Force Report (PA3979) must be completed at all Police Commands when a member of the force discharges a firearm.

If the Member of the Force is unable to prepare the Use of Force Report due to injury or death, the Tour Commander or designee will be responsible for the preparation of the report. The Commanding Officer will review the report and follow the procedure for reporting use of force incidents as outlined below.

County Prosecutors/District Attorneys may require the preparation and submission of additional reports. Commands shall comply with State/County/City reporting requirements in addition to preparing the reports as outlined.

The Member of the Force who discharged a weapon will submit a detailed incident report for review by:

- The facility Commanding Officer
- Police Integrity Unit
- Superintendent of Police

The Member of the Force who discharged a firearm will remain at the scene until the appropriate investigator arrives, unless:

- The Member of the Force is injured and requires medical treatment.
- The Member of the Force's presence at the scene would, as per the determination of the Incident Commander, result in the escalation of violence.

The Member of the Force who discharged a firearm is required to protect the firearm for examination and will be required to surrender the firearm to the Tour Commander or the Tour Commander's designee or investigating unit. A replacement weapon can be issued through the Central Police Desk 24 hours a day subject to supervisory approval.

PA2624

## RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, Police Desk personnel will undertake the following:

- Notify the Tour Commander
- Notify the Central Police Desk (CPD)
- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.
- At the Tour Commander's direction, notify the local police department, if applicable.
- Contact Emergency Medical Service (EMS) for medical aid, as needed.
- Maintain a chronological record of events
- Secure command video and audio tapes

## RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a Member of the Force has discharged a firearm, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.
- Request emergency medical assistance, if applicable.
- Request the presence of the Police Integrity Unit through the Central Police Desk.
- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.
- Notify the local police department, if applicable.
- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.
- Assist the police officers involved
- Retrieve and protect the firearm involved
- Assign supervisory personnel to conduct preliminary interview
- Assign police personnel to identify witnesses and record witnesses' statements
- Provide all information to investigative personnel upon arrival
- Assign police personnel to escort the injured officer and/or suspect to hospital, if applicable, and to further ensure that any evidence, including clothing, is protected, including any such items of clothing or evidence removed by medical personnel at the scene or the hospital.
- Notify affected outside Law Enforcement Agencies
- Notify the District Attorney's/Prosecutor's Office
- Ensure Use of Force Report(s) are completed by the end of tour
- Submit a use of force summary report to the Commanding Officer within twenty-four (24) hours.
- Notify the Absence Control Unit for purpose of scheduling the police officer whose firearm was discharged for medical services

Pride          •          Service          •          Distinction

PA2625

- Ensure the facility audio recording tapes have been secured, inclusive of radio and phone transmissions.
- Contact Media Relations to handle press inquiries

## COMMANDING OFFICER

- The Commanding Officer or executive level designee is responsible for the supervision of the Police Command activities, including criminal complaints, arrests, etc., related to the initial incident.
- The Commanding Officer or executive level designee shall ensure that the procedures established by this policy are adhered to as intended.
- The Commanding Officer or executive level designee will provide investigators with all relevant information and reports available at the command.

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

## RESPONSIBILITIES OF THE POLICE INTEGRITY UNIT (PIU)

The assigned PIU personnel will conduct an investigation to determine if the firearm discharge was intentional or accidental, and if the discharge complied with this policy. PIU will then prepare and submit a written report of the findings to the Superintendent of Police. Additionally, PIU will ensure that all evidence is made available to the appropriate prosecutorial authority.

## MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all Members of the Force who have discharged a firearm in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

## REPORTING THE USE OF FORCE

A Member of the Force who uses force, whether physical, mechanical, enhanced mechanical or deadly force, must file a Use of Force Report (PA 3979). A Use of Force Report should always accompany an Incident/Arrest Report where force was used. Each officer involved in an incident where he/she used force, must complete a separate Use of Force Report, however a single Incident Report may be used for the collective. Tour Commanders will ensure that all Use of Force Reports are reviewed for content and are completed in a timely manner.

Pride          •          Service          •          Distinction

PA2626

The following instructions are to be utilized for reporting use of force:

**Member of the Force:**
1. As soon as possible, notify a Patrol Supervisor of the use of force
2. Immediately provide first aid to any individuals who may be injured
3. Request an ambulance, if necessary
4. Complete an Incident Report in RMS/MOBLAN
5. Complete Use of Force report (PA3979)
6. Complete Employee Injury report (PA 0360), if applicable
7. Photograph any injuries to MOS, subject of the use of force and any individuals who may have been involved.
8. Comply with PAPD arrest or aided guidelines.

**Patrol Supervisor:**
1. Respond to the scene
2. Evaluate the need for first aid and Emergency Medical Services
3. Notify the Tour Commander
4. Canvass for witnesses and obtain statements
5. Notify Criminal Investigation Bureau (as necessary)
6. Review and forward to the Tour Commander all reports, photographs, and memo book copies from all MOS involved.

**Tour Commander:**
1. Respond to the scene as warranted
2. Conduct supervisory investigation
3. Review all reports and sign/endorse as appropriate
4. Notify Commanding Officer as necessary
5. Notify Duty Officer as necessary
6. Notify Inspector General Office as necessary
7. Prepare Use of Force Summary (PA4259) in all use of force incidents; The report should contain the Tour Commander's evaluation on whether the use of force was justified. The report should also include the following, but is not limited to:

   - Reason for officer's use of force
   - Description of suspect's apparent/alleged injuries
   - Medical treatment provided by police or emergency medical service (EMS)
   - Name, address, and phone number of independent witnesses
   - Notifications made, if applicable
   - Copy of EMS and/or hospital reports regarding the subject
   - Injuries sustained by police officer(s) present at the scene

Pride    •    Service    •    Distinction

PA2627

- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury
- All arrests and/or aided reports, if applicable
- Photographs of all injuries to police, if applicable
- Photographs of all injuries to subject(s), if applicable
- Report(s) from supervisor(s) present or dispatched to the scene
- Report(s) from other member(s) present or dispatched to the scene

8. Forward Use of Force Summary report and all reports to the Commanding Officer within twenty-four (24) hours of incident with all related forms and reports.

9. Forward Use of Force Summary and all reports to the Police Integrity Unit at paoigpiu@panynj.gov

**Commanding Officer:**
1. Review Use of Force Summary report and all reports
2. Notify Line Chief, as necessary
3. Ensure notifications were completed as required (i.e., Inspector General Office)
4. Prepare an endorsement and forward to Branch Chief for review.
   a. Endorsement if approved, forward
   b. Disapproved, take corrective measures and/or disciplinary action
5. Maintain original reports at the command in compliance with agency policies for record storage, security, and retention.

**Branch Chief:**
1. Review Commanding Officers Endorsement and all associated reports
2. Endorse as APPROVED or DISAPPROVED
   a. In the event the use of force was not justified and/or a violation of department policy, return to Commanding Officer for disciplinary action.
3. Forward to Risk Management and Compliance Officer

**Risk Management & Compliance Officer:**
1. Will be provided a complete copy of approved Use of Force Summary report.
2. Ensure that Use of Force RMS Module is completed for each use of force submitted.
   a. Scan and attach to the incident documents and photos
3. Include Office of Inspector General, Police Integrity Unit notifications and dispositions in the Use of Force RMS Module.
4. Compile data as requested by PAPD Executive Staff

Pride         •         Service         •         Distinction

PA2628

OFF-DUTY INCIDENTS

A Member of the Force involved in any off-duty incident resulting in the use of force will:
- Promptly notify the local police department and the Central Police Desk.
- Cooperate with the local agency involved in the investigation.
- Follow applicable sections of this General Order as required, for an on-duty incident.

TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as State/County/City and the Port Authority Police Department rules and regulations.


By Order of:


Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department


Pride          •          Service          •          Distinction

PA2629

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

 

# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## OPERATIONS ORDER

| Command(s) | ALL MEMBERS OF THE FORCE | Date Issued: | 06/07/2021 |
|---|---|---|---|
| Section: | | Date Revised: | 07/02/2021 |
| Issuing Authority: | Edward T. Cetnar | Order No: | 2021-OPS-40 |
| Subject: | **PATROL GUIDE UPDATE (USE OF FORCE)** | Page(s): | 1 of 1 |

Copy to:  J. Bilich, L. Klock, E. Gonzalez, S. Rotolo, G. Frank, M. Brown, M. Wilson, R. Bryan, G. Silva, J. Marino, K. Beard-Wilcher, K. Connelly, R. Darcy, R. Greenstein, DEA, LBA, PBA, SBA

The following General Order has been updated:

**Section**     **General Order**

100-13     Use of Force

The following changes have been made to this General Order:

- Due to a recent State of New York Supreme Court decision, the following line has been removed:
  - Furthermore, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, abdomen) in a manner that compresses the diaphragm.

Commanding Officers will ensure that the contents of this order are brought to the attention of all members of your command.

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride     •     Service     •     Distinction

PA2630



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | General Order 100-04 & 100-05 | Date Issued: | 06/07/2021 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | 07/02/2021 |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-13 |
| **Subject:** | **USE OF FORCE** | Page(s): | 1 of 12 |

**PURPOSE**

To provide Members of the Force with guidelines on the use of deadly force and non-deadly force.

**POLICY**

The Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting Police Officers with the lawful authority to use force to protect public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Members of the Force should exhaust all other reasonable means before resorting to the use of force. If feasible, and before force is used, reasonable alternatives such as persuasion, warning and advice shall be attempted.

**DEFINITIONS**

CHOKEHOLD – A Chokehold includes, but is not limited to, any pressure to the throat or windpipe, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

DEADLY FORCE – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm always constitutes deadly physical force.

DE-ESCALATION – The action of communicating verbally or non-verbally in an attempt to reduce, stabilize, or eliminate the immediacy of the threat. De-escalation may also be used to create the time needed to position additional resources to resolve the situation with the least amount of force necessary.

EXCESSIVE FORCE – Force that is greater than that which a reasonable officer, in the same situation, would use under the circumstances that existed and were known to that officer at the time force was used.

Pride            •            Service            •            Distinction

PA2631

MECHANICAL FORCE – Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.  Examples include Oleoresin Capsicum (OC) spray, impact weapons, batons, K-9's or restraining devices.

NON-DEADLY FORCE – Any use of force, physical or mechanical, other than what is considered deadly force.  Non-deadly force is less than lethal force.

PHYSICAL CONTACT – Contact with a subject necessary to effectively accomplish a legitimate law enforcement objective, (e.g., guiding a subject into a police vehicle, holding a subject's arm while transporting, handcuffing, and maneuvering or securing a subject for a frisk).

PHYSICAL FORCE – Force necessary to overcome a subject's resistance to the police officer's exertion of authority, or threat or overt act of assault coupled with the present ability to execute the threat or assault and reasonable indication that the assault is imminent. Examples include, but are not limited to, bringing a resisting subject to the ground, using wrist-locks or arm-locks, striking with the hands or feet, or other similar methods of hand-to-hand defensive tactics.

ENHANCED MECHANICAL FORCE – An intermediate force option between mechanical force and deadly force, requiring a greater level of justification than that pertaining to physical or mechanical force, but a lower justification than that required for the use of deadly force.  Examples include conducted energy devices and less-lethal ammunition.

REASONABLE BELIEF – An objective assessment based upon an evaluation of how a reasonable law enforcement officer with comparable training and experience would react to, or draw inferences from, the facts and circumstances confronting and known by the law enforcement officer at the scene.

SERIOUS PHYSICAL INJURY – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

SUBJECT – A suspect, prisoner, or other person over whom a Member of the Force is attempting to maintain custody or control, or direct.

VERBALIZATION – The use of a law enforcement officer's authority to exert control over a situation by means of verbal commands and gestures.

**PROCEDURE**

Force shall only be used as a last resort when necessary, to accomplish lawful objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques. Force shall never be used as a retaliatory or punitive measure.

Members of the Force shall use the least amount of force that is objectively reasonable, necessary, and proportional to safely achieve the legitimate law enforcement objective under the circumstances.

Pride             •             Service             •             Distinction

PA2632

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

The non-deadly force options available to a Member of the Force are described below:

- Verbalization – Persuasion, warning, advice, command
- Escort Holds – Physical control established to direct or control
- OC Spray
- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.
- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

NOTE: Members of the Force shall carry and/ or use only Port Authority Police Department issued equipment.

Members of the Force are NOT authorized to use chokeholds. Moreover, under no circumstances shall Members of the Force use any contact with the neck area in order to prevent the destruction of evidence by ingestion.

In deciding whether the use of force is reasonable, a Member of the Force must consider the following:

- The nature and severity of the crime and/or circumstances
- The subject's actions
- Duration of the subject's actions
- Immediacy of the perceived harm or threat to the subject, Member of the Force, and/or bystanders.
- Whether the subject is attempting to evade arrest by fleeing, and the factors specific to flight set out below.
- Whether the subject is actively resisting control or custody.
- The number of Members of the Force as compared to the number of subjects.
- The age, size, and condition of the subject as compared to the Member(s) of the Force.
- If known, the subject's history of violence
- Whether the subject appears to be under the influence of a stimulant, which increases the likelihood of violence or affects the subject's pain tolerance.
- The presence of aggressive person(s)

Members of the Force are justified in using non-deadly force when they reasonably believe force is necessary to:

- Enforce lawful orders
- Control a violent or potentially violent suspect
- Protect themselves or others against the use of unlawful force
- Control a resistant Subject

PA2633

- Prevent a person from committing suicide or causing serious bodily harm to himself or herself.
- Stop or prevent a crime involving loss of property
- Stop or prevent a crime involving bodily harm or the threat of bodily harm.
- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey.

Any use of physical force shall be undertaken in accordance with the techniques taught at the Port Authority Police Academy.

DE-ESCALATION

Physical force shall only be used as a last resort and when necessary, to accomplish legitimate law enforcement objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques.  When feasible, Members of the Force should employ de-escalation techniques, consistent with Police Academy training.  De-escalation may be used to create the time needed to allow the situation to resolve itself or to position additional resources to resolve the situation with the least amount of force necessary.  Time, distance, positioning, and effective communication skills can all be utilized to safely bring a situation under control.  De-escalation techniques should be considered when utilizing them would not create an immediate threat to the public or place officers in unreasonable danger.

The following are approved mechanical and enhanced mechanical force devices:

- Department-issued Baton
- Department-issued Disorder Control Baton - Only to be carried when specifically authorized for duty at a particular incident.
- Police K-9 - Only to be used by a certified K-9 handler.
- Department-issued OC spray
- Department-issued Conducted Energy Device, for those officers who are trained and qualified.

A Member of the Force is authorized to use deadly physical force when and only when the Member reasonably believes that the use of deadly physical force is strictly necessary to:

- Protect the officer or another person from imminent danger of death or serious physical injury, and when doing so does not pose an inordinate risk of disproportional injury to any innocent persons.
- Prevent the escape of a fleeing suspect when (1) the officer has probable cause to believe the suspect has committed an offense in which the suspect caused or attempted to cause death or serious physical injury; and (2) the officer has a reasonable belief that the suspect will pose an imminent danger of death or serious physical injury should the escape succeed; and (3) the use of deadly force presents no substantial risk of injury to any innocent persons.

Pride    •    Service    •    Distinction

PA2634

If feasible, prior to the use of deadly force, the officer must identify himself/herself and state the intent to use such force. If the suspect heeds the warning, the officer is no longer justified in using deadly force.

## DUTY TO RENDER MEDICAL ASSISTANCE

After any use of force, and when the environment is safe, Members of the Force shall promptly render medical assistance, consistent with his/her level of training, to any injured persons or persons requesting medical attention.  There is also an affirmative duty to monitor individuals for potential medical intervention after any Member of the Force uses force and to immediately summon any additional, potentially necessary medical assistance.  This duty applies to all Members of the Force on scene and continues throughout any transportation and custody of the individual and is further described in General Order 100-12.  Particular attention should be paid to the following individuals:

- Pregnant
- Elderly
- Physically frail individuals
- Mentally ill or those under the influence of alcohol or drugs

## DUTY TO INTERVENE AND REPORT

All Members of the Force, regardless of rank, title, seniority, or status, have an affirmative duty to take steps to prevent any use of force that is illegal, excessive, or otherwise inconsistent with governing laws, regulations, or Port Authority Police Department policies.  If possible, this action should take place prior to the use of excessive, illegal, or otherwise inappropriate force by another Member of the Force.  All improper uses of force must be reported to a supervisor as soon as it is safe and reasonable to do so.  Use of force compliance is the responsibility of all Members of the Force and as such those who report illegal or inappropriate uses of force shall be protected from retaliation or other negative consequences.

## SPECIFIC RESTRICTIONS ON THE USE OF FIREARMS

Unholstering or pointing a firearm are tactics that should be used with great caution. The presence of a Member of the Force firearm, under the right circumstances, can discourage resistance and ensure officer safety in potentially dangerous situations without the need to resort to force. Unnecessarily or prematurely drawing a firearm could limit a Member of the Force's options in controlling a situation, could create greater anxiety on the part of citizens, and may result in an unwarranted or accidental discharge of the firearm. In general, Members of the Force may not discharge their weapons or use other deadly force:

- to signal for help
- to issue a warning shot
- to prevent property damage or loss
- to prevent the destruction of evidence

Pride          •          Service          •          Distinction

A Member of the Force may not use a firearm if its use would in any way unjustifiably endanger innocent persons whom the Member of the Force is not seeking to retain in custody. If in using a firearm, a Member of the Force consciously disregards or fails to perceive substantial and unjustifiable risk of injury to innocent persons, the Member of the Force may be held criminally liable. Care and good judgment must be exercised in all instances involving the discharge of firearms.

- Deadly force shall not be used to subdue persons whose actions are only destructive to property.
- Deadly force shall not be used against persons whose conduct is only harmful to themselves.
- Firearms should remain holstered or secured until a Member of the Force reasonably believes that it may become necessary to use a firearm.

NOTE: As noted above, drawing a firearm prematurely or unnecessarily limits a Member of the Force's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a Member of the Force determines that the potential for serious physical injury is no longer present, the Member of the Force will holster the firearm as soon as practicable.

NOTE: Strict additional requirements must be met before Members of the Force may use deadly force against a driver or passenger of a moving vehicle.

While any discharge of a firearm entails some risk, discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. The safety of innocent people is jeopardized when a fleeing suspect is disabled and loses control of his or her vehicle. There is also a substantial risk of harm to occupants of the suspect vehicle who may not be involved, or involved to a lesser extent, in the actions which necessitated the use of deadly force.

Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, Members of the Force shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle, unless the officer reasonably believes:

- a person in the vehicle is threatening the Member of the Force or another person with deadly force by means other than the vehicle
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

AUTHORIZED USES OF FIREARMS

Consistent with training, Members of the Force may point a firearm at a person only when circumstances create a reasonable belief that it may be necessary for the officer to use deadly force. When the officer no longer reasonably believes that deadly force may be necessary, the officer shall, as soon as practicable, secure or holster the firearm.

Pride • Service • Distinction

PA2636

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice, or qualification
- At competitive shooting events
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others).
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.).

PROCEDURES TO BE FOLLOWED UPON DISCHARGE OF A FIREARM

Any discharge of a firearm, except at in-service training, at a licensed pistol range, or during competitive shooting events, should be immediately reported to the Central Police Desk. A Use of Force Report (PA3979) must be completed at all Police Commands when a member of the force discharges a firearm.

If the Member of the Force is unable to prepare the Use of Force Report due to injury or death, the Tour Commander or designee will be responsible for the preparation of the report. The Commanding Officer will review the report and follow the procedure for reporting use of force incidents as outlined below.

County Prosecutors/District Attorneys may require the preparation and submission of additional reports. Commands shall comply with State/County/City reporting requirements in addition to preparing the reports as outlined.

The Member of the Force who discharged a weapon will submit a detailed incident report for review by:

- The facility Commanding Officer
- Police Integrity Unit
- Superintendent of Police

The Member of the Force who discharged a firearm will remain at the scene until the appropriate investigator arrives, unless:

- The Member of the Force is injured and requires medical treatment.
- The Member of the Force's presence at the scene would, as per the determination of the Incident Commander, result in the escalation of violence.

The Member of the Force who discharged a firearm is required to protect the firearm for examination and will be required to surrender the firearm to the Tour Commander or the Tour Commander's designee or investigating unit. A replacement weapon can be issued through the Central Police Desk 24 hours a day subject to supervisory approval.

Pride         •         Service         •         Distinction

PA2637

## RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, Police Desk personnel will undertake the following:

- Notify the Tour Commander
- Notify the Central Police Desk (CPD)
- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.
- At the Tour Commander's direction, notify the local police department, if applicable.
- Contact Emergency Medical Service (EMS) for medical aid, as needed.
- Maintain a chronological record of events
- Secure command video and audio tapes

## RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a Member of the Force has discharged a firearm, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.
- Request emergency medical assistance, if applicable.
- Request the presence of the Police Integrity Unit through the Central Police Desk.
- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.
- Notify the local police department, if applicable.
- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.
- Assist the police officers involved
- Retrieve and protect the firearm involved
- Assign supervisory personnel to conduct preliminary interview
- Assign police personnel to identify witnesses and record witnesses' statements
- Provide all information to investigative personnel upon arrival
- Assign police personnel to escort the injured officer and/or suspect to hospital, if applicable, and to further ensure that any evidence, including clothing, is protected, including any such items of clothing or evidence removed by medical personnel at the scene or the hospital.
- Notify affected outside Law Enforcement Agencies
- Notify the District Attorney's/Prosecutor's Office
- Ensure Use of Force Report(s) are completed by the end of tour
- Submit a use of force summary report to the Commanding Officer within twenty-four (24) hours.
- Notify the Absence Control Unit for purpose of scheduling the police officer whose firearm was discharged for medical services

Pride     •     Service     •     Distinction

PA2638

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 47 of 81

- Ensure the facility audio recording tapes have been secured, inclusive of radio and phone transmissions.
- Contact Media Relations to handle press inquiries

## COMMANDING OFFICER

- The Commanding Officer or executive level designee is responsible for the supervision of the Police Command activities, including criminal complaints, arrests, etc., related to the initial incident.
- The Commanding Officer or executive level designee shall ensure that the procedures established by this policy are adhered to as intended.
- The Commanding Officer or executive level designee will provide investigators with all relevant information and reports available at the command.

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

## RESPONSIBILITIES OF THE POLICE INTEGRITY UNIT (PIU)

The assigned PIU personnel will conduct an investigation to determine if the firearm discharge was intentional or accidental, and if the discharge complied with this policy. PIU will then prepare and submit a written report of the findings to the Superintendent of Police. Additionally, PIU will ensure that all evidence is made available to the appropriate prosecutorial authority.

## MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all Members of the Force who have discharged a firearm in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

## REPORTING THE USE OF FORCE

A Member of the Force who uses force, whether physical, mechanical, enhanced mechanical or deadly force, must file a Use of Force Report (PA 3979). A Use of Force Report should always accompany an Incident/Arrest Report where force was used. Each officer involved in an incident where he/she used force, must complete a separate Use of Force Report, however a single Incident Report may be used for the collective. Tour Commanders will ensure that all Use of Force Reports are reviewed for content and are completed in a timely manner.

Pride          •          Service          •          Distinction

PA2639

The following instructions are to be utilized for reporting use of force:

**Member of the Force:**
1. As soon as possible, notify a Patrol Supervisor of the use of force
2. Immediately provide first aid to any individuals who may be injured
3. Request an ambulance, if necessary
4. Complete an Incident Report in RMS/MOBLAN
5. Complete Use of Force report (PA3979)
6. Complete Employee Injury report (PA 0360), if applicable
7. Photograph any injuries to MOS, subject of the use of force and any individuals who may have been involved.
8. Comply with PAPD arrest or aided guidelines.

**Patrol Supervisor:**
1. Respond to the scene
2. Evaluate the need for first aid and Emergency Medical Services
3. Notify the Tour Commander
4. Canvass for witnesses and obtain statements
5. Notify Criminal Investigation Bureau (as necessary)
6. Review and forward to the Tour Commander all reports, photographs, and memo book copies from all MOS involved.

**Tour Commander:**
1. Respond to the scene as warranted
2. Conduct supervisory investigation
3. Review all reports and sign/endorse as appropriate
4. Notify Commanding Officer as necessary
5. Notify Duty Officer as necessary
6. Notify Inspector General Office as necessary
7. Prepare Use of Force Summary (PA4259) in all use of force incidents; The report should contain the Tour Commander's evaluation on whether the use of force was justified. The report should also include the following, but is not limited to:

   - Reason for officer's use of force
   - Description of suspect's apparent/alleged injuries
   - Medical treatment provided by police or emergency medical service (EMS)
   - Name, address, and phone number of independent witnesses
   - Notifications made, if applicable
   - Copy of EMS and/or hospital reports regarding the subject
   - Injuries sustained by police officer(s) present at the scene

Pride          •          Service          •          Distinction

PA2640

- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury
- All arrests and/or aided reports, if applicable
- Photographs of all injuries to police, if applicable
- Photographs of all injuries to subject(s), if applicable
- Report(s) from supervisor(s) present or dispatched to the scene
- Report(s) from other member(s) present or dispatched to the scene

8. Forward Use of Force Summary report and all reports to the Commanding Officer within twenty-four (24) hours of incident with all related forms and reports.

9. Forward Use of Force Summary and all reports to the Police Integrity Unit at paoigpiu@panynj.gov

**Commanding Officer:**
1. Review Use of Force Summary report and all reports
2. Notify Line Chief, as necessary
3. Ensure notifications were completed as required (i.e., Inspector General Office)
4. Prepare an endorsement and forward to Branch Chief for review.
   a. Endorsement if approved, forward
   b. Disapproved, take corrective measures and/or disciplinary action
5. Maintain original reports at the command in compliance with agency policies for record storage, security, and retention.

**Branch Chief:**
1. Review Commanding Officers Endorsement and all associated reports
2. Endorse as APPROVED or DISAPPROVED
   a. In the event the use of force was not justified and/or a violation of department policy, return to Commanding Officer for disciplinary action.
3. Forward to Risk Management and Compliance Officer

**Risk Management & Compliance Officer:**
1. Will be provided a complete copy of approved Use of Force Summary report.
2. Ensure that Use of Force RMS Module is completed for each use of force submitted.
   a. Scan and attach to the incident documents and photos
3. Include Office of Inspector General, Police Integrity Unit notifications and dispositions in the Use of Force RMS Module.
4. Compile data as requested by PAPD Executive Staff

Pride       •       Service       •       Distinction

PA2641

## OFF-DUTY INCIDENTS

A Member of the Force involved in any off-duty incident resulting in the use of force will:

- Promptly notify the local police department and the Central Police Desk.
- Cooperate with the local agency involved in the investigation.
- Follow applicable sections of this General Order as required, for an on-duty incident.

## TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as State/County/City and the Port Authority Police Department rules and regulations.

By Order of:

_____
Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride  •  Service  •  Distinction

PA2642

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | General Order 100-04 & 100-05 | Date Issued: | 06/07/2021 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | **01/13/2022** |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-13 |
| **Subject:** | **USE OF FORCE** | Page(s): | 1 of 12 |

**PURPOSE**

To provide Members of the Force with guidelines on the use of deadly force and non-deadly force.

**POLICY**

The Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting Police Officers with the lawful authority to use force to protect public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Members of the Force should exhaust all other reasonable means before resorting to the use of force. If feasible, and before force is used, reasonable alternatives such as persuasion, warning and advice shall be attempted.

**DEFINITIONS**

CHOKEHOLD – A Chokehold includes, but is not limited to, any pressure to the throat or windpipe, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

DEADLY FORCE – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm always constitutes deadly physical force.

DE-ESCALATION – The action of communicating verbally or non-verbally in an attempt to reduce, stabilize, or eliminate the immediacy of the threat. De-escalation may also be used to create the time needed to position additional resources to resolve the situation with the least amount of force necessary.

EXCESSIVE FORCE – Force that is greater than that which a reasonable officer, in the same situation, would use under the circumstances that existed and were known to that officer at the time force was used.

PA2643

MECHANICAL FORCE – Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.  Examples include Oleoresin Capsicum (OC) spray, impact weapons, batons, K-9's or restraining devices.

NON-DEADLY FORCE – Any use of force, physical or mechanical, other than what is considered deadly force.  Non-deadly force is less than lethal force.

PHYSICAL CONTACT – Contact with a subject necessary to effectively accomplish a legitimate law enforcement objective, (e.g., guiding a subject into a police vehicle, holding a subject's arm while transporting, handcuffing, and maneuvering or securing a subject for a frisk).

PHYSICAL FORCE – Force necessary to overcome a subject's resistance to the police officer's exertion of authority, or threat or overt act of assault coupled with the present ability to execute the threat or assault and reasonable indication that the assault is imminent. Examples include, but are not limited to, bringing a resisting subject to the ground, using wrist-locks or arm-locks, striking with the hands or feet, or other similar methods of hand-to-hand defensive tactics.

ENHANCED MECHANICAL FORCE – An intermediate force option between mechanical force and deadly force, requiring a greater level of justification than that pertaining to physical or mechanical force, but a lower justification than that required for the use of deadly force.  Examples include conducted energy devices and less-lethal ammunition.

REASONABLE BELIEF – An objective assessment based upon an evaluation of how a reasonable law enforcement officer with comparable training and experience would react to, or draw inferences from, the facts and circumstances confronting and known by the law enforcement officer at the scene.

SERIOUS PHYSICAL INJURY – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

SPECIAL OPERATIONS DIVISION – A group of officers who are specially selected, trained, and equipped to handle high-risk incidents, including, but not limited to, those involving snipers, barricaded persons, warrant services, apprehensions, act of terrorism, and other situations or activities as deemed necessary by command leadership.

SUBJECT – A suspect, prisoner, or other person over whom a Member of the Force is attempting to maintain custody or control, or direct.

VERBALIZATION – The use of a law enforcement officer's authority to exert control over a situation by means of verbal commands and gestures.

**PROCEDURE**

Force shall only be used as a last resort, when necessary, to accomplish lawful objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-

Pride          •          Service          •          Distinction

PA2644

escalation techniques. Force shall never be used as a retaliatory or punitive measure.

Members of the Force shall use the least amount of force that is objectively reasonable, necessary, and proportional to safely achieve the legitimate law enforcement objective under the circumstances.

The non-deadly force options available to a Member of the Force are described below:

- Verbalization – Persuasion, warning, advice, command
- Escort Holds – Physical control established to direct or control
- OC Spray
- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.
- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9 or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

NOTE: Members of the Force shall carry and/ or use only Port Authority Police Department issued equipment.

Members of the Force are NOT authorized to use chokeholds. Moreover, under no circumstances shall Members of the Force use any contact with the neck area in order to prevent the destruction of evidence by ingestion.

In deciding whether the use of force is reasonable, a Member of the Force must consider the following:

- The nature and severity of the crime and/or circumstances
- The subject's actions
- Duration of the subject's actions
- Immediacy of the perceived harm or threat to the subject, Member of the Force, and/or bystanders.
- Whether the subject is attempting to evade arrest by fleeing, and the factors specific to flight set out below.
- Whether the subject is actively resisting control or custody.
- The number of Members of the Force as compared to the number of subjects.
- The age, size, and condition of the subject as compared to the Member(s) of the Force.
- If known, the subject's history of violence
- Whether the subject appears to be under the influence of a stimulant, which increases the likelihood of violence or affects the subject's pain tolerance.
- The presence of aggressive person(s)

PA2645

Members of the Force are justified in using non-deadly force when they reasonably believe force is necessary to:

- Enforce lawful orders
- Control a violent or potentially violent suspect
- Protect themselves or others against the use of unlawful force
- Control a resistant Subject
- Prevent a person from committing suicide or causing serious bodily harm to himself or herself.
- Stop or prevent a crime involving loss of property
- Stop or prevent a crime involving bodily harm or the threat of bodily harm.
- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey.

Any use of physical force shall be undertaken in accordance with the techniques taught at the Port Authority Police Academy.

DE-ESCALATION

Physical force shall only be used as a last resort and when necessary, to accomplish legitimate law enforcement objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques. When feasible, Members of the Force should employ de-escalation techniques, consistent with Police Academy training. De-escalation may be used to create the time needed to allow the situation to resolve itself or to position additional resources to resolve the situation with the least amount of force necessary. Time, distance, positioning, and effective communication skills can all be utilized to safely bring a situation under control. De-escalation techniques should be considered when utilizing them would not create an immediate threat to the public or place officers in unreasonable danger.

The following are approved mechanical and enhanced mechanical force devices:

- Department-issued Baton
- Department-issued Disorder Control Baton - Only to be carried when specifically authorized for duty at a particular incident.
- Police K-9 - Only to be used by a certified K-9 handler.
- Department-issued OC spray
- Department-issued Conducted Energy Device, for those officers who are trained and qualified.

A Member of the Force is authorized to use deadly physical force when and only when the Member reasonably believes that the use of deadly physical force is strictly necessary to:

Pride        •        Service        •        Distinction

PA2646

- Protect the officer or another person from imminent danger of death or serious physical injury, and when doing so does not pose an inordinate risk of disproportional injury to any innocent persons.
- Prevent the escape of a fleeing suspect when (1) the officer has probable cause to believe the suspect has committed an offense in which the suspect caused or attempted to cause death or serious physical injury; and (2) the officer has a reasonable belief that the suspect will pose an imminent danger of death or serious physical injury should the escape succeed; and (3) the use of deadly force presents no substantial risk of injury to any innocent persons.

If feasible, prior to the use of deadly force, the officer must identify himself/herself and state the intent to use such force. If the suspect heeds the warning, the officer is no longer justified in using deadly force.

## DUTY TO RENDER MEDICAL ASSISTANCE

After any use of force, and when the environment is safe, Members of the Force shall promptly render medical assistance, consistent with his/her level of training, to any injured persons or persons requesting medical attention. There is also an affirmative duty to monitor individuals for potential medical intervention after any Member of the Force uses force and to immediately summon any additional, potentially necessary medical assistance. This duty applies to all Members of the Force on scene and continues throughout any transportation and custody of the individual and is further described in General Order 100-12. Particular attention should be paid to the following individuals:

- Pregnant
- Elderly
- Physically frail individuals
- Mentally ill or those under the influence of alcohol or drugs

## DUTY TO INTERVENE AND REPORT

All Members of the Force, regardless of rank, title, seniority, or status, have an affirmative duty to take steps to prevent any use of force that is illegal, excessive, or otherwise inconsistent with governing laws, regulations, or Port Authority Police Department policies. If possible, this action should take place prior to the use of excessive, illegal, or otherwise inappropriate force by another Member of the Force. All improper uses of force must be reported to a supervisor as soon as it is safe and reasonable to do so. Use of force compliance is the responsibility of all Members of the Force and as such those who report illegal or inappropriate uses of force shall be protected from retaliation or other negative consequences.

## SPECIFIC RESTRICTIONS ON THE USE OF FIREARMS

Unholstering or pointing a firearm are tactics that should be used with great caution. The presence of a Member of the Force firearm, under the right circumstances, can discourage resistance and ensure officer safety in potentially dangerous situations without the need to resort to force. Unnecessarily or prematurely drawing a firearm could limit a Member of the Force's options in controlling a situation, could create greater anxiety on the part of citizens, and may result in an unwarranted or accidental

PA2647

Case 1:21-cv-06226-NRB    Document 80-13    Filed 05/12/25    Page 56 of 81

discharge of the firearm. In general, Members of the Force may not discharge their weapons or use other deadly force:

- to signal for help
- to issue a warning shot
- to prevent property damage or loss
- to prevent the destruction of evidence

A Member of the Force may not use a firearm if its use would in any way unjustifiably endanger innocent persons whom the Member of the Force is not seeking to retain in custody. If in using a firearm, a Member of the Force consciously disregards or fails to perceive substantial and unjustifiable risk of injury to innocent persons, the Member of the Force may be held criminally liable. Care and good judgment must be exercised in all instances involving the discharge of firearms.

- Deadly force shall not be used to subdue persons whose actions are only destructive to property.
- Deadly force shall not be used against persons whose conduct is only harmful to themselves.
- Firearms should remain holstered or secured until a Member of the Force reasonably believes that it may become necessary to use a firearm.

NOTE: As noted above, drawing a firearm prematurely or unnecessarily limits a Member of the Force's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a Member of the Force determines that the potential for serious physical injury is no longer present, the Member of the Force will holster the firearm as soon as practicable.

NOTE: A member of the Special Operations Division engaged in a tactical operation shall be required to report the pointing of a firearm only when the pointing involves a sustained active engagement with a person in order to gain that person's compliance. A member of a tactical team who quickly "sweeps" a room during an operation needs not to report each person at whom a firearm was momentarily pointed during the sweep.

NOTE: Strict additional requirements must be met before Members of the Force may use deadly force against a driver or passenger of a moving vehicle.

While any discharge of a firearm entails some risk, discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. The safety of innocent people is jeopardized when a fleeing suspect is disabled and loses control of his or her vehicle. There is also a substantial risk of harm to occupants of the suspect vehicle who may not be involved, or involved to a lesser extent, in the actions which necessitated the use of deadly force.

Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, Members of the Force shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle, unless the officer reasonably believes:

Pride          •          Service          •          Distinction

PA2648

- a person in the vehicle is threatening the Member of the Force or another person with deadly force by means other than the vehicle
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

## AUTHORIZED USES OF FIREARMS

Consistent with training, Members of the Force may point a firearm at a person only when circumstances create a reasonable belief that it may be necessary for the officer to use deadly force. When the officer no longer reasonably believes that deadly force may be necessary, the officer shall, as soon as practicable, secure or holster the firearm.

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice, or qualification
- At competitive shooting events
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others).
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.).

## PROCEDURES TO BE FOLLOWED UPON DISCHARGE OF A FIREARM

Any discharge of a firearm, except at in-service training, at a licensed pistol range, or during competitive shooting events, should be immediately reported to the Central Police Desk. A Use of Force Report (PA3979) must be completed at all Police Commands when a member of the force discharges a firearm.

If the Member of the Force is unable to prepare the Use of Force Report due to injury or death, the Tour Commander or designee will be responsible for the preparation of the report. The Commanding Officer will review the report and follow the procedure for reporting use of force incidents as outlined below.

County Prosecutors/District Attorneys may require the preparation and submission of additional reports. Commands shall comply with State/County/City reporting requirements in addition to preparing the reports as outlined.

The Member of the Force who discharged a weapon will submit a detailed incident report for review by:

- The facility Commanding Officer
- Police Integrity Unit
- Superintendent of Police

Pride            •            Service            •            Distinction

PA2649

The Member of the Force who discharged a firearm will remain at the scene until the appropriate investigator arrives, unless:

- The Member of the Force is injured and requires medical treatment.
- The Member of the Force's presence at the scene would, as per the determination of the Incident Commander, result in the escalation of violence.

The Member of the Force who discharged a firearm is required to protect the firearm for examination and will be required to surrender the firearm to the Tour Commander or the Tour Commander's designee or investigating unit. A replacement weapon can be issued through the Central Police Desk 24 hours a day subject to supervisory approval.

RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, Police Desk personnel will undertake the following:

- Notify the Tour Commander
- Notify the Central Police Desk (CPD)
- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.
- At the Tour Commander's direction, notify the local police department, if applicable.
- Contact Emergency Medical Service (EMS) for medical aid, as needed.
- Maintain a chronological record of events
- Secure command video and audio tapes

RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a Member of the Force has discharged a firearm, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.
- Request emergency medical assistance, if applicable.
- Request the presence of the Police Integrity Unit through the Central Police Desk.
- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.
- Notify the local police department, if applicable.
- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.
- Assist the police officers involved
- Retrieve and protect the firearm involved
- Assign supervisory personnel to conduct preliminary interview
- Assign police personnel to identify witnesses and record witnesses' statements

Pride          •          Service          •          Distinction

PA2650

- Provide all information to investigative personnel upon arrival
- Assign police personnel to escort the injured officer and/or suspect to hospital, if applicable, and to further ensure that any evidence, including clothing, is protected, including any such items of clothing or evidence removed by medical personnel at the scene or the hospital.
- Notify affected outside Law Enforcement Agencies
- Notify the District Attorney's/Prosecutor's Office
- Ensure Use of Force Report(s) are completed by the end of tour
- Submit a use of force summary report to the Commanding Officer within twenty-four (24) hours.
- Notify the Absence Control Unit for purpose of scheduling the police officer whose firearm was discharged for medical services
- Ensure the facility audio recording tapes have been secured, inclusive of radio and phone transmissions.
- Contact Media Relations to handle press inquiries

## COMMANDING OFFICER

- The Commanding Officer or executive level designee is responsible for the supervision of the Police Command activities, including criminal complaints, arrests, etc., related to the initial incident.
- The Commanding Officer or executive level designee shall ensure that the procedures established by this policy are adhered to as intended.
- The Commanding Officer or executive level designee will provide investigators with all relevant information and reports available at the command.

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

## RESPONSIBILITIES OF THE POLICE INTEGRITY UNIT (PIU)

The assigned PIU personnel will conduct an investigation to determine if the firearm discharge was intentional or accidental, and if the discharge complied with this policy. PIU will then prepare and submit a written report of the findings to the Superintendent of Police. Additionally, PIU will ensure that all evidence is made available to the appropriate prosecutorial authority.

## MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all Members of the Force who have discharged a firearm in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

Pride     •     Service     •     Distinction

PA2651

REPORTING THE USE OF FORCE

A Member of the Force who uses force, whether physical, mechanical, enhanced mechanical or deadly force, must file a Use of Force Report (PA 3979). A Use of Force Report should always accompany an Incident/Arrest Report where force was used. Each officer involved in an incident where he/she used force, must complete a separate Use of Force Report, however a single Incident Report may be used for the collective. Tour Commanders will ensure that all Use of Force Reports are reviewed for content and are completed in a timely manner.

The following instructions are to be utilized for reporting use of force:

**Member of the Force:**
1. As soon as possible, notify a Patrol Supervisor of the use of force
2. Immediately provide first aid to any individuals who may be injured
3. Request an ambulance, if necessary
4. Complete an Incident Report in RMS/MOBLAN
5. Complete Use of Force report (PA3979)
6. Complete Employee Injury report (PA 0360), if applicable
7. Photograph any injuries to MOS, subject of the use of force and any individuals who may have been involved.
8. Comply with PAPD arrest or aided guidelines.

**Patrol Supervisor:**
1. Respond to the scene
2. Evaluate the need for first aid and Emergency Medical Services
3. Notify the Tour Commander
4. Canvass for witnesses and obtain statements
5. Notify Criminal Investigation Bureau (as necessary)
6. Review and forward to the Tour Commander all reports, photographs, and memo book copies from all MOS involved.

**Tour Commander:**
1. Respond to the scene as warranted
2. Conduct supervisory investigation
3. Review all reports and sign/endorse as appropriate
4. Notify Commanding Officer as necessary
5. Notify Duty Officer as necessary
6. Notify Inspector General Office as necessary
7. Prepare Use of Force Summary (PA4259) in all use of force incidents; The report should contain the Tour Commander's evaluation on whether the use of force was justified. The report should also include the following, but is not limited to:

Pride          •          Service          •          Distinction

PA2652

- Reason for officer's use of force
- Description of suspect's apparent/alleged injuries
- Medical treatment provided by police or emergency medical service (EMS)
- Name, address, and phone number of independent witnesses
- Notifications made, if applicable
- Copy of EMS and/or hospital reports regarding the subject
- Injuries sustained by police officer(s) present at the scene
- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury
- All arrests and/or aided reports, if applicable
- Photographs of all injuries to police, if applicable
- Photographs of all injuries to subject(s), if applicable
- Report(s) from supervisor(s) present or dispatched to the scene
- Report(s) from other member(s) present or dispatched to the scene

8. Forward Use of Force Summary report and all reports to the Commanding Officer within twenty-four (24) hours of incident with all related forms and reports.

9. Forward Use of Force Summary and all reports to the Police Integrity Unit at paoigpiu@panynj.gov

**Commanding Officer:**

1. Review Use of Force Summary report and all reports
2. Notify Line Chief, as necessary
3. Ensure notifications were completed as required (i.e., Inspector General Office)
4. Prepare an endorsement and forward to Branch Chief for review.
   a. Endorsement if approved, forward
   b. Disapproved, take corrective measures and/or disciplinary action
5. Maintain original reports at the command in compliance with agency policies for record storage, security, and retention.

**Branch Chief:**

1. Review Commanding Officers Endorsement and all associated reports
2. Endorse as APPROVED or DISAPPROVED
   a. In the event the use of force was not justified and/or a violation of department policy, return to Commanding Officer for disciplinary action.
3. Forward to Risk Management and Compliance Officer

Pride        •        Service        •        Distinction

PA2653

**Risk Management & Compliance Officer:**

1. Will be provided a complete copy of approved Use of Force Summary report.
2. Ensure that Use of Force RMS Module is completed for each use of force submitted.
   a. Scan and attach to the incident documents and photos
3. Include Office of Inspector General, Police Integrity Unit notifications and dispositions in the Use of Force RMS Module.
4. Compile data as requested by PAPD Executive Staff

## OFF-DUTY INCIDENTS

A Member of the Force involved in any off-duty incident resulting in the use of force will:
- Promptly notify the local police department and the Central Police Desk.
- Cooperate with the local agency involved in the investigation.
- Follow applicable sections of this General Order as required, for an on-duty incident.

## TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as State/County/City and the Port Authority Police Department rules and regulations.

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride          •          Service          •          Distinction

PA2654

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

 

# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## OPERATIONS ORDER

| Command(s) | ALL MEMBERS OF THE FORCE | Date Issued: | 01/13/2022 |
|---|---|---|---|
| Section: | | Date Revised: | **05/20/2022** |
| Issuing Authority: | Edward T. Cetnar | Order No: | 2022-OPS-04 |
| Subject: | **PATROL GUIDE UPDATE (USE OF FORCE) REVISION** | Page(s): | 1 of 1 |

Copy to: J. Bilich, E. Gonzalez, S. Rotolo, G. Frank,
M. Brown, M. Wilson, R. Bryan, G. Silva, J. Marino, J. Gay, J. Ortiz,
K. Beard-Wilcher, K. Connelly, A. Rodriguez-Betances, R. Darcy,
DEA, LBA, PBA, SBA

The following General Order has been updated:

**Section**        **General Order**

100-13        Use of Force

The following changes have been made to this General Order:

- The following section has been added:
  - Additionally, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, or abdomen) in a manner that compresses the diaphragm.

Commanding Officers will ensure that the contents of this order are brought to the attention of all members of your command.

By Order of:

_____
Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride        •        Service        •        Distinction

PA2655

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | General Order 100-04 & 100-05 | Date Issued: | 06/07/2021 |
|---|---|---|---|
| Section: | General Regulations | Date Revised: | **05/20/2022** |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 100-13 |
| **Subject:** | **USE OF FORCE** | Page(s): | 1 of 12 |

**PURPOSE**

To provide Members of the Force with guidelines on the use of deadly force and non-deadly force.

**POLICY**

The Port Authority Police Department recognizes and respects the value and special integrity of each human life. In vesting Police Officers with the lawful authority to use force to protect public welfare, a careful balancing of all human interests is required. Therefore, it is the policy of the Port Authority Police Department that police officers shall use only that force that is reasonably necessary to effectively bring an incident under control, while protecting the lives of the officer or another.

Members of the Force should exhaust all other reasonable means before resorting to the use of force. If feasible, and before force is used, reasonable alternatives such as persuasion, warning, and advice shall be attempted.

**DEFINITIONS**

CHOKEHOLD – A Chokehold includes, but is not limited to, any pressure to the throat or windpipe, which may prevent or hinder breathing or reduce air intake or restrict blood-flow to the brain.

DEADLY FORCE – Physical force, which, under the circumstances in which it is used, is readily capable of causing death or serious physical injury. The use of a firearm always constitutes deadly physical force.

DE-ESCALATION – The action of communicating verbally or non-verbally in an attempt to reduce, stabilize, or eliminate the immediacy of the threat. De-escalation may also be used to create the time needed to position additional resources to resolve the situation with the least amount of force necessary.

EXCESSIVE FORCE – Force that is greater than that which a reasonable officer, in the same situation, would use under the circumstances that existed and were known to that officer at the time force was used.

Pride     •     Service     •     Distinction

PA2656

MECHANICAL FORCE – Involves the use of some device or substance, other than a firearm, to overcome a subject's resistance.  Examples include Oleoresin Capsicum (OC) spray, impact weapons, batons, K-9's or restraining devices.

NON-DEADLY FORCE – Any use of force, physical or mechanical, other than what is considered deadly force.  Non-deadly force is less than lethal force.

PHYSICAL CONTACT – Contact with a subject necessary to effectively accomplish a legitimate law enforcement objective, (e.g., guiding a subject into a police vehicle, holding a subject's arm while transporting, handcuffing, and maneuvering or securing a subject for a frisk).

PHYSICAL FORCE – Force necessary to overcome a subject's resistance to the police officer's exertion of authority, or threat or overt act of assault coupled with the present ability to execute the threat or assault and reasonable indication that the assault is imminent. Examples include, but are not limited to, bringing a resisting subject to the ground, using wrist-locks or arm-locks, striking with the hands or feet, or other similar methods of hand-to-hand defensive tactics.

ENHANCED MECHANICAL FORCE – An intermediate force option between mechanical force and deadly force, requiring a greater level of justification than that pertaining to physical or mechanical force, but a lower justification than that required for the use of deadly force.  Examples include conducted energy devices and less-lethal ammunition.

REASONABLE BELIEF – An objective assessment based upon an evaluation of how a reasonable law enforcement officer with comparable training and experience would react to, or draw inferences from, the facts and circumstances confronting and known by the law enforcement officer at the scene.

SERIOUS PHYSICAL INJURY – Physical injury which creates a substantial risk of death, or which causes death or serious and protracted disfigurement, protracted impairment of health or protracted loss or impairment of the function of any body organ.

SPECIAL OPERATIONS DIVISION – A group of officers who are specially selected, trained, and equipped to handle high-risk incidents, including, but not limited to, those involving snipers, barricaded persons, warrant services, apprehensions, act of terrorism, and other situations or activities as deemed necessary by command leadership.

SUBJECT – A suspect, prisoner, or other person over whom a Member of the Force is attempting to maintain custody or control, or direct.

VERBALIZATION – The use of a law enforcement officer's authority to exert control over a situation by means of verbal commands and gestures.

**PROCEDURE**

Force shall only be used as a last resort, when necessary, to accomplish lawful objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-

Pride    •    Service    •    Distinction

Page **2** of **12**

PA2657

escalation techniques. Force shall never be used as a retaliatory or punitive measure.

Members of the Force shall use the least amount of force that is objectively reasonable, necessary, and proportional to safely achieve the legitimate law enforcement objective under the circumstances.

The non-deadly force options available to a Member of the Force are described below:

- Verbalization – Persuasion, warning, advice, command
- Escort Holds – Physical control established to direct or control
- OC Spray
- Compliance Holds – Intended to overcome resistance through firm grip or come along holds.
- Intermediate force intended to overcome or counteract resistance or force through the use of control tactics such as physical force, impact weapon, baton, CED, K-9, or restraining devices. The use of equipment unauthorized or not issued by this department, such as blackjacks, slap gloves, saps, etc., is prohibited.

NOTE: Members of the Force shall carry and/ or use only Port Authority Police Department-issued equipment.

Members of the Force are NOT authorized to use chokeholds. Additionally, Members of the Force are prohibited from sitting, kneeling, or standing on the subject's torso (chest, back, or abdomen) in a manner that compresses the diaphragm. Moreover, under no circumstances shall Members of the Force use any contact with the neck area in order to prevent the destruction of evidence by ingestion.

In deciding whether the use of force is reasonable, a Member of the Force must consider the following:

- The nature and severity of the crime and/or circumstances
- The subject's actions
- Duration of the subject's actions
- Immediacy of the perceived harm or threat to the subject, Member of the Force, and/or bystanders.
- Whether the subject is attempting to evade arrest by fleeing, and the factors specific to flight set out below.
- Whether the subject is actively resisting control or custody.
- The number of Members of the Force as compared to the number of subjects.
- The age, size, and condition of the subject as compared to the Member(s) of the Force.
- If known, the subject's history of violence
- Whether the subject appears to be under the influence of a stimulant, which increases the likelihood of violence or affects the subject's pain tolerance.
- The presence of aggressive person(s)

Pride          •          Service          •          Distinction

PA2658

Members of the Force are justified in using non-deadly force when they reasonably believe force is necessary to:

- Enforce lawful orders
- Control a violent or potentially violent suspect
- Protect themselves or others against the use of unlawful force
- Control a resistant Subject
- Prevent a person from committing suicide or causing serious bodily harm to himself or herself.
- Stop or prevent a crime involving loss of property
- Stop or prevent a crime involving bodily harm or the threat of bodily harm.
- Effect an arrest for an offense or crime under the laws of the States of New York and New Jersey.

Any use of physical force shall be undertaken in accordance with the techniques taught at the Port Authority Police Academy.

## DE-ESCALATION

Physical force shall only be used as a last resort and when necessary, to accomplish legitimate law enforcement objectives that cannot reasonably be achieved through verbal commands, critical decision making, tactical deployment, or de-escalation techniques. When feasible, Members of the Force should employ de-escalation techniques, consistent with Police Academy training. De-escalation may be used to create the time needed to allow the situation to resolve itself or to position additional resources to resolve the situation with the least amount of force necessary. Time, distance, positioning, and effective communication skills can all be utilized to safely bring a situation under control. De-escalation techniques should be considered when utilizing them would not create an immediate threat to the public or place officers in unreasonable danger.

The following are approved mechanical and enhanced mechanical force devices:

- Department-issued Baton
- Department-issued Disorder Control Baton - Only to be carried when specifically authorized for duty at a particular incident.
- Police K-9 - Only to be used by a certified K-9 handler.
- Department-issued OC spray
- Department-issued Conducted Energy Device, for those officers who are trained and qualified.

A Member of the Force is authorized to use deadly physical force when and only when the Member reasonably believes that the use of deadly physical force is strictly necessary to:

Pride          •          Service          •          Distinction

PA2659

- Protect the officer or another person from imminent danger of death or serious physical injury, and when doing so does not pose an inordinate risk of disproportional injury to any innocent persons.
- Prevent the escape of a fleeing suspect when (1) the officer has probable cause to believe the suspect has committed an offense in which the suspect caused or attempted to cause death or serious physical injury; and (2) the officer has a reasonable belief that the suspect will pose an imminent danger of death or serious physical injury should the escape succeed; and (3) the use of deadly force presents no substantial risk of injury to any innocent persons.

If feasible, prior to the use of deadly force, the officer must identify himself/herself and state the intent to use such force. If the suspect heeds the warning, the officer is no longer justified in using deadly force.

DUTY TO RENDER MEDICAL ASSISTANCE

After any use of force, and when the environment is safe, Members of the Force shall promptly render medical assistance, consistent with his/her level of training, to any injured persons or persons requesting medical attention.  There is also an affirmative duty to monitor individuals for potential medical intervention after any Member of the Force uses force and to immediately summon any additional, potentially necessary medical assistance.  This duty applies to all Members of the Force on scene and continues throughout any transportation and custody of the individual and is further described in General Order 100-12.  Particular attention should be paid to the following individuals:

- Pregnant
- Elderly
- Physically frail individuals
- Mentally ill or those under the influence of alcohol or drugs

DUTY TO INTERVENE AND REPORT

All Members of the Force, regardless of rank, title, seniority, or status, have an affirmative duty to take steps to prevent any use of force that is illegal, excessive, or otherwise inconsistent with governing laws, regulations, or Port Authority Police Department policies.  If possible, this action should take place prior to the use of excessive, illegal, or otherwise inappropriate force by another Member of the Force.  All improper uses of force must be reported to a supervisor as soon as it is safe and reasonable to do so.  Use of force compliance is the responsibility of all Members of the Force and as such those who report illegal or inappropriate uses of force shall be protected from retaliation or other negative consequences.

SPECIFIC RESTRICTIONS ON THE USE OF FIREARMS

Unholstering or pointing a firearm are tactics that should be used with great caution. The presence of a Member of the Force firearm, under the right circumstances, can discourage resistance and ensure officer safety in potentially dangerous situations without the need to resort to force. Unnecessarily or prematurely drawing a firearm could limit a Member of the Force's options in controlling a situation, could create greater anxiety on the part of citizens, and may result in an unwarranted or accidental

Pride            •            Service            •            Distinction

PA2660

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

discharge of the firearm. In general, Members of the Force may not discharge their weapons or use other deadly force:

- to signal for help
- to issue a warning shot
- to prevent property damage or loss
- to prevent the destruction of evidence

A Member of the Force may not use a firearm if its use would in any way unjustifiably endanger innocent persons whom the Member of the Force is not seeking to retain in custody. If in using a firearm, a Member of the Force consciously disregards or fails to perceive substantial and unjustifiable risk of injury to innocent persons, the Member of the Force may be held criminally liable. Care and good judgment must be exercised in all instances involving the discharge of firearms.

- Deadly force shall not be used to subdue persons whose actions are only destructive to property.
- Deadly force shall not be used against persons whose conduct is only harmful to themselves.
- Firearms should remain holstered or secured until a Member of the Force reasonably believes that it may become necessary to use a firearm.

NOTE: As noted above, drawing a firearm prematurely or unnecessarily limits a Member of the Force's options in controlling a situation and may result in unwarranted or accidental discharge of the firearm. The decision to display or draw a firearm should be based on an articulable belief that the potential for serious physical injury is present. When a Member of the Force determines that the potential for serious physical injury is no longer present, the Member of the Force will holster the firearm as soon as practicable.

NOTE: A member of the Special Operations Division engaged in a tactical operation shall be required to report the pointing of a firearm only when the pointing involves a sustained active engagement with a person in order to gain that person's compliance. A member of a tactical team who quickly "sweeps" a room during an operation needs not to report each person at whom a firearm was momentarily pointed during the sweep.

NOTE: Strict additional requirements must be met before Members of the Force may use deadly force against a driver or passenger of a moving vehicle.

While any discharge of a firearm entails some risk, discharging a firearm at or from a moving vehicle entails a greater risk of death or serious injury to innocent persons. The safety of innocent people is jeopardized when a fleeing suspect is disabled and loses control of his or her vehicle. There is also a substantial risk of harm to occupants of the suspect vehicle who may not be involved, or involved to a lesser extent, in the actions which necessitated the use of deadly force.

Due to this greater risk, and considering that firearms are not generally effective in bringing moving vehicles to a rapid halt, Members of the Force shall not fire from a moving vehicle, or at the driver or occupant of a moving vehicle, unless the officer reasonably believes:

Pride          •          Service          •          Distinction

Page **6** of **12**

PA2661

- a person in the vehicle is threatening the Member of the Force or another person with deadly force by means other than the vehicle
- the vehicle is operated in a manner deliberately intended to strike an officer or another person, and all other reasonable means of defense have been exhausted (or are not present or practical), which includes moving out of the path of the vehicle.

## AUTHORIZED USES OF FIREARMS

Consistent with training, Members of the Force may point a firearm at a person only when circumstances create a reasonable belief that it may be necessary for the officer to use deadly force. When the officer no longer reasonably believes that deadly force may be necessary, the officer shall, as soon as practicable, secure or holster the firearm.

Police officers may also discharge a weapon under the following circumstances:

- During training exercises, practice, or qualification
- At competitive shooting events
- To destroy an animal that represents a threat to public safety. (The destruction of vicious animals should be guided by the same restriction on the use of firearms as set forth for self-defense and the defense and safety of others).
- To destroy an animal as a humanitarian measure where the animal is seriously injured. An injured animal may only be destroyed after any reasonable attempts have been made to request assistance from the agency responsible for the disposal of animals (Humane Society, Game Warden, etc.).

## PROCEDURES TO BE FOLLOWED UPON DISCHARGE OF A FIREARM

Any discharge of a firearm, except at in-service training, at a licensed pistol range, or during competitive shooting events, should be immediately reported to the Central Police Desk. A Use of Force Report (PA3979) must be completed at all Police Commands when a member of the force discharges a firearm.

If the Member of the Force is unable to prepare the Use of Force Report due to injury or death, the Tour Commander or designee will be responsible for the preparation of the report. The Commanding Officer will review the report and follow the procedure for reporting use of force incidents as outlined below.

County Prosecutors/District Attorneys may require the preparation and submission of additional reports. Commands shall comply with State/County/City reporting requirements in addition to preparing the reports as outlined.

The Member of the Force who discharged a weapon will submit a detailed incident report for review by:

- The facility Commanding Officer
- Police Integrity Unit
- Superintendent of Police

PA2662

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

The Member of the Force who discharged a firearm will remain at the scene until the appropriate investigator arrives, unless:

- The Member of the Force is injured and requires medical treatment.
- The Member of the Force's presence at the scene would, as per the determination of the Incident Commander, result in the escalation of violence.

The Member of the Force who discharged a firearm is required to protect the firearm for examination and will be required to surrender the firearm to the Tour Commander or the Tour Commander's designee or investigating unit. A replacement weapon can be issued through the Central Police Desk 24 hours a day subject to supervisory approval.

RESPONSIBILITIES OF DESK PERSONNEL UPON NOTIFICATION THAT A FIREARM HAS BEEN DISCHARGED

Upon notification that a firearm has been discharged, Police Desk personnel will undertake the following:

- Notify the Tour Commander
- Notify the Central Police Desk (CPD)
- At the direction of the Tour Commander, request the presence of the Police Integrity Unit through the CPD.
- At the Tour Commander's direction, notify the local police department, if applicable.
- Contact Emergency Medical Service (EMS) for medical aid, as needed.
- Maintain a chronological record of events
- Secure command video and audio tapes

RESPONSIBILITIES OF THE TOUR COMMANDER

Upon being notified that a Member of the Force has discharged a firearm, the Tour Commander or designee will:

- Proceed immediately to the scene of the discharge for any on duty incident.
- Request emergency medical assistance, if applicable.
- Request the presence of the Police Integrity Unit through the Central Police Desk.
- Coordinate with the Police Integrity Unit through CPD to determine if uniformed supervisory personnel will be dispatched to the scene for off duty incidents.
- Notify the local police department, if applicable.
- If available, assign field supervisors to secure the immediate area and establish crime scene, if appropriate.
- Assist the police officers involved
- Retrieve and protect the firearm involved
- Assign supervisory personnel to conduct preliminary interview
- Assign police personnel to identify witnesses and record witnesses' statements

Pride        •        Service        •        Distinction

PA2663

- Provide all information to investigative personnel upon arrival
- Assign police personnel to escort the injured officer and/or suspect to hospital, if applicable, and to further ensure that any evidence, including clothing, is protected, including any such items of clothing or evidence removed by medical personnel at the scene or the hospital.
- Notify affected outside Law Enforcement Agencies
- Notify the District Attorney's/Prosecutor's Office
- Ensure Use of Force Report(s) are completed by the end of tour
- Submit a use of force summary report to the Commanding Officer within twenty-four (24) hours.
- Notify the Absence Control Unit for purpose of scheduling the police officer whose firearm was discharged for medical services
- Ensure the facility audio recording tapes have been secured, inclusive of radio and phone transmissions.
- Contact Media Relations to handle press inquiries

COMMANDING OFFICER

- The Commanding Officer or executive level designee is responsible for the supervision of the Police Command activities, including criminal complaints, arrests, etc., related to the initial incident.
- The Commanding Officer or executive level designee shall ensure that the procedures established by this policy are adhered to as intended.
- The Commanding Officer or executive level designee will provide investigators with all relevant information and reports available at the command.

The Commanding Officer may evaluate the incident with involved personnel and make recommendations to the Superintendent of Police in the following areas:

- Training
- Tactical Operations
- Supervision
- Communications

RESPONSIBILITIES OF THE POLICE INTEGRITY UNIT (PIU)

The assigned PIU personnel will conduct an investigation to determine if the firearm discharge was intentional or accidental, and if the discharge complied with this policy. PIU will then prepare and submit a written report of the findings to the Superintendent of Police. Additionally, PIU will ensure that all evidence is made available to the appropriate prosecutorial authority.

MEDICAL APPOINTMENT SUBSEQUENT TO DISCHARGE OF FIREARM

As expeditiously as possible, but not later than 24 hours after the incident, the Office of Medical Services (OMS) will evaluate all Members of the Force who have discharged a firearm in the line of duty. OMS will determine if the officer is fit for duty, not fit for duty, or fit for duty with restrictions.

Pride         •         Service         •         Distinction

PA2664

REPORTING THE USE OF FORCE

A Member of the Force who uses force, whether physical, mechanical, enhanced mechanical or deadly force, must file a Use of Force Report (PA 3979).  A Use of Force Report should always accompany an Incident/Arrest Report where force was used.  Each officer involved in an incident where he/she used force, must complete a separate Use of Force Report, however a single Incident Report may be used for the collective.  Tour Commanders will ensure that all Use of Force Reports are reviewed for content and are completed in a timely manner.

The following instructions are to be utilized for reporting use of force:

**Member of the Force:**
1. As soon as possible, notify a Patrol Supervisor of the use of force
2. Immediately provide first aid to any individuals who may be injured
3. Request an ambulance, if necessary
4. Complete an Incident Report in RMS/MOBLAN
5. Complete Use of Force report (PA3979)
6. Complete Employee Injury report (PA 0360), if applicable
7. Photograph any injuries to MOS, subject of the use of force and any individuals who may have been involved.
8. Comply with PAPD arrest or aided guidelines.

**Patrol Supervisor:**
1. Respond to the scene
2. Evaluate the need for first aid and Emergency Medical Services
3. Notify the Tour Commander
4. Canvass for witnesses and obtain statements
5. Notify Criminal Investigation Bureau (as necessary)
6. Review and forward to the Tour Commander all reports, photographs, and memo book copies from all MOS involved.

**Tour Commander:**
1. Respond to the scene as warranted
2. Conduct supervisory investigation
3. Review all reports and sign/endorse as appropriate
4. Notify Commanding Officer as necessary
5. Notify Duty Officer as necessary
6. Notify Inspector General Office as necessary
7. Prepare Use of Force Summary (PA4291) in all use of force incidents; The report should contain the Tour Commander's evaluation on whether the use of force was justified.  The report should also include the following, but is not limited to:

Pride          •          Service          •          Distinction

PA2665

- Reason for officer's use of force
- Description of suspect's apparent/alleged injuries
- Medical treatment provided by police or emergency medical service (EMS)
- Name, address, and phone number of independent witnesses
- Notifications made, if applicable
- Copy of EMS and/or hospital reports regarding the subject
- Injuries sustained by police officer(s) present at the scene
- EMS, hospital treatment and Port Authority Employee Injury Report(s) documenting the officer(s) injury
- All arrests and/or aided reports, if applicable
- Photographs of all injuries to police, if applicable
- Photographs of all injuries to subject(s), if applicable
- Report(s) from supervisor(s) present or dispatched to the scene
- Report(s) from other member(s) present or dispatched to the scene

8. Forward Use of Force Summary report and all reports to the Commanding Officer within twenty-four (24) hours of incident with all related forms and reports.

9. Forward Use of Force Summary and all reports to the Police Integrity Unit at paoigpiu@panynj.gov

**Commanding Officer:**

1. Review Use of Force Summary report and all reports
2. Notify Line Chief, as necessary
3. Ensure notifications were completed as required (i.e., Inspector General Office)
4. Prepare an endorsement and forward to Branch Chief for review.
   a. Endorsement if approved, forward
   b. Disapproved, take corrective measures and/or disciplinary action
5. Maintain original reports at the command in compliance with agency policies for record storage, security, and retention.

**Branch Chief:**

1. Review Commanding Officers Endorsement and all associated reports
2. Endorse as APPROVED or DISAPPROVED
   a. In the event the use of force was not justified and/or a violation of department policy, return to Commanding Officer for disciplinary action.
3. Forward to Risk Management and Compliance Officer

PA2666

**Risk Management & Compliance Officer:**

1. Will be provided a complete copy of approved Use of Force Summary report.
2. Ensure that Use of Force RMS Module is completed for each use of force submitted.
   a. Scan and attach to the incident documents and photos
3. Include Office of Inspector General, Police Integrity Unit notifications and dispositions in the Use of Force RMS Module.
4. Compile data as requested by PAPD Executive Staff

OFF-DUTY INCIDENTS

A Member of the Force involved in any off-duty incident resulting in the use of force will:
- Promptly notify the local police department and the Central Police Desk.
- Cooperate with the local agency involved in the investigation.
- Follow applicable sections of this General Order as required, for an on-duty incident.

TRAINING

The Police Academy will conduct semi-annual training for all officers on the lawful and appropriate use of force and deadly force. This training must conform with current statutory and case law standards, as well as State/County/City and the Port Authority Police Department rules and regulations.

By Order of:

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



## THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| Replaces: | POI 4-12 | Date Issued: | 06/09/15 |
|---|---|---|---|
| Section: | Uniforms and Equipment | Date Revised: | |
| Issuing Authority: | Michael A. Fedorko | Procedure No: | 500-12 |
| **Subject:** | **OLEORESIN CAPSICUM (OC) / "PEPPER SPRAY"** | Page(s): | 1 of 3 |

### PURPOSE

To inform members of the service of circumstances under which Oleoresin Capsicum (O.C.) also known as "Pepper Spray" may be discharged and to record instances where OC spray has been discharged.

### POLICY

O.C. spray may be used when a member reasonably believes it is necessary to effect an arrest of a resisting suspect, for self-defense or defense of another from unlawful force, or to take a resisting emotionally disturbed person into custody. O.C. spray may not be used in situations that do not require physical force. Members of the service will use O.C. Spray in accordance with the guidelines and procedures set forth in this instruction as well as the guidelines set forth in General Order 100-05 (Use of Non-Deadly Force).

### DEFINITION

Oleoresin Capsicum (OC): is the natural extraction from the cayenne pepper plant. It causes temporary swelling of mucus membranes of the eyes and airways, thereby incapacitating subjects by limiting vision and making breathing difficult.

### PROCEDURE

Authorization

Only members of the service who have completed the prescribed Police Academy course of instruction are authorized to carry this device. Members of the service will only carry departmental issued O.C. pepper spray.

NOTE: Only members of ESU are authorized to carry the large capacity OC.

O.C. may be used:

| Pride | Service | Distinction |
|---|---|---|

PA2668

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

- When physical force is necessary.
- After a verbal warning unless it is impractical, unreasonable or dangerous to do so.
- To deter an animal that represents a threat to public safety.

Prohibited use

OC Spray:

- Is not authorized for use off-duty.
- Will not be used on subjects who passively resist arrest. (Subject intentionally becomes limp/offers no physical resistance).
- Will not be used on subjects who are elderly, young children, pregnant women or persons with known disability or respiratory conditions, unless they pose a substantial risk of injury to the officer or to the public.
- Will not be used once the active resistance has ceased.
- Will not be used for any illicit or unlawful purpose, such as a means of punishment or interrogation.

Effects of O.C.

Within several seconds of being sprayed by O.C., a subject will display symptoms of temporary blindness, have difficulty breathing, burning sensation in the throat and nausea.

O.C. spray will not automatically stop all subjects, and even when it does incapacitate, the effects are temporary. Members should therefore be ready to use other appropriate force options and tactics.

Member of the Service

Subjects will be handcuffed as soon as possible after being sprayed.

Members of the service should be alert to any indications that the individual needs medical assistance.

The contaminated subject should, as soon as practicable, be exposed to fresh air and eyes flushed with copious amounts of water. The subject should be advised to remove contact lenses.

Inform the individual not to rub the affected area or apply salves, creams or commercial eyewashes.
Officers shall closely monitor sprayed subjects and immediately summon medical attention if the sprayed subject exhibits any of the following conditions:

- Breathing difficulties, sweating profusely, or loses consciousness
- Significantly suffers from the effects of O.C. more than 20 minutes after being sprayed
- Sprayed subject requests medical attention.

Pride                                      Service                                      Distinction

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

Subject sprayed should be encouraged to relax and wait for the symptoms to dissipate.

Reporting Procedures

A supervisor shall be notified as soon as possible.

In all cases, whether medical attention is required or not, an Aided report (PA 2696) will be completed in addition to a Use of Force report (PA 3979) any other required reports.

The letters O.C. followed by the serial number of the canister will be written in the upper left hand corner of the Criminal Complaint Report/Aided Report. An explanation of why O.C. was used will be articulated in the narrative portion of the CCR/Aided Report.

When a subject is transferred to the custody of another authority, (e.g. local jail or hospital) the receiving authority must be advised that the subject has been exposed to O.C. pepper spray.

Inspection of "OC" Canisters

The ranking superior officer or his /her designee will inspect O.C. canisters, during roll call formation. The inspecting supervisor will check the canister for dents, debris, and date of manufacture or other problems that might render the canister inoperative.

Replacement of O.C. Spray

A replacement is required when the canister has less than ½ of the product and/or a period of five (5) years from the date of manufacture.  A brief handwritten report and the canister will be submitted to the Commanding Officer. A replacement canister will be issued at the command from a supply provided by Police Headquarters.

Disposal of Spent Canisters

Commands will return spent canisters to the Police Equipment Sergeant at Police Headquarters. Spent canisters will be replaced one for one by the Equipment Sergeant.

The Police Headquarters Equipment Sergeant will dispose of all spent canisters. Prior to discarding a used canister, the remaining product will be emptied in the approved manner. Once the canister is empty, it will be disposed of in the same manner in which any aerosol can is disposed of.


_____
Michael A. Fedorko
Superintendent of Police/
Director, Public Safety Department


Pride                                        Service                                        Distinction

PA2670

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER



# THE PORT AUTHORITY OF NEW YORK & NEW JERSEY

## GENERAL ORDER

| | | Date Issued: | 10/23/15 |
|---|---|---|---|
| Section: | Command Operations | Date Revised: | 10/21/20 |
| Issuing Authority: | Edward T. Cetnar | Procedure No: | 1000-19 |
| **Subject:** | **CRIME/VIOLATIONS ABOARD AIRCRAFT** | Page(s): | 1 of 3 |

### I. PURPOSE

To provide guidelines to all police personnel for the processing of incidents involving person's onboard flights arriving at or departing from Port Authority airports.

### II. POLICY

It is the policy of the Port Authority Police Department that all crimes/violations alleged, and/or committed while onboard an aircraft are processed in a manner consistent with Federal and State laws. According to 49 U.S.C. § 46501(1), an aircraft is "in flight" from the moment when all external doors are closed following embarkation until the moment when one such door is opened for disembarkation. The Federal Bureau of Investigation (FBI) has primary jurisdiction when a plane is "in flight". The Port Authority Police Department's jurisdiction begins when a plane is parked at the gate of one of our facilities with its cabin door open. An aircraft pilot in command of an aircraft is directly responsible for, and is the final authority as to, the operation of that aircraft. Therefore, when requested to respond to an incident that has taken place onboard an aircraft, the following procedure will apply:

### III. PROCEDURE

A. Upon notification to the police desk of an incident onboard an aircraft, the Tour Commander shall be notified immediately.

B. The Tour Commander, or Patrol Sergeant, shall respond to the incident location and ascertain as much information as possible, to include the following:
- Name and flight number of the airline
- Exact location where the incident took place
- All information necessary to establish probable cause
- Location of the departure point
- Name and address of the flight crew
- Name and address of all complainants
- Name and address of all credible witnesses

Pride　　　　•　　　　Service　　　　•　　　　Distinction

PA2671

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

- List of charges that are alleged/committed during the incident
- Secure any investigative statements from all credible witnesses, complainants and flight crew

C. Once a supervisor has ascertained as much information as necessary, the Tour Commander shall establish if:
   - The Port Authority Police has jurisdiction over the incident
   - Probable cause has been established
   - All credible complainants and witnesses are willing to proceed

D. The Tour Commander, or Patrol Sergeant will ensure that the Federal Bureau of Investigation (FBI) local office, the Transportation Safety Administration (TSA) and Airport Operations are notified of the incident.  The Tour Commander or his/her designee shall ascertain from the FBI and/or other agencies with a jurisdictional interest whether or not they wish to pursue the matter.

E. The Tour Commander will ensure that a separate notification is made to the Port Authority Police Department FBI JTTF Detective Lieutenant.

F. If the FBI or other agencies elect to exercise jurisdiction over the incident, the Tour Commander or his/her designee shall assist the FBI or other agency exercising jurisdiction.

   1. If the FBI or other agencies decline prosecution and the Tour Commander has established that the incident occurred on Port Authority property or within jurisdictional limits, and all the elements in Paragraph C have been established, the Tour Commander will proceed with local prosecution if warranted.

   2. If the FBI or other agencies decline prosecution and the incident occurred outside of Port Authority jurisdiction or one or more of the elements in Paragraph C are missing, the Tour Commander shall notify the prosecutor/district attorney and upon his/her approval, refer all parties to criminal or civil court.

NOTE: Prior to the release of any persons in the custody of the FBI or other agencies, the Tour Commander shall follow the procedure in Sub. F.

G. The supervisor shall ensure that all necessary documentation is completed to include the following:
   - Incident Report (NCIR/CCR)
   - All arrest and court paperwork
   - FAR Violations Report

Pride          •          Service          •          Distinction

PA2672

CONFIDENTIAL SUBJECT TO CONFIDENTIALITY ORDER

## IV.    REMOVAL OF PASSENGERS FOR NON-CRIMINAL MATTERS

When responding to calls for service involving the removal of passengers from an aircraft for non-criminal matters, (i.e., overbooked flight, intoxicated passenger, etc.), it is the policy of this Department that no passenger will be removed unless:

- The Captain of the aircraft or other authorized airline representative requests the removal, pursuant to 49 U.S.C. § 44902 (Permissive Refusal) and;
- The local office of the FBI, TSA and Airport Operations have been notified of the request to remove the passenger or;
- The removal is required for medical purposes where an individual is no longer able to care for themselves

When it has been determined that a person must be involuntarily removed from an aircraft and above criteria has been met:

- An on-scene supervisor must witness the Captain of the aircraft or other authorized airline representative formally issue three (3) verbal warnings to exit the aircraft
- If necessary, the supervisor on scene will request that the airline remove all passengers from the aircraft to:
  - Ensure the safety of passengers in proximity to the subject
  - Officer safety
- If necessary, the on-scene patrol supervisor will request the response of ESU to assist
- The subject will only be removed once the situation is deemed safe by the on-scene supervisor, or the aircraft has been deplaned
- All removals will be conducted in accordance with General Order 100-05 Use of Non-Deadly Force

By Order of:

_____

Edward T. Cetnar
Superintendent of Police/
Director, Public Safety Department

Pride    •    Service    •    Distinction

PA2673