UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------------------X

ALEXEY V. TARASOV, ESQ., Administrator of the      Case No.: 21-cv-6226 (NRB)
Estate of EVGENIY LAGODA, Deceased, and
GRIGORY TIKHOPLAV,

Plaintiffs,

-against-

PORT AUTHORITY OF NEW YORK AND

NEW JERSEY, and PORT AUTHORITY OF NEW
YORK AND NEW JERSEY POLICE DEPARTMENT
a/k/a PORT AUTHORITY POLICE DEPARTMENT a/k/a
PAPD, PAPD OFFICER MICHAEL BUGIADA, PAPD
OFFICER ROBERT JOSEPH, PAPD OFFICER
JONATHAN PAPIA, PAPD OFFICER PAUL
MEZZACAPPA, and PAPD OFFICER JONATHAN
DURAN,

Defendants.

------------------------------------------------------------------------X

**DEFENDANTS' REPLY MEMORANDUM OF LAW**

## TABLE OF CONTENTS

Page(s)

PRELIMINARY STATEMENT ........................................................................................................ 1

STATEMENT OF FACTS .............................................................................................................. 3

ARGUMENT .................................................................................................................................. 3

    Point I .......................................................................................................................................... 3

    Plaintiffs' State Law Claims are Barred Against the Port Authority by their Failure to Timely
    Serve a Notice of Claim .............................................................................................................. 3

    Plaintiffs Abandoned Their Motion Filed In State Court And Should Not Be Entitled to
    Refile Same At This Late Juncture ............................................................................................. 5

    Plaintiffs's Late Request to Refile Their State Motion For Leave to Commence An Action
    Out of Time Should Be Denied ................................................................................................... 6

    Point II ........................................................................................................................................ 7

    Plaintiffs Failed To Raise A Genuine Issue of Fact With Respect To Their Failure-To-Train
    Theory ......................................................................................................................................... 7

        A.    The Port Authority's Training Was Adequate and Did Not Cause Any Constitutional
            Violation .............................................................................................................................. 7

    Point III ..................................................................................................................................... 10

    The Individual Defendants are Entitled to Qualified Immunity as their Actions Were
    Objectively Reasonable Under the Circumstances .................................................................... 10

    Point IV ..................................................................................................................................... 12

    Punitive Damages Cannot Be Assessed Against the Port Authority ......................................... 12

CONCLUSION ............................................................................................................................. 13

## TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Avant v. Cnty. of Erie,*
No. 20-CV-1689-LJV-HKS, 2024 WL 1856828 (W.D.N.Y. Apr. 29, 2024),
*appeal withdrawn*, No. 24-1501, 2024 WL 4019488 (2d Cir. Aug. 22, 2024). .....................7, 8

*Caceres v. Port Auth. of New York & New Jersey,*
631 F.3d 620 (2d Cir. 2011)......................................................................................................3, 6

*City of Canton v. Harris,*
489 u.s. 378 (1989) .........................................................................................................................8

*City of Newport v. Fact Concerts, Inc.,*
453 U.S. 247, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981).............................................................12

*Gabin v. Greenwich House, Inc.,*
210 A.D.3d 497 (2022) ...................................................................................................................5

*Hernandez v. New York City Health & Hosps. Corp.,*
78 N.Y.2d 687 (1991)......................................................................................................................4

*Holden v. Port Auth. of New York & New Jersey,*
521 F. Supp. 3d 415 (S.D.N.Y. 2021)......................................................................................2, 12

*Kyne v. Carl Beiber Bus Servs.,*
147 F. Supp. 2d 215 (S.D.N.Y. 2001)....................................................................................1, 2, 3

*Lyons v. Port Auth. of N.Y. & N.J.,*
228 A.D.2d 250, 643 N.Y.S.2d 571 (1st Dep't 1996).................................................................6

*Murphy v. Harris,*
210 A.D.3d 410 (2022) ...................................................................................................................5

*In re New York City Asbestos Litig.,*
24 N.Y.3d 275, 22 N.E.3d 1018 (2014)........................................................................................4

*New York City Transit Auth. v. Am. Transit Ins. Co.,*
211 A.D.3d 643 (2022) ...................................................................................................................5

*Rose v. Port Auth. of New York & New Jersey,*
13 F. Supp. 2d 516 (S.D.N.Y. 1998)...........................................................................................12

*Shifa Services, Inc. v. Port Authority of New York and New Jersey,*
No. 96 Civ. 1361(AGS), 1997 WL 563301 (S.D.N.Y. Sept. 8, 1997) .....................................12

*Steel Co. v. Citizens For a Better Environment,*
    523 U.S. 83, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998)..................................................................1

*Vernon v. Port Auth. of New York & New Jersey,*
    154 F. Supp. 2d 844 (S.D.N.Y. 2001)..................................................................12

**Statutes**

N.J. Stat. Ann. § 32:1-163..................................................................3

N.Y. Est. Powers & Trusts Law § 5-4.1 ..................................................................4

N.Y. Unconsol. Laws § 7107..................................................................3

New York Penal Law..................................................................12

Uncons. Laws § 7108..................................................................4

## PRELIMINARY STATEMENT

Defendants Port Authority of New York and New Jersey ("Port Authority"), Port Authority Officer Michael Bugiada, Port Authority Officer Robert Joseph, Port Authority Officer Jonathan Papia, Port Authority Officer Paul Mezzacappa, and Port Authority Officer Jonathan Duran (collectively "Defendants") respectfully submit this memorandum of law in further support of their motion for summary judgment dismissing Plaintiffs' claims.

Plaintiffs failed to comply with the jurisdictional prerequisites for suing the Port Authority for the state law claims alleged. Despite having knowledge and information pertaining to Lagoda's death since 2019 and participating in the investigation with the New York Attorney General's Office, Plaintiffs inexplicably waited to serve the Port Authority with a Notice of Claim until April 7, 2021 and then filed an action in state court in New York County on April 9, 2021 alleging state law causes of action for wrongful death and pain and suffering related to Lagoda's death on April 12, 2019. "Compliance with the condition precedent in the statute of giving sixty days notice is mandatory and jurisdictional. The failure to satisfy this condition will result in withdrawal of defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction." *Kyne v. Carl Beiber Bus Servs.*, 147 F. Supp. 2d 215, 218 (S.D.N.Y. 2001). The Port Authority appropriately raised this defense in its Answer to the First Amended Complaint (Alterman Dec., Ex. F at p.11-12). Moreover, Plaintiffs' argument pertaining to a lengthy discovery process "misses the jurisdictional point. Subject matter jurisdiction is not a "formality". *See Steel Co. v. Citizens For a Better Environment*, 523 U.S. 83, 94, 118 S.Ct. 1003, 140 L.Ed.2d 210 (1998) ("Without jurisdiction the court cannot proceed at all in any cause. Jurisdiction is power

to declare the law, and when it ceases to exist, the only function remaining to the court is that of announcing the fact and dismissing the cause.") *Kyne,* 147 F. Supp. 2d at 219.

Second, the Port Authority Defendants met their *prima facie* burden by establishing that the Port Authority's police training was comprehensive and appropriate and there is no evidence of any pattern of constitutional violations resulting from inadequate training, nor any deliberate indifference to a known risk.[1]

Third, the Port Authority Police Officers are entitled to qualified immunity because their actions were reasonable, necessary, and in accordance with their training and Port Authority policies. This was corroborated by the New York Attorney General's Office investigation and the irrefutable testimony from the responding officers, which detailed the threat they faced on the aircraft that was created by Lagoda and their appropriate and reasonable response thereto.

Lastly, punitive damages cannot be assessed against the Port Authority nor is there any compelling basis to do so. *See Holden v. Port Auth. of New York & New Jersey*, 521 F. Supp. 3d 415, 437 (S.D.N.Y. 2021).

For these reasons, and as set forth more fully below, Defendants are entitled to summary judgment dismissing all claims in this action.

---

[1] Plaintiffs conceded that there is no excessive force claim as they did not oppose that portion of Defendants' motion. Further, Plaintiffs abandoned their claims against the PAPD as they concede it is not a separate legal entity subject to suit.

## STATEMENT OF FACTS

The undisputed facts, as supported by the evidence in the record, are set forth in Defendants' Rule Defs. 56.1 Statement of Material Facts ("Defs. 56.1 St.") and Defendants' Reply to Plaintiffs' Additional Facts, which is incorporated by reference herein.

## ARGUMENT
### Point I

**Plaintiffs' State Law Claims are Barred Against the Port Authority by their Failure to Timely Serve a Notice of Claim**

Plaintiffs' claims for wrongful death and conscious pain and suffering under New York State law must be dismissed against the Port Authority because Plaintiffs failed to comply with the mandatory notice of claim requirements governing actions against the Port Authority.

It is well-established that before commencing any action against the Port Authority, a Plaintiff must serve a notice of claim at least sixty days prior to filing suit. *See* N.J. Stat. Ann. § 32:1-163; N.Y. Unconsol. Laws § 7107. These statutory provisions are strictly construed. *Caceres v. Port Auth. of New York & New Jersey*, 631 F.3d 620, 624 (2d Cir. 2011). Failure to comply with the notice of claim requirement is considered a jurisdictional defect that cannot be cured and mandates dismissal. *Id.* Plaintiffs fail to appreciate that failing to comply with the 60 day requirement in Section 7107, results in "withdrawal of defendant's consent to suit and compels the dismissal of the action for lack of subject matter jurisdiction." *Kyne,* 147 F. Supp. 2d at 218. Plaintiffs' contention that that this defect can be "cured" is without merit. First, it should be noted that Plaintiffs served a Notice of Claim upon the Port Authority on April 7, 2021 not April 7, 2020. (Alterman Dec., Ex. C). This notice of Plaintiffs' intention to commence a lawsuit came almost 2 years after Lagoda's death despite having the necessary information to serve the Port Authority with a timely Notice of Claim.

Plaintiffs' reliance on *In re New York City Asbestos Litig.*, 24 N.Y.3d 275, 282, 22 N.E.3d 1018, 1021 (2014) is misplaced. *In re New York City Asbestos Litig.* pertains to an action brought by a construction worker [Andrucki] and his wife alleging that the worker was injured by being exposed to asbestos on the worksite and Andrucki timely filed a notice of claim before his death. The issue in that case was whether Andrucki's death required service of a *new* notice of claim and the court held that it did not. The Court of Appeals held that Adrucki's original notice of claim sufficiently met the requirements in that it alleged that "he had contracted malignant mesothelioma as a result of his exposure to asbestos on the World Trade Center site in the early 1970s, and suffered physical and emotional injuries and incurred medical expenses as a result." *In re New York City Asbestos Litig.*, 24 N.Y.3d at 282.

Here, Plaintiffs failed to serve the Port Authority with any Notice of Claim until April 7, 2021. Plaintiffs' claim that it waited for the release of the OAG report in order to serve the Port Authority with a Notice of Claim lacks support. The Port Authority's statute does not require an investigation nor is an investigation by the State required for a claim to be filed against the Port Authority. The relevant statutory requirements are that a notice must specify the claimant, the time and place where the claim arose, the nature of the claim, and "so far as then practicable" the items of damage or injuries sustained *see* Uncons. Laws § 7108. Plaintiffs do not argue, nor can they, that any of the required information was unavailable to them at the time a Notice of Claim was required to be served upon the Port Authority.

Moreover, the statute that Plaintiffs' state law claims are premised (*i.e.* wrongful death) mandates a one-year limitations period beginning from the date of death. N.Y. Est. Powers & Trusts Law § 5-4.1 (McKinney); see also *Hernandez v. New York City Health & Hosps. Corp.*, 78 N.Y.2d 687, 693 (1991). Lagoda died on April 12, 2019 (Defs. 56.1 St. ¶ 79), which means Plaintiffs had

4

until April 12, 2020, to file their complaint. Because the Notice of Claim must be filed at least sixty days before commencing suit, Plaintiffs were required to serve their Notice of Claim by February 12, 2020, at the latest.

Plaintiffs did not serve their notice of claim until April 7, 2021—421 days after the statutory deadline. (Defs. 56.1 St. ¶ 115). Even accounting for the tolling periods established by New York Governor Andrew Cuomo's COVID-19 Executive Orders, Plaintiffs' Notice of Claim was untimely. Under the tolling provisions, Plaintiffs had until November 26, 2020, to commence this action and were required to serve a Notice of Claim at least 60 days prior. See *Murphy v. Harris*, 210 A.D.3d 410, 411 (2022); *Gabin v. Greenwich House, Inc.*, 210 A.D.3d 497, 498 (2022); *New York City Transit Auth. v. Am. Transit Ins. Co.*, 211 A.D.3d 643, 643 (2022). Any delays appointing a personal representative are attributable to Plaintiffs and it is their burden to file a timely motion to serve a late notice of claim, which they failed to do in this Court.

**Plaintiffs Abandoned Their Motion Filed In State Court And Should Not Be Entitled To Refile Same At This Late Juncture**

Plaintiffs' argument that they should be entitled to refile a motion that was abandoned when this case was removed to federal court is without merit. (D.E. 1). On July 22, 2021, Judge Jaffe denied the motion to dismiss and Plaintiffs' motion for leave to serve a late notice of claim as "academic" based upon Defendants' removal notice. (Alterman Dec., Ex. I). Notwithstanding the fact this Court retained supplemental jurisdiction of Plaintiffs' state law claims, Plaintiffs failed to file a motion seeking leave to serve the Port Authority with a late Notice of Claim. Plaintiffs were aware that the Port Authority sought dismissal of their state law claims and the Port Authority maintained its position that the Court did not have subject matter jurisdiction over those claims. Plaintiffs abandoned their state law claims as they failed to seek leave to serve a late Notice of Claim over the past four years. On the other hand, the Port Authority's requirement is

5

jurisdictional and cannot be waived.  Even in cases where the jurisdictional issue was not raised by either party or the district court, the Second Circuit has held that dismissal is still mandatory as subject matter jurisdiction cannot be waived.  *Caceres*, 631 F.3d at 625 (2d Cir. 2011).

Plaintiffs' allegation that the Port Authority engaged in "bad-faith litigation" is frankly surprising and unfounded.  Plaintiffs continually delayed this litigation from the outset and the parties were required to request multiple extensions due to the fact that Plaintiffs' counsel was unable to obtain records from their clients in Russia. Port Authority counsel consented to the multitude of Plaintiffs' extension requests throughout the discovery process. Plaintiffs never raised their late Notice of Claim throughout the lengthy discovery process.  The fact that Plaintiffs' failed to comply with the Port Authority's prerequisites to suit compels withdrawal of Defendants' consent to suit for the state law claims and compels dismissal of the state law claims for lack of subject matter jurisdiction. *Lyons v. Port Auth. of N.Y. & N.J.,* 228 A.D.2d 250, 643 N.Y.S.2d 571, 571–72 (1st Dep't 1996).

### Plaintiffs's Late Request To Refile Their State Motion For Leave To Commence An Action Out of Time Should Be Denied

First, Plaintiffs did not file an affirmative motion for summary judgment and should be precluded from seeking affirmative relief in their opposition to Defendants' motion for summary judgment. (Plfs. Memo of Law in Opp., D.E. 78, p. 13).  In fact, Plaintiffs did not seek this relief in their premotion letter for their anticipated motion for summary judgment (D.E. 66) and elected not to file a motion for summary judgment pursuant to the proposed scheduling order notwithstanding the fact Defendants raised the issue of Plaintiffs's late Notice of Claim in their premotion letter (D.E. 65).

Moreover, Plaintiffs' attempt to resurrect their state laws claims by arguing substantial compliance is unavailing.  Plaintiffs do not cite to any New York authority for the proposition that

6

"recognizing the complexities of wrongful death claim litigation" Plaintiffs' counsel's late notice should be excused.  Plfs. Memo of Law in Opp, D.E. 78, p.14).  The fact that New Jersey courts allow for "substantial compliance" is wholly irrelevant here as Plaintiffs did not attempt to comply with the Port Authority's statute by any means.

Because Plaintiffs failed to timely serve a Notice of Claim as required by statute, their state law claims for wrongful death and conscious pain and suffering against the Port Authority must be dismissed as a matter of law.

## Point II
**Plaintiffs Failed To Raise A Genuine Issue of Fact With Respect To Their Failure-To-Train Theory**

### A. The Port Authority's Training Was Adequate and Did Not Cause Any Constitutional Violation

The undisputed evidence demonstrates that the Port Authority's police training was adequate and did not result in a violation of Lagoda's constitutional rights.  Plaintiffs allege that the "law enforcement community has known for decades that restraining an individual in a prone position increases the danger of positional asphyxia and/or compressional asphyxiation." (Plfs. Memo of Law in Opp., D.E. 78, p.15) without any evidentiary support.

Plaintiffs's reliance on *Avant v. Cty. of Erie*, to support their failure to train claim is misplaced.  Avant argued that the County was liable for its failure to train its staff on the hypoglycemia policy. *See* Amnesty Am., 361 F.3d at 129 (explaining that "a municipality can be liable [under section 1983] for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training" (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989))). *Avant v. Cnty. of Erie*, No. 20-CV-1689-LJV-HKS, 2024 WL 1856828, at *4 (W.D.N.Y. Apr. 29, 2024),

7

*appeal withdrawn*, No. 24-1501, 2024 WL 4019488 (2d Cir. Aug. 22, 2024).  (Alterman Reply Dec., Ex. B).

To succeed on a *Monell* claim based on the failure to train, Plaintiffs "must establish that 'the [municipal employee]'s shortcomings ... resulted from ... a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." Amnesty Am., 361 F.3d at 129-30 (quoting City of Canton, 489 U.S. at 390-91). "The elements of an identified training deficiency and a close causal relationship, which together require the Plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into respondeat superior liability." Id. at 130. In other words, the Plaintiffs must show that the training deficiency was the result of municipal policy and not simply a failure of its employees. See id. at 129-30. *See Avant,* No. 20-CV-1689-LJV-HKS, 2024 WL 1856828, at *4.

Unlike the policy in *Avant* that was found to be inadequate by the court, here, the Port Authority Officers received comprehensive training, which included a 26-week academy training that covered behavioral sciences, police practices, laws of arrest, court procedures, defensive tactics, use of force training, first aid, medical response, mental health crisis response, and de-escalation techniques. (Defs. 56.1 St. ¶ 81). After academy graduation, Port Authority Officers must complete mandatory in-service training sessions twice annually (Spring and Fall sessions), pass tests with a minimum score of 70%, complete remedial training if standards are not met, and maintain proficiency in skills learned at the academy. (Defs. 56.1 St. ¶ 82).

Port Authority officers are trained to secure the scene and protect the safety of the public. (Alterman Dec., Ex. W (Sandoz Dep.) at 70:4-75:4).  In so doing, Lt. Bergery testified that Port Authority Officers are trained to use force that is "objectively reasonable at the time to control the

8

suspect" and "whatever level of force is reasonable at the time that the officer believes they are able to utilize, just to control the situation, to control the suspect." (Defs. 56.1 St. ¶ 84). Port Authority Officers are trained to evaluate "the totality of the circumstance" and make decisions based on "the entire scope" of a situation. This includes assessing environmental factors and space constraints, potential threats to officers and the public, and the number of people involved or at risk. (Defs. 56.1 St. ¶ 85). This training complies with guidelines from both New York and New Jersey as the department "fall[s] underneath both" state jurisdictions, ensuring adherence to proper standards. (Defs. 56.1 St. ¶ 86).

Port Authority Officers receive specific training on handling subjects experiencing medical emergencies, including CPR, managing subjects in altered mental states, and frequent medical refresher courses. (Defs. 56.1 St. ¶ 87). Lt. Sandoz testified that Port Authority Officers are trained to assess situations individually and respond appropriately based on circumstances presented. (Defs. 56.1 St. ¶ 88).  This is especially true when officers are confronted with a violent individual, such as Lagoda, who was assaulting crewmembers and the passengers onboard the flight.

In restraining Lagoda, the officers utilized acceptable police defensive tactics as they were trained to do.  Plaintiffs' counsel would like this Court to believe there was a requirement to train officers on positional restraint and compressional asphyxiation in April 2019.  There simply was no such requirement.  Rather, the Port Authority officers utilized the defense tactics training methods taught to them in the academy and prescribed within the Port Authority's Use of Force policies.  Mr. Monaghan, the Defendants' police practices expert, testified that the use of force by the Port Authority police officers was "proper and reasonable".  (Alterman Dec., Ex. Z (Monaghan Dep.) at 321: 4-15).  In fact, regardless of Lagoda's medical condition, Mr. Monaghan explained that it would not have been reasonable to allow Lagoda's assault to continue:

They are police, It's their job to stop that. They had no choice, but to control this man. And they tried to do it without using physical force and they were unable to, based on the man's responses. And they had to use a reasonable amount of force as necessary to subdue him. He had assaulted a number of people, there is another 200 potential victims here, that is their job, put end to that and use a reasonable amount of force to take them under control and custody.

(Alterman Dec., Ex. Z (Monaghan Dep.) at 321:4-322:4).

Moreover, the officers were trained to intervene if a violation was observed but they all consistently testified that there was no need to do so because Lagoda's rights were not violated. *See* (Alterman Dec., Ex. J (Bugiada Dep.) at 77:3-15; Ex. K (Papia Dep.) at 56:23-57:11; Ex. L (Joseph Dep.) at 49:15-20; Ex. M (Mezzacappa Dep.) at 52:11-21; Alterman Reply Dec., Ex. A.

Plaintiffs have not identified any pattern of constitutional violations resulting from inadequate training, nor have they shown that the Port Authority made a "deliberate choice ... from among various alternatives" not to train officers about post-seizure vulnerabilities, use of force, or improper restraint techniques. This is further evidenced by the New York Attorney General's Office, which acknowledged that the Port Authority's "current use of force policy appropriately instructs officers using force to conduct a 'careful balancing of all human interests' and 'use only that force that is reasonably necessary to bring an incident under control, while protecting the lives of the officer or another.'" (Defs. 56.1 St. ¶ 102).

Plaintiffs failed to prove that the Port Authority was aware of any alleged training deficiencies or that the officers consciously disregarded the decedent's rights; therefore, Plaintiffs' failure-to-train claim fails as a matter of law.

### Point III
**The Individual Defendants are Entitled to Qualified Immunity as their Actions Were Objectively Reasonable Under the Circumstances**

Plaintiffs' recitation of facts ignores the active threat that Lagoda presented onboard a flight with over 200 passengers. There is no dispute that Lagoda violently assaulted crew members and

passengers onboard the flight before the Port Authority police were called to respond. (Defs. Defs. 56.1 St. ¶ 12-18). There is no dispute that Officer Bugiada attempted to resolve the situation without physical force by giving verbal commands and using hand gestures. (Defs. Defs. 56.1 St. ¶ 29). When that failed and Lagoda charged at him with clenched fists, Officer Bugiada used OC spray. (Defs. 56.1 St. ¶¶ 33-34). Only after Lagoda wiped away the spray and attempted to punch Officer Bugiada while Lagoda was charging at him, did the officer resort to physical strikes. (Defs. 56.1 St. ¶¶ 36-37). Officer Bugiada's response was reasonable and necessary under the circumstances.

The responding officers used only the force necessary to handcuff Lagoda, who continued to actively resist by biting, kicking, and attempting to grab an officer's weapon. (Defs. 56.1 St. ¶¶ 39, 43-44, 46). Once Lagoda was handcuffed, Officer Mezzacappa testified that "there was no more compliance hold on his body." (Defs. 56.1 St. ¶ 54).

No reasonable officer believed that the force used under these circumstances violated clearly established law. The New York Attorney General's investigation concluded that "there can be little doubt that the officers were legally permitted to use at least some degree of physical force on Lagoda" given that they were informed "that Lagoda had been combative toward civilians on the aircraft," and Officer Bugiada himself "had been swung on by Mr. Lagoda." (Defs. Defs. 56.1 St. ¶ 94). The Attorney General further determined that "Because it would be impossible to prove beyond a reasonable doubt that any of the officers' conduct was unjustified, and therefore that their conduct violated New York Penal Law, the OAG has concluded that no criminal charges are warranted." (Defs. Defs. 56.1 St. ¶ 95).

Moreover, once the officers observed signs of medical distress, they immediately transitioned to providing emergency medical care, demonstrating their commitment to Lagoda's

11

well-being. (Defs. 56.1 St. ¶¶ 61-66). This prompt medical response further supports the reasonableness of their actions.

Defendants' police expert, John Monaghan, testified that his review and analysis of this matter determined the officers' actions to be proper and reasonable under the circumstances (Defs. Defs. 56.1 St. ¶ 40).

Because the officers' conduct was objectively reasonable under the circumstances, they are entitled to qualified immunity as a matter of law.

## Point IV
### Punitive Damages Cannot Be Assessed Against the Port Authority

It is well-established by this Court that punitive damages cannot be assessed against the Port Authority. See *Shifa Services, Inc. v. Port Authority of New York and New Jersey*, No. 96 Civ. 1361(AGS), 1997 WL 563301 at *5 (S.D.N.Y. Sept. 8, 1997); *Vernon v. Port Auth. of New York & New Jersey*, 154 F. Supp. 2d 844, 860 (S.D.N.Y. 2001); *see also Rose v. Port Auth. of New York & New Jersey*, 13 F. Supp. 2d 516, 524 (S.D.N.Y. 1998) (holding the Port Authority is immune from punitive damages). Judge Koeltl recently rejected the same argument Plaintiffs raise herein:

> Although the Court of Appeals for the Second Circuit has not addressed the question, other courts in this district have applied to the Port Authority the Supreme Court's reasoning in City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 261, 101 S.Ct. 2748, 69 L.Ed.2d 616 (1981), that municipalities should not be subject to punitive damages. Vernon v. Port Auth. of N.Y. & N.J., 154 F. Supp. 2d 844, 860 (S.D.N.Y. 2001) (collecting cases). While the Port Authority is a self-financing agency, funded by user fees, the wrongdoing of the Port Authority's officials should not be borne by the public generally. The combination of the Port Authority's liability for compensatory damages and individual officer liability for both compensatory and punitive damages should be sufficient to satisfy the goal of deterrence. Thus, the Court is persuaded to join the majority of courts to have considered the issue and find that the Port Authority—and the PAPD as one of its constituent agencies—is immune from punitive damages.

> *Holden v. Port Auth. of New York & New Jersey*, 521 F. Supp. 3d 415, 437 (S.D.N.Y. 2021)

12

However, the Port Authority agrees that punitive damages may be assessed against the individually named police officers, only if this case proceeds to a jury trial, and those damages are deemed appropriate.

Therefore, Plaintiffs's claim seeking punitive damages against the Port Authority should be dismissed with prejudice.

## CONCLUSION

Based on the foregoing, Defendants have established that: (1) Plaintiffs' state law claims are barred by their failure to comply with mandatory notice of claim requirements; (2) the Port Authority's training was comprehensive and appropriate, and there is no evidence of a constitutional violation; (3) the individual Defendants are entitled to qualified immunity; and (4) punitive damages cannot be assessed against the Port Authority.

For all these reasons, Defendants are entitled to summary judgment dismissing all claims in this action with prejudice.

Dated: New York, New York
      May 27, 2025

> Port Authority Law Department
> Attorneys for Defendants, Port Authority of
> New York and New Jersey, Port Authority
> Officer Michael Bugiada, Port Authority Officer
> Robert Joseph, Port Authority Officer Jonathan
> Papia, Port Authority Officer Paul Mezzacappa,
> and Port Authority Officer Jonathan Duran
>
>
> By:   */s/ Cheryl N. Alterman*
>     Cheryl N. Alterman, Esq.
>     4 World Trade Center, 24th Floor
>     150 Greenwich Street
>     New York, New York 10007
>     Telephone: (212) 435-3431

13