# EXHIBIT B

2024 WL 1856828
Only the Westlaw citation is currently available.
United States District Court, W.D. New York.

Krystal A. **AVANT**, individually and as
administrator of the estate of Connell A. Burrell,
Plaintiff,
v.
COUNTY OF **ERIE**, **Erie** County Holding Center,
and **Erie** County Sheriff's Office, Defendants.

20-CV-1689-LJV-HKS
|
Signed April 29, 2024

**Attorneys and Law Firms**

Steven M. Cohen, Tiveron Law PLLC, Amherst, NY,
Ariel A. Bauerle, HoganWillig, Getzville, NY, for
Plaintiff.

Eric Michael Soehnlein, Soehnlein Law, Buffalo, NY,
Jennifer C. Persico, Lippes Mathias Wexler Friedman
LLP, Buffalo, NY, for Defendants.

DECISION & ORDER

LAWRENCE J. VILARDO, UNITED STATES
DISTRICT JUDGE

*1 Before the Court are cross-motions for summary
judgment filed by the plaintiff, Krystal A. **Avant**,
individually and as administrator of the estate of Connell
A. Burrell, Docket Item 42, and the defendants, the
County of **Erie** ("the County"), the **Erie** County Holding
Center, and the **Erie** County Sheriff's Department,
Docket Item 46. More specifically, **Avant** moves for
partial summary judgment on the issue of liability, Docket
Item 42, while the defendants move for summary
judgment on all claims, Docket Item 46. The parties
responded to each other's motions, Docket Items 47 and
50, and **Avant** replied in support of her motion, Docket
Item 51.

For the reasons that follow, this Court denies **Avant's**

motion for partial summary judgment, Docket Item 42,
and grants in part and denies in part the defendants'
motion for summary judgment, Docket Item 46. More
specifically, this Court denies the defendants' motion with
respect to **Avant's** failure to train claim against the
County under *Monell v. Department of Social Services*,
436 U.S. 658 (1978), but otherwise grants the motion.

**BACKGROUND**[1]
This case concerns the tragic death of Connell Burrell. On
July 31, 2019, Burrell was sentenced to 15 days'
incarceration for disorderly conduct. Docket Item 42-3 at
2. Burrell—who was diabetic—was taken into custody at
the **Erie** County Holding Center that day and seen by a
registered nurse for an intake assessment. *Id.* He later was
transferred to the Echo One housing unit. *Id.* at 3.

At 9:54 that evening, Registered Nurse Natasha Strough
arrived at the Echo One housing unit in response to a
medical emergency call and found Burrell lying on the
floor. *Id.*; Docket Item 42-2 at 10. Burrell's glucose level
measured 26, he appeared "confused," and he was
"unable to follow direction without multiple verbal
redirections." Docket Item 42-3 at 3. "[H]is gait was
unsteady," and he was walked over "to medical with
assistance." *Id.*

When he arrived at medical, "Burrell was reportedly alert
and speaking in full sentences," but his "glucose was
rechecked and was recorded at a critical level of 21." *Id.*
Nurse Strough then instructed another nurse "to prepare a
peanut butter sandwich for Burrell to eat," and "Burrell
was given juice, milk, and the sandwich." *Id.* Burrell
began to eat the sandwich, and security staff reported that
he appeared to be choking. *Id.* Licensed Practical Nurse
Charles Broody performed the Heimlich maneuver, and
Burrell "expel[led] part of the sandwich." *Id.*; Docket
Item 42-2 at 13. "Burrell remained unable to follow
directions." Docket Item 42-3 at 3.

The medical staff again checked Burrell's blood glucose
level and recorded it as 26. *Id.* "Burrell then became
combative and more confused." *Id.* The staff performed a
third blood glucose level check and recorded it as 31. *Id.*
Nurse Strough then gave Burrell 1 milligram of Glucagon
in his right deltoid at 10:25 p.m. *Id.* She gave him a
second dose of Glucagon at 10:32 p.m. *Id.*

*2 At 10:37 p.m., Burrell became unresponsive and had
no pulse. *Id.* The staff performed cardiopulmonary
resuscitation ("CPR") and applied an automated external
defibrillator ("AED"). *Id.* Emergency Medical Services

Avant v. County of Erie, Slip Copy (2024)

("EMS") arrived at 10:47 p.m. and found "Burrell lying supine on the ground of the infirmary, in cardiac arrest." *Id.* When EMS arrived, the staff was still performing CPR and the AED was still in place. *Id.*

The EMS staff administered Dextrose and attempted to intubate Burrell. *Id.* EMS transported Burrell to Buffalo General Hospital where his "admitting diagnoses included: acute encephalopathy, acute respiratory failure with left lower lobe consolidations, pulseless electrical activity arrest secondary to hypoglycemia, anion gap metabolic acidosis secondary to lactic acidosis, and sepsis." *Id.* at 3-4.

The following afternoon—August 1, 2019—"at 3:05 p.m., Burrell was released from custody with time served but remained hospitalized in intensive care." *Id.* at 4. The next day, "at 7:30 a.m., Burrell was pronounced dead at Buffalo General Hospital." *Id.*

At the time of Burrell's death, the **Erie** County Holding Center had the following policy and procedure for hypoglycemic patients:

> If Blood Glucose (BG) is <60, notify an RN immediately for assessment. If the inmate is asymptomatic, give 2 juices/milk or oral glucose and re-check BG in 15 minutes. May repeat juice/oral glucose if necessary. If repeat BG is > 70, provide nourishment and advise him/her of signs and symptoms of low blood sugar. Repeat BG in 90 minutes.

> If BG is <60, notify an RN immediately for assessment. If there is a change in [level of consciousness (LOC)], give 1 mg glucagon IM. Continue to assess inmate in medical and check BG in 15 minutes. If BG continues to be <70, or no improvement of LOC, transfer patient to Emergency Department via EMS.

> If BG is <60, notify an RN immediately for assessment. If there is a change in LOC, give 1 mg glucagon IM. If repeat BG is >70 and inmate returns to baseline after 15 minutes, provide nourishment and advise him/her of signs and symptoms of low blood sugar. Repeat BG in 90 minutes.

*Id.*

Following Burrell's death, the **Erie** County Sheriff's Office conducted an investigation. *Id.* Based on that investigation, Nurse Strough "was found to be in violation of agency policy and procedure for hypoglycemic patients." *Id.* She was subsequently terminated from her position. *Id.*

The New York State Commission of Correction Medical Review Board also issued a report, which found that Nurse Strough "failed to perform proper rescue measures that resulted in Burrell becoming fatally hypoglycemic and going into cardiac arrest." *Id.* The report also found that Strough "failed to follow agency policy and procedure for a hypoglycemic patient and ordered an unauthorized and contraindicated therapy." *Id.* "Additionally, [Nurse Strough] failed to activate EMS to respond to the facility immediately when Burrell's airway had become compromised." *Id.* The Medical Review Board concluded that "[h]ad [Nurse Strough] properly recognized Burrell's critical hypoglycemia, properly followed agency policy and procedure, and requested immediate treatment and transfer to a hospital via an advanced life support ambulance, Burrell's death could have been prevented." *Id.*

## LEGAL PRINCIPLES

Under Federal Rule of Civil Procedure 56, a court appropriately grants summary judgment only "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "The movant"—that is, the party seeking summary judgment—"has the burden of showing that there is no genuine issue of fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 256 (1986). The movant may satisfy that burden by relying on evidence in the record, "including depositions, documents, ... [and] affidavits," Fed. R. Civ. P. 56(c)(1)(A), or by "point[ing] to an absence of evidence to support an essential element of the [non-moving] party's claim," *Goenaga v. March of Dimes Birth Defects Found.*, 51 F.3d 14, 18 (2d Cir. 1995) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986)); *see* Fed. R. Civ. P. 56(c)(1)(B).

**\*3** Once the movant has satisfied its initial burden, the non-moving party "must come forward with specific facts showing that there is a genuine" dispute of material fact—that is, that a "rational trier of fact [could] find for the non-moving party" on the "record taken as a whole." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986) (citations, emphasis, and internal quotation marks omitted). If the non-moving party fails to do so, the court will grant summary judgment. *See Celotex*, 477 U.S. at 322-23; Fed. R. Civ. P. 56(a). "Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment." *Anderson*, 477 U.S. at 248.

Avant v. County of Erie, Slip Copy (2024)

---

## DISCUSSION

### I. AVANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT

**Avant** moves for partial summary judgment "on the issue of [l]iability." Docket Item 42-2 at 16. The crux of her argument is that the Medical Review Board's findings establish as a matter of law that the defendants acted with deliberate indifference to Burrell's serious medical need. *See generally* Docket Item 42-2.

But—as the defendants observe in their opposition—"[t]here is no *respondeat superior* liability under [section] 1983." Docket Item 47 at 4 (citing *Jemmott v. Coughlin*, 85 F.3d 61, 67 (2d Cir. 1996)); *see Monell*, 436 U.S. at 691 ("[W]e conclude that a municipality cannot be held liable *solely* because it employs a tortfeasor—or, in other words, a municipality cannot be held liable under [section] 1983 on a *respondeat superior* theory."); *Reynolds v. Giuliani*, 506 F.3d 183, 191 (2d Cir. 2007) (explaining that "*Monell's* bar on *respondeat superior* liability under [section] 1983 applies regardless of the category of relief sought"). In other words, "a local government may not be sued under [section] 1983 for an injury inflicted solely by its employees or agents." *Monell*, 436 U.S. at 694. "Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under [section] 1983." *Id.*

Here, the only defendants are municipal entities; the plaintiff did not sue the individual staff members who attempted to treat Burrell. *See* Docket Item 1-1. So even if, as **Avant** argues, the Medical Review Board's finding means that *Nurse Strough* acted with deliberate indifference to Burrell's serious medical need, that is not enough to hold the municipal defendants liable. What is more, while there is a policy at issue, it is Nurse Strough's *failure* to follow that policy that forms the basis for the claim; there is no alleged issue with the policy itself.

In such a case, "municipal liability turns on the plaintiff['s] ability to attribute the subordinates' conduct to the actions or omissions of higher[-]ranking officials with policymaking authority." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 126 (2d Cir. 2004). "One means of doing so, of course, is to establish that a policymaker ordered or ratified the subordinates' actions." *Id.* (citing *Weber v. Dell*, 804 F.2d 796, 803 (2d Cir. 1986)). "Another method of implicating a policymaking official through subordinates' conduct is to show that the policymaker was aware of a subordinate's unconstitutional actions, and consciously chose to ignore them, effectively ratifying the actions." *Id.* (citing *Sorlucco v. N.Y.C. Police Dep't*, 971 F.2d 864, 870-71 (2d Cir. 1992)).

There is no evidence here that anyone above Nurse Strough ordered or approved her actions. Nor is there any evidence that she had a prior track record of failing to follow procedure that would have put the County on notice of potential future violations. As explained below, there is evidence supporting **Avant's** theory that the County was deliberately indifferent in failing to train its employees on the policy regarding hypoglycemic patients. The Court finds, however, that there are material questions of fact with respect to **Avant's** failure to train claims that preclude summary judgment.

*4 For all those reasons, **Avant's** partial motion for summary judgment, Docket Item 42, is denied.

### II. THE DEFENDANTS' MOTION FOR SUMMARY JUDGMENT

#### A. Erie County Holding Center and Erie County Sheriff's Office

The defendants first argue that the **Erie** County Holding Center and the **Erie** County Sheriff's Office are not entities that can be sued. Docket Item 46-1 at 9; *see, e.g., Busch v. Howard*, 2021 WL 2946532, at *5 (W.D.N.Y. July 14, 2021); *Johnson-Schmitt v. Robinson*, 990 F.Supp.2d 331, 340 n.2 (W.D.N.Y. 2013). **Avant** does not respond to that contention, arguing only that the defendants' "motion should be denied *as to the County of Erie*." Docket Item 50 at 2 (emphasis added).

The Court agrees that the **Erie** County Holding Center and the **Erie** County Sheriff's Office are not proper defendants. *See Johnson-Schmitt*, 990 F. Supp. 2d at 340 n.2 (noting that the "[d]efendants correctly assert that the **Erie** County Sheriff's Department is not a separate legal entity capable of being sued individually"); *Tulloch v. Erie Cnty. Holding Ctr.*, 2010 WL 2609054, at *2 (W.D.N.Y. June 24, 2010) (finding that "[t]he claims against the **Erie** County Holding Center must be dismissed because ... the **Erie** County Holding Center is merely an arm of the County[ ] and does not have a legal identity separate and apart from the County and thus

cannot be sued"). As such, the defendants' motion is granted as to those two entities.

### B. *Monell* Failure to Train Claim

As explained above, the Supreme Court held in *Monell* that a municipality may be held liable under section 1983 only "when execution of [the municipality]'s policy or custom ... inflicts the [alleged] injury." 436 U.S. at 694. Here, **Avant** argues that the County is liable for its failure to train its staff on the hypoglycemia policy. Docket Item 50 at 2-6; *see Amnesty Am.*, 361 F.3d at 129 (explaining that "a municipality can be liable [under section 1983] for failing to train its employees where it acts with deliberate indifference in disregarding the risk that its employees will unconstitutionally apply its policies without more training" (citing *City of Canton v. Harris*, 489 U.S. 378, 387-90 (1989))).

To succeed on a *Monell* claim based on the failure to train, a plaintiff "must establish that 'the [municipal employee]'s shortcomings ... resulted from ... a faulty training program' rather than from the negligent administration of a sound program or other unrelated circumstances." *Amnesty Am.*, 361 F.3d at 129-30 (quoting *City of Canton*, 489 U.S. at 390-91). "The elements of an identified training deficiency and a close causal relationship, which together require the plaintiffs to prove that the deprivation occurred as the result of a municipal policy rather than as a result of isolated misconduct by a single actor, ensure that a failure to train theory does not collapse into *respondeat superior* liability." *Id.* at 130. In other words, the plaintiff must show that the training deficiency was the result of municipal policy and not simply a failure of its employees. *See id.* at 129-30.

The Supreme Court has "offered as an example of deliberate indifference a municipality's failure to train police officers on the proper use of deadly force." *Walker v. City of New York*, 974 F.2d 293, 297 (2d Cir. 1992) (citing *City of Canton*, 489 U.S. at 390 n.10). The Court explained that "city policymakers know to a moral certainty that their police officers will be required to arrest fleeing felons," and "[t]he city has armed its officers with firearms, in part to accomplish this task." *City of Canton*, 489 U.S. at 390 n.10. For that reason, "the need to train officers in the constitutional limitations on the use of deadly force can be said to be 'so obvious' that failure to do so would properly be characterized as 'deliberate indifference' to constitutional rights." *Id.* (internal citation omitted).

\*5 In the Second Circuit, "three requirements ... must be met before a municipality's failure to train ... constitutes deliberate indifference to the constitutional rights of citizens." *Walker*, 974 F.2d at 297. "First, the plaintiff must show that a policymaker knows 'to a moral certainty' that her employees will confront a given situation." *Id.* (quoting *City of Canton*, 489 U.S. at 390 n.10). In other words, "a policymaker does not exhibit deliberate indifference by failing to train employees for rare or unforeseen events." *Id.* "Second, the plaintiff must show that the situation either presents the employee with a difficult choice of the sort that training ... will make less difficult or that there is a history of employees mishandling the situation." *Id.* And "[f]inally, the plaintiff must show that the wrong choice by the [municipal] employee will frequently cause the deprivation of a citizen's constitutional rights." *Id.* at 298 (citing *City of Canton*, 489 U.S. at 390).

Here, taking the facts in the light most favorable to **Avant**—as this Court must on a motion for summary judgment against her—**Avant** has met all three prongs. With respect to the first prong, the existence of a specific policy dealing with the treatment of hypoglycemic individuals suggests that the County knew such individuals would be held at the **Erie** County Holding Center. *See* Docket Item 50 at 3 (**Avant's** observing that "[t]his specific policy would not have been drafted if policymakers did not expect individuals with hypoglycemia to be housed at the **Erie** County Holding Center"). And the same is true with respect to the second prong: the existence of the policy suggests that there is a "difficult choice" in how to handle the treatment of a hypoglycemic patient. *See id.* at 3-4. Indeed, the detail in the policy itself suggests that the decisions, required to be made on the spot and without delay, are difficult by their very nature. Finally—and as poignantly demonstrated by the tragic outcome of this case—"the wrong choice ... will frequently cause the deprivation of a citizen's constitutional rights." *See Walker*, 974 F.2d at 298; *see also* Docket Item 50 at 4.

Moreover, **Avant** has identified evidence supporting her claim that the County's training program—if it had one—was woefully inadequate: When confronted with the policy at her deposition, Nurse Strough testified that she didn't "believe th[at] was the policy that was in place at the time." *See* Docket Item 47-3 at 66; *see also id.* ("Q. So it is your testimony that the policy you just read, these three paragraphs, was not the policy that was in place at the time of Mr. Burrell's passing? A. That is correct."). Additionally, the Final Report of the New York State Commission of Correction in the matter of Burrell's death

recommended that "[t]he [j]ail physician shall conduct a comprehensive quality assurance review with all medical staff at the **Erie** County Holding Center regarding proper management of hypoglycemic and diabetic patients," including "a review of agency policy and procedure." Docket Item 42-4 at 5. The Final Report further recommended that "[t]he [j]ail physician shall ensure there is a training program for all nursing staff regarding medical policy and procedure for the **Erie** County Holding Center" and that "[t]he program should also include periodic chart audits to ensure that compliance is being maintained." *Id.*

All of that creates material issues of fact as to whether the County was deliberately indifferent in failing to train the medical staff of the **Erie** County Holding Center on the hypoglycemic patient policy. The defendants' motion for summary judgment therefore is denied as to **Avant's** *Monell* claim.

### C. State Law Claims

#### 1. Wrongful Death and Conscious Pain and Suffering

There is no dispute that "the individuals [allegedly] responsible for the negligent acts and wrongful death of ... Burrell were employees of the **Erie** County Sheriff's Department." Docket Item 50 at 7. **Avant** argues that "an action against the Sheriff's Department is in effect an action against the County itself," and, according to her, "the actionable claims against the employees of the Sheriff's Department [are] in effect actionable against the County itself." *Id.* (citing *Johanson v. County. of Erie*, 134 A.D.3d 1530, 1532, 22 N.Y.S.3d 763, 765 (4th Dept. 2015)).

**\*6** But "[i]t is well established in New York State that a county cannot be held liable under the doctrine of *respondeat superior* for the actions of its sheriff or sheriff's deputies" unless the county establishes "a local law that expressly assumes liability for the acts of its sheriff and deputies." *Saleh v. Savage*, 2015 WL 1608839, at \*7 (W.D.N.Y. Apr. 10, 2015) (citations omitted); *see Wierzbic v. County of Erie*, 2018 WL 550521, at \*10 (W.D.N.Y. Jan. 25, 2018) (explaining that "in the absence of a local law imputing such responsibility, a county may not be held responsible for the negligent acts of local law enforcement pursuant to a theory of *respondeat superior*" (citing *Villar v. County of Erie*, 126 A.D.3d 1295, 1296-97, 5 N.Y.S.3d 747, 748

(4th Dep't 2015))). And, as the defendants observe, "**Erie** County has never passed a local law assuming responsibility for the negligent actions of the Sheriff or his employees."[2] Docket Item 46-1 at 11; *see, e.g., Wierzbic*, 2018 WL 550521, at \*10; *Mosey v. County of Erie*, 117 A.D.3d 1381, 1385, 984 N.Y.S.2d 706, 709 (4th Dep't 2014).

**Avant** did not name the Sheriff, Nurse Strough, or any of the other Sheriff's deputies in her complaint.[3] *See* Docket Item 1-1. Therefore, and because the County cannot be held vicariously liable for wrongful death and conscious pain and suffering caused by the Sheriff or his deputies, this Court grants the defendants' motion for summary judgment as to those claims.

#### 2. Negligent Training and Supervision[4]

"To state a claim for negligent hiring, training, supervision, or retention under New York law, 'in addition to the standard elements of negligence, a plaintiff must show: (1) that the tortfeasor and the defendant were in an employee-employer relationship; [and] (2) that the employer knew or should have known of the employee's propensity for the conduct which caused the injury prior to the injury's occurrence ....'" *Zilioli v. City of New York*, 2020 WL 1548763, at \*7 (S.D.N.Y. Apr. 1, 2020) (quoting *Ehrens v. Lutheran Church*, 385 F.3d 232, 235 (2d Cir. 2004) (per curiam)).[5]

**\*7** As the defendants observe, "[t]he duty to supervise and train Sheriff's employees rests with the Sheriff." Docket Item 46-1 at 14; *see Metcalf v. County of Erie*, 173 A.D.3d 1799, 1800, 104 N.Y.S.3d 815, 816 (4th Dep't 2019). The County, by contrast, "has no similar duty," and so the New York State Supreme Court, Appellate Division, Fourth Department, has affirmed the dismissal of claims "alleging that the County was liable for its failure to supervise and train jail deputies" on that basis. *Metcalf*, 173 A.D.3d at 1800, 104 N.Y.S.3d at 816-17 (citing *Villar*, 126 A.D.3d at 1296, 5 N.Y.S.3d at 748).

Nor has **Avant** "raise[d] an issue of fact suggesting that the County assumed the Sheriff's duty" to train and supervise his staff. *See id.* In the absence of such an assumption of the Sheriff's duty, a claim against the County for negligent training and supervision would effectively be holding the county vicariously liable for *the Sheriff's* negligence. And as explained above, such a claim *against the County* is not viable.[6] *See* Section II.C.1, *supra.*

For those reasons, this Court grants the defendants' motion for summary judgment on **Avant's** state law negligent training and supervision claim.[7]

### D. Punitive Damages

The defendants move for summary judgment on **Avant's** claim for punitive damages, arguing that "[i]t is well-settled that punitive damages are not available against municipalities." Docket Item 46-1 at 16 (citing *City of Newport v. Fact Concerts, Inc.*, 453 U.S. 247, 271 (1981)). **Avant** did not respond to that part of the defendants' motion, *see* Docket Item 50, and this Court agrees with the defendants that punitive damages are not available in a claim against the County, *see Villar v. County of Erie*, 2020 WL 33125, at \*10 (W.D.N.Y. Jan. 2, 2020) (explaining that "[i]t is settled that punitive damages cannot be recovered from a municipal entity" (quoting *Krause v. Buffalo & Erie Cty. Workforce Dev. Consortium, Inc.*, 426 F. Supp. 2d 68, 106 (W.D.N.Y. 2005))).

This Court therefore grants the defendants' motion for summary judgment on **Avant's** claim for punitive damages.

### CONCLUSION

For the reasons stated above, this Court DENIES **Avant's** motion for partial summary judgment, Docket Item 42, and GRANTS IN PART and DENIES IN PART the defendants' motion for summary judgment, Docket Item 46. More specifically, this Court denies the defendants' motion with respect to **Avant's** *Monell* failure to train claim against the County but otherwise grants the motion. Within 30 days, the parties shall contact this Court to schedule a status conference to set a trial date.

\*8 SO ORDERED.

### All Citations

Slip Copy, 2024 WL 1856828

### Footnotes

[1]     On a motion for summary judgment, the court construes the facts in the light most favorable to the non-moving party. *See Collazo v. Pagano*, 656 F.3d 131, 134 (2d Cir. 2011).

[2]     This Court previously held that the County could be liable for employment discrimination by the **Erie** County Sheriff's Department under Title VII of the Civil Rights Act. *See Davis v. Erie Cnty. Sheriff Dep't*, 2019 WL 4926289, at \*1-2 (W.D.N.Y. Oct. 7, 2019). That decision is inapposite here. "Individuals are not subject to liability under Title VII," *Kretzmon v. Erie County*, 2013 WL 636545, at \*4 (W.D.N.Y. Feb. 20, 2013) (quoting *Sassaman v. Gamache*, 566 F.3d 307, 315-16 (2d Cir. 2009)), and "[e]mployment discrimination claims are not 'torts' under New York State law," *Carlson v. Geneva City Sch. Dist.*, 679 F. Supp. 2d 355, 365 n.2 (W.D.N.Y. 2010).

[3]     Those claims likely would have been viable, and the County might well have been on the hook to indemnify the individual defendants.

[4]     The complaint also includes a claim for negligent hiring, *see* Docket Item 1-1 at ¶¶ 67-75, but **Avant** seems to have abandoned that claim, arguing in her opposition to the defendants' motion for summary judgment only that "[t]here are questions of fact relative to" her "negligent training and supervision cause of action," Docket Item 50 at 8. Therefore, the defendants' motion for summary judgment is granted on **Avant's** negligent hiring claim.

Avant v. County of Erie, Slip Copy (2024)

5    In *Ehrens*, the Second Circuit identified a third element: "that the tort was committed on the employer's premises or with the employer's chattels." 385 F.3d at 235 (citation omitted). But at least one New York State court has found that was incorrect under New York State law. *See Sokola v. Weinstein*, 78 Misc. 3d 842, 852, 187 N.Y.S.3d 493, 504 (Sup. Ct. N.Y. Cnty. 2023) ("[T]his Court finds that *Ehrens* incorrectly set forth the elements of a claim for negligent supervision and should not be followed to the extent it requires a plaintiff to strictly plead or prove the 'chattels' or 'premises' element set forth in Restatement (Second) of Torts § 317."). Regardless, that prong does not affect the outcome of **Avant's** claim here.

6    As noted above, **Avant** did not sue the Sheriff, any of his deputies or any other individual involved in the incident at issue. *See* Docket Item 1-1.

7    Although it may seem incongruous to allow a *Monell* failure to claim train against the County for the Sheriff's failure to train but not a state law negligent training claim, federal caselaw has held that "when the sheriff or his deputies are acting as final policymakers or pursuant to County policy or custom, the County may be held liable for their actions" under *Monell. See Lin v. County of Monroe*, 66 F. Supp. 3d 341, 351 (W.D.N.Y. 2014) (quoting *Harford v. Cnty. of Broome*, 1999 WL 615190, at *5 (N.D.N.Y. July 15, 1999)); *see also Leather v. Ten Eyck*, 2 F. App'x 145, 149 (2d Cir. 2001) (summary order) (finding that county could be liable for sheriff's constitutional violations under section 1983); *Okongwu v. Cnty. of Erie*, 2018 WL 1383233, at *3 (W.D.N.Y. Mar. 19, 2018) (rejecting the County's claim that it was "immunize[d] from liability for constitutional violations by the Sheriff or his deputies" under section 1983).

---

**End of Document**                                  © 2025 Thomson Reuters. No claim to original U.S. Government Works.